IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JEREMY PECK, on behalf of himself
And all others similarly situated,

    Plaintiff,

v.                                                                                                                                  1:22-cv-490

PROGRESSIVE NORTHERN INSURANCE
COMPANY, PROGRESSIVE ADVANCED
INSURANCE COMPANY, PROGRESSIVE
CASUALTY INSURANCE COMPANY,
PROGRESSIVE CLASSIC INSURANCE
COMPANY, PROGRESSIVE COMMERCIAL
CASUALTY COMPANY, PROGRESSIVE DIRECT
INSURANCE COMPANY, PROGRESSIVE MAX
INSURANCE COMPANY, PROGRESSIVE
NORTHWESTERN INSURANCE COMPANY,
PROGRESSIVE PREFERRED INSURANCE
COMPANY, PROGRESSIVE SPECIALTY
INSURANCE COMPANY, PROGRESSIVE WEST
INSURANCE COMPANY, NATIONAL
CONTINENTAL INSURANCE COMPANY, and
UNITED FINANCIAL CASUALTY COMPANY,

    Defendants.

## NOTICE OF REMOVAL

Defendants, Progressive Northern Insurance Company, Progressive Advanced Insurance Company, Progressive Casualty Insurance Company, Progressive Classic Insurance Company, Progressive Commercial Casualty Company, Progressive Direct Insurance Company, Progressive Max Insurance Company, Progressive Northwestern Insurance Company, Progressive Preferred Insurance Company, Progressive Specialty Insurance Company, Progressive West Insurance Company, National Continental Insurance Company, and United Financial Casualty Company (collectively, "Progressive") respectfully remove the above-captioned matter to this Court from the Second Judicial District Court, County of Bernalillo, New Mexico, under D-202-CV-2022-

02572 pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d) and 1453, and 28 U.S.C. §§ 1441(a) and 1446. In support of this Notice of Removal, Progressive states as follows:

**I.    NATURE OF THE CASE.**

1. On May 10, 2022, Plaintiff Jeremy Peck filed a Class Action Complaint against Progressive in the Second Judicial District Court, County of Bernalillo, New Mexico, Case No. D-202-CV-2022-02572. (Compl., Ex. A.)

2. Plaintiff alleges that "[t]his action arises out of a policy of insurance" he purchased from defendant Progressive Northern Insurance Company to cover his motor home that included "stacked uninsured/underinsured motorist ('UM/UIM') on a single vehicle . . . for which [Plaintiff] paid a higher premium, without any corresponding benefit compared to unstacked single vehicle UM/UIM coverage." (*Id.* at p. 1, ¶ 16.) The complaint describes "stacking" as "permit[ting] an insured to stack or aggregate the UM/UIM coverages on all vehicles insured under a policy (intra-policy stacking)." (*Id.* ¶ 20.)

3. Plaintiff alleges that "Progressive provides no benefit to the insured who pays the additional premium charge for stacked UM/UIM coverage on a policy insuring a single vehicle." (*Id.* ¶ 24.) According to Plaintiff, "[o]n a non-stacked policy, the UM/UIM coverage available on a single vehicle policy is exactly the same as the stacked UM/UIM coverage available on a single-vehicle policy—only a single limit of UM/UIM coverage is ever available on a single-vehicle policy. Thus, there is nothing to stack." (*Id.* ¶ 32.) Stated differently, "on a single-vehicle policy" like the one he purchased, "there is only one UM/UIM coverage limit that applies under any circumstances." (*Id.* ¶ 16.)

4. Plaintiff alleges that Progressive nonetheless "charged [him] a higher premium for stacked single-vehicle UM/UIM coverage, without giving [him] any additional coverage in exchange for the additional premium cost." (*Id.* ¶ 29.)

5. Plaintiff further alleges that "Progressive does not explain or disclose that stacked single vehicle coverage does not provide any additional benefit beyond unstacked single vehicle coverage and does not explain or disclose that the payment of a higher premium for stacked single vehicle coverage is payment for nothing." (*Id.* at ¶ 34.)

6. Based on the foregoing allegations, Plaintiff asserts the following causes of action: Violation of Trade Practices and Frauds Act (Count 1); Breach of Contract (Count 2); Breach of the Implied Covenant of Good Faith and Fair Dealing and Insurance Bad Faith (Count 3); Violation of the Unfair Trade Practices Act (Count 4); Civil Conspiracy to Violate the Trade Practices and Frauds Act, The Unfair Trade Practices Act, and Contractual and Common Law Duties (Count 5); Unjust Enrichment (Count 6); Injunctive Relief (Count 7); Declaratory Judgment (Count 8); and Punitive Damages (Count 9). (*Id.* ¶¶ 48-90.)

7. Plaintiff further seeks to represent the following putative class:

All New Mexico residents, who are or were policyholders of any of the Defendants and who were offered and bought or otherwise obtained stacked UM/UIM coverage on a single-vehicle policy and paid premiums to any of the Defendants for stacked, single-vehicle UM/UIM coverage, whether through original purchase, renewal, or change in number of vehicles insured to a single vehicle.

(*Id.* ¶ 39.)

8. On behalf of himself and the putative class, Plaintiff seeks to recover from Progressive compensatory damages; pre- and post-judgment interest; costs and expenses, including attorney fees; punitive damages; injunctive relief; declaratory relief; and any "other and further relief as the Court deems just and proper." (*Id.* at pp. 19-20.)

**II.     THIS CASE MEETS THE PROCEDURAL REQUISITES FOR REMOVAL.**

9.     First, Progressive's removal is timely.  28 U.S.C. § 1446(b)(1) requires that a "notice of removal of a civil action or proceeding shall be filed within 30 days after" service of the complaint.  On June 1, 2022, Plaintiff served the Office of the Superintendent of Insurance for the State of New Mexico (the "Superintendent") with copies of the complaint and summonses directed to defendants United Financial Casualty Company, Progressive Direct Insurance Company, and Progressive Classic Insurance Company. (*See* Service of Process Transmittal Summaries, Ex. B, at 2-94.)  The Superintendent then mailed the summonses to these defendants' designated agents on June 3, 2022, with delivery occurring on June 6, 2022.  (*Id.*)  On June 3, 2022, Plaintiff served the Superintendent with the complaint and summons directed to defendant Progressive Advanced Insurance Company.  (*Id.* at 95-125.)  The Superintendent mailed the summons to this defendant's designated agent on June 3, 2022, with delivery occurring on June 6, 2022.  (*Id.*)  Plaintiff served the remaining defendants with the complaint and summonses by electronic means on June 3, 2022.  (*Id.* at 125-371.)  Out of an abundance of caution, Progressive is filing this Notice of Removal within 30 days of the first instance of service on the Superintendent—*i.e.*, thirty days from June 1, 2022.  Thirty days from service on any Progressive defendant is the time allowed to remove under 28 U.S.C. § 1446(b)(1).  *See also* N.M. Stat. Ann. § 59A-5-32(B) ("Upon such service the superintendent shall deliver such process showing the date and time of service on the superintendent, to the email or electronic portal address of the person currently designated by the insurer to receive such process as provided in Section 59A-5-31 NMSA 1978.  Service of process on the insurer shall be complete upon such electronic delivery of the process.").

10.     Second, venue is proper in this Court.  Under 28 U.S.C. § 1441(a), a state-filed action subject to federal jurisdiction may be removed "to the district court . . . for the district and

4

division embracing the place where such action is pending." Because the Second Judicial District Court of the County of Bernalillo is located in the District of New Mexico, this Court is the appropriate venue under the law.

11. Third, as required under 28 U.S.C. § 1446(a), Progressive attaches hereto "a copy of all process, pleadings, and orders served upon" Progressive, as well as the state-court docket sheet. (*See* Exs. 2-3.)

12. Finally, as required under 28 U.S.C. § 1446(d), Progressive represents that it is serving a copy of this Notice of Removal, with attachments, upon Plaintiff's counsel, and that it is filing a copy of the same with the Clerk of the Second Judicial District Court, County of Bernalillo.

### III. THIS COURT HAS SUBJECT MATTER JURISDICTION OVER THIS CASE UNDER CAFA.

13. Under CAFA, this Court has original jurisdiction over any asserted class action[1] where (1) the "proposed plaintiff classes" have at least 100 members"; (2) "any member of [the] class of plaintiffs is a citizen of a State different from any defendant"; and (3) "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d), as amended by, The Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4. Each requirement is satisfied here.

---

[1] CAFA defines a "class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B). Plaintiff titles his pleading a "Class Action Complaint" and expressly seeks certification of a class of New Mexico insureds pursuant to New Mexico's similar class action rule. (*See* Compl., Ex. A, ¶¶ 39 (seeking certification because, allegedly, "[t]his action is properly maintainable as a class action pursuant to Rule 1-023 NMRA"); *see also id.* ¶¶ 35-90 (class allegations); *id.* p. 19 (requesting a judgment "[c]ertifying the Class and awarding compensatory damages to Plaintiff and the Class members for [ ] damages").)

    **A.**    **Plaintiff's proposed class includes more than 100 members.**

14.    Plaintiff seeks to represent "[a]ll New Mexico residents, who are or were policyholders of any of the Defendants and who were offered and bought or otherwise obtained stacked UM/UIM coverage on a single-vehicle policy and paid premiums to any of the Defendants for stacked, single-vehicle UM/UIM coverage, whether through original purchase, renewal, or change in number of vehicles insured to a single vehicle." (Compl., Ex. A, ¶ 43.) He alleges that "[t]he members of the proposed Class are so numerous that joinder of all members is impracticable." (*Id.*)

15.    In the last six years, two of the defendants—Progressive Direct Insurance Company and Progressive Northern Insurance Company—have alone issued over 10,000 special-lines (*e.g.*, motor home and motorcycle) insurance policies to New Mexico residents that, like Plaintiff's policy, include or included stacked UM/UIM coverage on a single vehicle. (Decl. of Matthew S. Jacobs ("Jacobs Decl."), Ex. D, ¶ 6.) This number is underinclusive as it does not include single-vehicle personal-lines or commercial-lines policies issued by the Progressive defendants, which Progressive reasonably expects to number in the thousands.

16.    It is clear based on Plaintiff's allegations and Progressive's review of relevant policies issued by just two of the thirteen defendants that Plaintiff's asserted class includes more than 100 people.

    **B.**    **There is minimal diversity between the parties.**

17.    "For diversity jurisdiction purposes, citizenship is determined by a person's domicile." *Payne v. Tri-State Careflight*, LLC, 322 F.R.D. 647, 676 (D.N.M. 2017) (citing *Crowley v. Glaze*, 710 F.2d 676, 678 (10th Cir. 1983)). "A person's domicile is defined as the place in which the party has a residence in fact and an intent to remain indefinitely, as of the time

of the filing of the lawsuit." *McEntire v. Kmart Corp.*, No. 09-0567, 2010 WL 553443, at *3 (D.N.M. Feb. 9, 2010)."

18.     At the time this lawsuit was filed and as of the date of this removal, Plaintiff was alleged to be and is a citizen of the State of New Mexico. (Compl., Ex. A, ¶ 1 ("Plaintiff was, at all times material to this matter, a resident of the county of Bernalillo, state of New Mexico.").) Moreover, Plaintiff seeks to represent a class comprised of other persons in New Mexico, most of whom are likely citizens of New Mexico. (*Id.* ¶ 39 ("This Class is defined as: . . . All New Mexico residents . . .").)

19.     Plaintiff does not allege citizenship for the Progressive defendants, but as set forth below, each is incorporated in and has its principal place of business outside of New Mexico.[2] (Decl. of Debra Y. Henry, Ex. E, ¶¶ 5-17.)

| Defendant | State of Incorporation | Principal Place of Business |
|---|---|---|
| Progressive Northern Insurance Company | Wisconsin | Wisconsin |
| Progressive Advanced Insurance Company | Ohio | Ohio |
| Progressive Casualty Insurance Company | Ohio | Ohio |
| Progressive Classic Insurance Company | Wisconsin | Wisconsin |
| Progressive Commercial Casualty Company | Ohio | Ohio |
| Progressive Direct Insurance Company | Ohio | Ohio |
| Progressive Max Insurance Company | Ohio | Ohio |
| Progressive Northwestern Insurance Company | Ohio | Ohio |
| Progressive Preferred Insurance Company | Ohio | Ohio |

---

[2] *See Hertz Corp. v. Friend*, 559 U.S. 77, 91-93 (2010) (a corporation's principal place of business, for diversity jurisdiction purposes, is its nerve center).

| | | |
|---|---|---|
| Progressive Specialty Insurance Company | Ohio | Ohio |
| Progressive West Insurance Company | Ohio | Ohio |
| National Continental Insurance Company | New York | New York |
| United Financial Casualty Company | Ohio | Ohio |

20. Because (a) Plaintiff and at least a portion of his putative class are citizens of New Mexico and (b) none of the defendants are citizens of New Mexico, this case satisfies the minimal diversity requirement of 28 U.S.C. § 1332(d)(2)(A).

**C. The amount in controversy exceeds $5,000,000, exclusive of interest and costs.**

21. CAFA confers original jurisdiction to the district courts "of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(2).

22. The amount in controversy "is an estimate of the amount that will be put at issue in the course of the litigation"—it is "not proof of the amount the plaintiff will recover." *McPhail v. Deere & Co.*, 529 F.3d 947, 956 (10th Cir. 2008); *see also Valdez v. Metro. Prop. & Cas. Ins. Co.*, 867 F. Supp. 2d 1143, 1163-64 (D.N.M. 2012) ("The amount-in-controversy requirement is an estimate of the amount that will be put at issue in the course of the litigation.") (citation and internal quotation omitted). "The question at this stage in the proceedings isn't what damages the plaintiff will likely prove but what a factfinder might conceivably lawfully award. Even if it's highly improbable that the Plaintiffs will recover the amounts Defendants have put into controversy, this does not meet the legally impossible standard." *Hammond v. Stamps.com, Inc.*, 844 F.3d 909, 912 (10th Cir. 2016).

23. "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co.,*

8

*LLC v. Owens*, 135 S. Ct. 547, 554 (2014).  To satisfy this requirement, a defendant may rely on the plaintiff's own allegations, as well as reasonable estimates and calculations as to the amount in controversy.  *See, e.g.*, *Barreras v. Travelers Home & Marine Ins. Co.*, No. 12-CV-0354 RB/RHS, 2012 WL 12870348, at *3 (D.N.M. Oct. 17, 2012) ("Even assuming that the [UIM] coverage increase is only $25,000 per policy for a total of at least $2,500,000, aggregating that amount with the potential punitive damages award and attorneys' fees would satisfy the [$5 million] amount in controversy requirement."); *Stanforth v. Farmers Ins. Co. of Arizona*, No. CV 09-1146, 2010 WL 11437167, at *3 (D.N.M. Apr. 22, 2010) (denying motion to remand where defendants' amount in controversy calculation was based on plaintiff's allegations and defendants' own data regarding payment of UIM claims).  The only instance when an evidentiary showing is required at removal is if, after the defendant has filed the notice of removal, the plaintiff contests, or the court questions, a defendant's allegations.  *Dart Cherokee*, 135 S. Ct. at 554.  But even then, the removing party need only demonstrate jurisdictional facts by a preponderance of the evidence.  *Id.*

24.     Progressive denies that Plaintiff has stated viable claims or that any damages or other relief are owed to Plaintiff or the asserted class.  But what matters to the jurisdictional inquiry is the amount the class conceivably could recover assuming Plaintiff succeeded in his suit.  *See Dart Cherokee*, 135 S. Ct. at 554.  In other words, Progressive need not prove that damages are greater than the removal threshold; it need only establish facts showing it is "possible" that the requisite amount is "in play."  *McPhail*, 529 F.3d at 955.

1.     <u>Compensatory damages.</u>

25.     Plaintiff seeks damages related to his and putative class members' alleged "payment of [higher] premiums for non-existent/illusory coverage[.]" (Compl., Ex. A, ¶ 45.) Through a variety of causes of action, Plaintiff seeks to recover on behalf of himself and the

9

asserted class the additional premium Progressive collected for allegedly "non-existent" or "illusory" stacked UM/UIM coverage on single vehicle policies. (*See, e.g.*, *id.* ¶ 55 ("Progressive caused damage to Plaintiff and the class by collecting premiums for coverage that could and would never be provided, in an amount to be proven at trial."); ¶ 82 ( "It is unjust and unfair for Defendant Progressive to collect premiums where there is no coverage provided (*i.e.,* collecting higher premiums for stacked UM/UIM coverage on a single-vehicle policy when no such coverage exists)"); ¶ 28 ("Progressive willfully violated New Mexico law . . . in collecting premium or charge for insurance that was not then provided.").)

26.     The Complaint does not identify a proposed class period. However, the statutes of limitations on Plaintiff's claims range from four years to six years, with Plaintiff's claims for breach of contract and breach of the covenant of good faith and fair dealing subject to the longer, six-year limitations period. *See Delgado v. Liberty Mut. Fire Ins. Co.*, No. CV 15-196 JCH/GJF, 2016 WL 7448312, at *5 (D.N.M. Sept. 15, 2016) (holding Unfair Trade Practices Act claim subject to four-year statute of limitations set forth in N.M. Stat. Ann. § 37-1-14); *Martinez v. Cornejo*, 208 P.3d 443, 452 (N.M. Ct. App 2009) ("[V]iolations of the TPFA are statutory in nature and are governed by the four-year statute of limitations found in Section 37–1–4."); *Whelan v. State Farm Mut. Auto. Ins. Co.*, 2014-NMSC-021, ¶ 13, 329 P.3d 646, 649 (New Mexico 2014) ("In the absence of a contrary provision in the insurance policy, we have held that the period of limitation for UM/UIM legal actions should be the statutory period of limitation for contract actions, six years."); *Presbyterian Healthcare Servs. v. Factory Mut. Ins. Co.*, 512 F. Supp. 3d 1169, 1179 (D.N.M. 2021) ("PHS's claim for breach of the implied covenant of good faith and fair dealing arises from the breach of a written contract, and thus is governed by the same six-year limitations period."); *Radian Asset Assur. Inc. v. Coll. of the Christian Bros. of New Mexico*, No.

CIV 09-0885 JB/DJS, 2011 WL 10977180, at *59 (D.N.M. Jan. 24, 2011) ("UPA and UIPA claims are subject to the four-year statute of limitations under NMSA 1978, § 37–1–4."); *Billington v. Cont'l Cas. Co.*, No. CIV981570JCKBMACE, 1999 WL 35808294, at *6 (D.N.M. Dec. 15, 1999) ("The statute of limitations applicable to the misrepresentation, bad faith failure to defend, civil conspiracy, and unfair trade practices claims is four years."); *Cmty. Alternatives New Mexico, Inc. v. Valueoptions of New Mexico, Inc*., No. 12CV476 RHS/WPL, 2014 WL 12573381, at *3 (D.N.M. Apr. 18, 2014) unjust enrichment claim subject to four-year statute of limitations). Accordingly, it is reasonable to assume a proposed class period of six years prior to the filing of the Complaint—*i.e.*, May 2016 to present.

27. Since May 10, 2016, two of the defendants—Progressive Direct Insurance Company and Progressive Northern Insurance Company—have together collected approximately $3,032,121.22 in earned UM/UIM premium on stacked single-vehicle special-lines (*e.g.*, motorcycle and motor home) policies issued in the State of New Mexico. (Jacobs Decl., Ex. D, ¶ 7.) Had these policyholders elected non-stacked UM/UIM coverage, the total premium charge would have amounted to approximately $1,730,925.76 in the aggregate (*id.* ¶ 8)—a difference of approximately $1,301,195.46. Under Plaintiff's theory, the additional premium collected by Progressive for stacked UM/UIM coverage is "in play," yielding a minimum of $1,301,195.46 in controversy.

28. The amount listed in Paragraph 27 is underinclusive, as it does not account for UM/UIM premiums collected on single-vehicle personal-lines (*e.g.*, personal auto and truck) policies issued by Progressive Direct and Progressive Northern. Nor does it account for UM/UIM premium collected on single-vehicle personal-lines and commercial lines policies issued by any of the remaining eleven (11) defendants.

      2.      <u>Punitive damages.</u>

29.      Plaintiff's Complaint expressly seeks punitive damages. (Compl., Ex. A, ¶¶ 89-90.)

30.      "Punitive damages may be considered in determining the requisite jurisdictional amount." *Woodmen of World Life Ins. Soc'y v. Manganaro*, 342 F.3d 1213, 1218 (10th Cir. 2003). A defendant does not have to prove that the plaintiff is more likely than not ultimately to recover punitive damages to remove, "but merely that: (1) state law permits a punitive damages award for the claims in question; and (2) the total award, including compensatory and punitive damages, could exceed $5,000,000. The defendant may point to facts alleged in the complaint, the nature of the claims, or evidence in the record to demonstrate that an award of punitive damages is possible." *Frederick v. Hartford Underwriters Ins. Co.*, 683 F.3d 1242, 1248 (10th Cir. 2012) (citation omitted).

31.      Progressive denies that Plaintiff is entitled to such damages. However, in viewing the Complaint as pled—which is the standard for the removal analysis—those damages should be included for purposes of determining the amount in controversy.

32.      New Mexico courts have upheld punitive damage awards in a ratio of 7.4 to 1 against compensatory damages, *Allsup's Convenience Stores, Inc. v. N. River Ins. Co.*, 976 P.2d 1, 18 (N.M. 1998), and a ratio of 18 to 1, *Akins v. United Steelworkers of Am.*, 208 P.3d 457, 468 (N.M. Ct. App. 2009).

33.      Here, just trebling the potential compensatory damage amount discussed in paragraph 27 above—*i.e.*, $1,301,195.46—would add $3,903,586.38 to the amount in controversy, for a total of $5,204,781.84—well over CAFA's $5 million threshold. But even at a 1 to 2 ratio, Plaintiff's demand for punitive damages pushes the amount in controversy to at least $3,903,586.38, without accounting for Plaintiff's additional demands for attorney fees and

injunctive and declaratory relief. As discussed below, this additional requested relief may also be counted in determining the amount in controversy.

### 3. Attorney fees.

34. Attorney fees, where specifically permitted by statute, may also be considered as part of the amount-in-controversy for purposes of federal jurisdiction. *Martinez-Wechsler v. Safeco Ins. Co. of Am.*, No. CIV 12-0738 KBM/ACT, 2012 WL 12892762, at *2 (D.N.M. Sep. 13, 2012); *see also Woodmen*, 342 F.3d at 1218 ("Because the UPA requires the award of attorneys' fees to a prevailing claimant, the potential award of attorneys' fees, in addition to compensatory and treble damages, should have been considered in determining whether Woodmen satisfied the jurisdictional amount."); *Barreras*, 2012 WL 12870348, at *3 ("Where a statute allows for the recovery of attorneys' fees, fees may be used in calculating the jurisdictional amount. Here, UPA and other statutes under which Plaintiff asserts claims allow for the recovery of fees. Accordingly, this amount, too, may count could count toward satisfying the jurisdictional minimum.") (internal citations omitted).

35. Here, as in *Barreras*, Plaintiff seeks to recover attorney fees under New Mexico's Unfair Trade Practices Act ("UTPA"). (*See* Compl., Ex. A, ¶¶ 59-63; *id.* at p. 20 (expressly requesting judgment "[a]warding Plaintiff's costs and expenses, including attorneys' fees").) Under that UTPA, a "court shall award attorney fees and costs to the party complaining of an unfair or deceptive trade practice or unconscionable trade practice if the party prevails." N.M. Stat. Ann. § 57-12-10(C). Plaintiff also seeks relief under the New Mexico Trade Practices and Fraud Act ("TPFA"). Like the UTPA, the TPFA provides for the recovery of attorney fees. *See* N.M. Stat. Ann. § 59A-16-30 ("Any person covered by Chapter 59A, Article 16 NMSA 1978 who has suffered damages as a result of a violation of that article by an insurer or agent is granted a right to bring an action in district court to recover actual damages . . . The court may award

13

attorneys' fees to the prevailing party if . . . B. the party charged with the violation of that article has willfully engaged in the violation.").

36. This Court has authorized attorney fees of 20 to 40 percent of the class recovery. *See, e.g.*, *In re Horizon/CMS Healthcare Corp. Sec. Litig.*, 3 F. Supp. 2d 1208, 1212 (D.N.M. 1998) ("this Court set attorneys' fees at 20% of the net recovery after expenses"); *In re Thornburg Mortg., Inc. Sec. Litig.*, 912 F. Supp. 2d 1178, 1249 (D.N.M. 2012) (Setting attorneys' fees at "twenty-percent of the Settlement Fund -- $400,000.00 in fees," but noting "[t]wenty-percent in fees is below the average percentage of the class fund that courts award. Fees in the range of 30–40% of any amount recovered are common in complex and other cases taken on a contingency fee basis.") (citation and internal quotation omitted); *Robles v. Brake Masters Sys., Inc.*, No. CIV 10-0135 JB/WPL, 2011 WL 9717448, *19 (D.N.M. Jan. 31, 2011) (setting fee at 18.77% of the class recovery, but stating the "percentage is less than half Robles' counsels' contingency fee, which would have been at least 40%," and noting courts within the Tenth Circuit have approved attorneys' fees ranging from 25% to 40%); *Safier v. State Farm Fire & Cas Co.*, No. 09-801 JCH/ACT, 2010 WL 11493970, *7 (D.N.M. Jan. 15, 2010) (for purposes of CAFA jurisdiction, increasing amount in controversy by an additional 30 percent to account for plaintiff's attorney fee demand was "credible").

37. Here, Plaintiff's claim for attorney fees increases the amount in controversy even further—*i.e.*, by at least 20 percent of the compensatory and punitive damage amounts discussed above. Assuming even the lowest estimate of compensatory and punitive damages (*i.e.*, $3,903,586.38 in the aggregate), a 20 percent fee award increases the amount in controversy to $4,684,303.65, before even accounting for Plaintiff's additional demand for injunctive and

14

declaratory relief. This amount would further increase to $5,074,662.29 if fees were awarded at the 30 percent range, as they could be under the above case law.

### 4. Injunctive and declaratory relief.

38. "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Valdez*, 867 F. Supp. 2d at 1178. In measuring the value of the litigation, the Tenth Circuit follows the "either viewpoint rule," which considers the "value to the plaintiff or the cost to [the] defendant." *Lovell v. State Farm Mut. Auto Ins. Co.*, 466 F. 3d 893, 897 (10th Cir. 2006); *see also Frederick*, 683 F.3d at 1247 (noting jurisdictional amount may include "how much it would cost to satisfy the plaintiff's demands.").

39. In *Keeling v. Esurance Ins. Co.*, 660 F.3d 273 (7th Cir. 2011), the plaintiff alleged that Esurance committed fraud by charging for UIM coverage that was worthless in light of the automobile insurance policy's restrictions. The Seventh Circuit held that the value of the injunctive relief was based on the loss of premiums or increase in claims payments Esurance could incur if the plaintiff prevailed. *Id.* at 274.

40. In *Valdez*, the court quoted *Keeling* with approval for the principle that the "the cost of prospective relief cannot be ignored in the calculation of the amount in controversy." 867 F. Supp. 2d at 1165. Where an insurer-defendant would either have to "stop charging a premium or change the [policy] terms so that policyholders receive indemnity more frequently, it will suffer a financial loss." *See also Cox v. Allstate Ins. Co.*, No. CIV-07-1449-L, 2008 WL 2167027, *3 (W.D. Okla. May 22, 2008) (denying motion to remand; finding insurer met CAFA's amount in controversy requirement by presenting evidence that premium payments received in 2006 alone far exceeded $5,000,000 where plaintiff sought the equitable remedy of disgorgement of benefits); *Armur v. Transamerica Life Ins. Co.*, No. 10-2136-EFM, 2010 WL 4180459, *4 (D. Kan. Oct. 20,

2010) (denying motion to remand in dispute over premium rate increases; finding insurer met CAFA's amount in controversy requirement by multiplying anticipated annual premium rate increases by total number of policies).

41.     Here, a judgment in Plaintiff's favor would require Progressive to reform its practice of charging a premium for stacked UM/UIM coverage on single vehicle policies. This would result in a financial loss to Progressive by at least the amount of premiums that Progressive otherwise would have charged but for Plaintiffs' suit.

42.     Assuming the annual number of single-vehicle policies that include stacked UM/UIM coverage approximately tracks the number of such policies issued in the past, Progressive can expect to collect at least $1,301,195.46 in additional premium charges over the next six years. Again, this number is underinclusive as it only accounts for special-lines policies like the policy issued to Plaintiff. Plaintiff's proposed class also would include those persons insured under a single-vehicle personal-lines or commercial lines policy who elected to purchase stacked UM/UIM coverage.

43.     Adding this minimum amount ($1,301,195.46) to the previously underestimated compensatory damages ($1,301,195.46), plus the potential amount of punitive damages ($2,602,390.92 to $3,903,586.38), plus potential attorney fees ($780,717.28 to $1,040,956.37), puts the amount in controversy in a range of $ $5,985,499.12 to $ $7,546,933.67, well in excess of the $5,000,000 jurisdictional requirement.

44.     Accordingly, CAFA's $5 million threshold is easily satisfied.

**WHEREFORE**, Progressive respectfully requests that this Court assume full jurisdiction over this action.[3]

Respectfully submitted,

**ALLEN LAW FIRM, LLC**

*/s/ Meena H. Allen*
MEENA H. ALLEN
6121 Indian School Road NE, Suite 230
Albuquerque, NM 87110
(505) 298-9400
Facsimile: (505) 298-7070
Email:  mallen@mallen-law.com

Michael E. Mumford (D.N.M. Bar No. 18-95)
Dante A. Marinucci (*pro hac vice forthcoming*)
Sarah Spring (*pro hac vice forthcoming*)
BAKER & HOSTETLER LLP
Key Tower, 127 Public Square, Suite 2000
Cleveland, OH 44114
Telephone: (216) 621-0200
Facsimile: (216) 696-0740
Emails:  mmumford@bakerlaw.com
         dmarinucci@bakerlaw.com
         sspring@bakerlaw.com

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 1st day of July, 2022, I filed the foregoing electronically through this Court's CM/ECF system *and* emailed a service copy to the following counsel of record:

Geoffrey R. Romero
LAW OFFICES OF GEOFFREY R. ROMERO
4801 All Saints Road NE
Albuquerque, NM 87120
(505) 247-3338

---

[3] Progressive intends no admission of liability by this Notice of Removal and expressly reserves all defenses, motions, and pleas, including, without limitation, objections to the sufficiency of Plaintiff's pleadings, insufficiency of service of process, failure to join indispensable parties, and the propriety of class certification.

17

Ray M. Vargas, II
THE VARGAS LAW FIRM LLC
807 Silver Ave SW
Albuquerque, NM 87102
(505) 242-1670
ray@vargaslawfirmabq.com

Paul Zebrowski
Thomas A Biscup
ZEBROWSKI LAW
4801 All Saints Road NE
Albuquerque, NM 87120
(505) 715-5161
paul@zebrowskilaw.com
tom@zebrowskilaw.com


*Meena H. Allen*
Meena H. Allen