## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

_____

JEREMY PECK, on behalf of himself
And all others similarly situated,

        Plaintiff,

        v.                                     Case No. 1:22-cv-00490-KWR-JFR

PROGRESSIVE NORTHERN INSURANCE COMPANY,
PROGRESSIVE ADVANCED INSURANCE COMPANY,
PROGRESSIVE CASUALTY INSURANCE COMPANY,
PROGRESSIVE CLASSIC INSURANCE COMPANY,
PROGRESSIVE COMMERICAL CASUALTY COMPANY,
PROGRESSIVE DIRECT INSURANCE COMPANY,
PROGRESSIVE NORTHWESTERN INSURANCE COMPANY,
PROGESSIVE PREFRRED INSURANCE COMPANY,
PROGRESSIVE SPECIALTY INSURANCE COMPANY
PROGRESSIVE WEST INSURANCE COMPANY,
NATIONAL CONTINENTAL INSURANCE COMPANY,
and UNITED FINANCIAL CASUALTY COMPANY,

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court upon Defendants' Motion to Dismiss Plaintiff's

Class Action Complaint (**Doc. 15**), filed August 5, 2022. Having reviewed the pleadings and the

relevant law, the Court finds that Defendants' Motion to Dismiss (**Doc. 15**) is **WELL-TAKEN**

**IN PART**, and therefore, is **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

This case arises out of a dispute over stacked uninsured/underinsured motorist

("UM/UIM") coverage on a single vehicle policy. Plaintiff purchased a motor vehicle insurance

policy from Progressive for his motor home. Doc. 1-1 ¶ 18. Plaintiff selected a stacked UM/UIM

coverage on a single vehicle policy. *Id.* Stacked UM/UIM coverage permits an insured to aggregate the UM/UIM coverages on all vehicles insured under a policy. *Id.* ¶ 20. Plaintiff alleges that stacked UM/UIM coverage on a policy insurance for a single vehicle is illusory because the insured receives no benefit for the additional premium. *Id.* ¶¶ 21, 24. Plaintiff alleges that Progressive does not disclose any benefits to the insured for paying the additional premium. *Id.* ¶ 25. Plaintiff alleges the following claims:

> Count I: Violation of the Unfair Insurance Practice Act
>
> Count II: Breach of Contract
>
> Count III: Breach of Implied Covenant of Good Faith and Fair Dealing and Insurance Bad Faith
>
> Count IV: Violation of the Unfair Trade Practices Act
>
> Count V: Civil Conspiracy to Violate the Trade Practice and Frauds Act, the Unfair Trade Practices Act, and Contractual and Common Law Duties
>
> Count VI: Unjust Enrichment
>
> Count VII: Injunctive Relief
>
> Count VIII: Declaratory Judgment
>
> Count IV: Punitive Damages

Defendants removed this case to this Court (Doc. 1) and subsequently filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Doc. 15. The Court denies Defendants motion pursuant to Rule 12(b)(1). The Court grants Defendants' motion pursuant to Rule 12(b)(6) on Count II and denies Defendants' Motion for the remaining counts.

## LEGAL STANDARD

Rule 12(b)(6) permits the Court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must have sufficient factual matter that if true, states a claim to relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. As such, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). All well-pleaded factual allegations are "viewed in the light most favorable to the nonmoving party." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1136 (10th Cir. 2014).

In ruling on a motion to dismiss, "a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). The Court must draw all reasonable inferences in Plaintiff's favor. *Kay v. Bemis*, 500 F.3d 1214, 1217 (10th Cir. 2007). However, mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555.

## DISCUSSION

Uninsured motorist ("UM") insurance coverage protects drivers who are damaged by a tortfeasor who does not have automobile insurance. *See* NMSA 1978, § 66-5-301(A) (1983); *Crutcher v. Liberty Mut. Ins. Co.*, 2022-NMSC-001, ¶ 15, 501 P.3d 433, 436. Underinsured ("UIM") insurance coverage protects drivers who are hit by a tortfeasor who does not have enough auto insurance to cover the cost of the driver's injuries and damages. *Id.; see* § 66-5-

3

301(B). Stacked UM/UIM coverage allows the insured to combine UM/UIM coverage for each vehicle covered under the policy. *Schmick v. State Farm Mut. Auto. Ins. Co.,* 1985-NMSC-073, ¶ 10, 103 N.M. 216, 219, 704 P.2d 1092, 1095

Defendants argue that Plaintiff's claims fail because the stacked UM/UIM coverage on a single vehicle provides an actual tangible benefit and Defendants properly disclosed UM/UIM coverage. Doc. 16 at 9. Plaintiff argues that the UM/UIM coverage on a single vehicle provides no benefits and is illusory. Doc. 21 at 4. The Court finds that Plaintiff has adequately pled that the UM/UIM coverage on a single vehicle is illusory and that Defendants' misrepresented the coverage.

## I.       Proper Defendants in this Lawsuit

In this lawsuit, Plaintiff is suing not only Progressive Northern Insurance Company, but also other, separate corporate entities, namely: Progressive Advanced Insurance Company, Progressive Casualty Insurance Company, Progressive Classic Insurance Company, Progressive Commercial Casualty Company, Progressive Direct Insurance Company, Progressive Max Insurance Company, Progressive Northwestern Insurance Company, Progressive Preferred Insurance Company, Progressive Specialty Insurance Company, Progressive West Insurance Company, National Continental Insurance Company, and United Financial Casualty Company (Non-Insuring Defendants).

Defendants point out that Plaintiff's Policy was issued by Progressive Northern and because these other entities were not parties to the contract, Plaintiff's allegations as to these other entities should be dismissed. *See Fleet Mortgage Corp. v. Schuster*, 112 N.M. 48, 49, 811 P.2d 81, 82 (1991) (holding that generally one who is not a party to a contract cannot maintain suit upon the contract). Plaintiff contends that the other entities are "part of the Progressive

4

Group of companies and, upon information and belief, operate in concert in implementation of certain policies, procedures, directives, strategies, training, guidance, and the like." Doc. 1-1- ¶ 15. Plaintiff argues that his Complaint sufficiently alleges joint venture and civil conspiracy. Doc. 21 at 21. The Court finds that at no point in the Complaint is joint venture alleged. However, the Court agrees that Plaintiff has adequately pled a civil conspiracy claim for reasons provided in this decision.

The Court declines to decide this issue on a motion to dismiss. Defendants are correct that a subsidiary and its parent corporation "are viewed as independent corporations." *Cruttenden v. Mantura*, 97 N.M. 432, 435, 640 P.2d 932, 934 (1982) ("A subsidiary and its parent corporation are viewed as independent corporations."). However, Plaintiff provides a sound reason to defer ruling on this issue until after some discovery has been done. *See, e.g., Dellaira v. Farmers Ins. Exch.*, 2004-NMCA-132, ¶ 14, 136 N.M. 552, 556, 102 P.3d 111, 115 (allowing claims for breach of the covenant of good faith and fair dealing, UPA, and UIPA against a non-contracting insurance carrier defendant to remain).

Defendants' Motion to Dismiss certain co-defendants is therefore **DENIED** at this time.

## II. Court declines to dismiss Plaintiff's Unfair Insurance Practice Act claim (Count I)

Plaintiff alleges that Defendants violated the New Mexico Unfair Insurance Practices Act ("UIPA"), NMSA 1978, §§ 59A–16–1 to 59A–16–30. The UPIA states:

> "No person shall willfully collect any sum as premium or charge for insurance or other coverage, which insurance or coverage is not then provided or in due course to be provided (subject to acceptance of the risk by the insurer) by a policy issued by an insurer as authorized by the Insurance Code.

NMSA 1978, Section 59A-16-24(A). "This act seeks to prohibit unfair or deceptive acts and practices in the insurance industry." *Brule v. Blue Cross & Blue Shield of New Mexico*, 455 F. App'x 836, 840 (10th Cir. 2011). Insurance companies "have a duty to disclose material facts about the policies they sell under the UIPA." *Id.,* citing *Azar v. Prudential Ins. Co. of Am.*, 133 N.M. 669, 68 P.3d 909, 930 (2003). Additionally, New Mexico has long recognized that "both the insurer and the insured have a duty not to misrepresent or withhold information material to an insurance contract." *Id.,* quoting *Azar*, 68 P.3d at 930. "Thus, New Mexico law strongly encourages open and transparent dealings in the insurance context, particularly with regard to material information." *Brule*, 455 F. App'x at 840; *see, e.g., Smoot v. Physicians Life Ins. Co.*, 2004-NMCA-027, ¶¶ 15–16, 135 N.M. 265, 87 P.3d 545 (concluding that "[t]he UPA and the UIPA each imposes a duty to disclose material facts reasonably necessary to prevent any statements from being misleading" and noting the existence of "a common law duty to disclose the allegedly material facts").

Defendants argue that a single vehicle UM/UIM stacked coverage provides a tangible benefit because the UM/UIM coverage available on the policy automatically increases upon the policy holder's acquisition of an additional vehicle. Doc. 16 at 9. Plaintiff argues that it is not a benefit because it requires an individual to pay additional premium due and that there is no additional benefit between non-stacked and stacked coverage for a single vehicle policy. Doc. 21 at 7, 9-10. The Court finds that Plaintiff has adequately pled that the coverage is illusory.

As it relates to stacked UM/UIM coverage, the policy provides:

If you have selected stacked coverage under this Part III [Uninsured Motorist Coverage], the following shall also apply to bodily injury sustained by you or a relative.

1. If you or a relative sustains bodily injury while occupying a covered vehicle, the limit of liability shall be the limit shown on the declarations page, first multiplied by the number of covered vehicles that are not involved in the accident, and then added to the limit available under the Non-stacked Limits of Liability described above.

2.  If you or a relative sustains bodily injury while not occupying a covered vehicle, the limit liability shall be the limit shown on the declaration page multiplied by the number of covered vehicles.

Stacked limits of liability shall not increase the limit of liability applicable to any insured person other than you or a relative. The non-stacked limits of liability will apply to any insured person other than you or a relative.

Doc. 16-1, Exh. A, at 18.[1] A covered vehicle includes "any additional vehicle." The policy defines an additional vehicle as:

A vehicle you become the owner of during the policy period that does not permanently replace a vehicle shown on the declarations page if:
a.  We insure all other vehicles you own;
b.  The additional vehicle is not covered by any other insurance policy;
c.  You notify us within 30 days of becoming the owner of the additional vehicle; and
d.  You pay any additional premium due.

*Id* at 5. Defendant argues that because a covered vehicle includes "any additional vehicle", the UM/UIM coverage automatically increases with an additional vehicle. To support their argument that a tangible benefit exists, Defendants rely on *Bird v. State Farm Mutual Automobile Insurance Company*, 165 P.3d 343, 350 (N.M. App. 2007), where the Court held that the fifth additional vehicle involved in an accident within 30 days was covered by the stacked UM insurance. However, the Court finds *Bird* is distinguishable from the instant case. The *Bird* court found the terms of the policy ambiguous and then turned to extrinsic evidence to determine the coverage. *Id.* at 348. *Bird* examined the premium paid and State Farm's agent's oral

---

[1] Under Federal Rule of Evidence 201, "[t]he [C]ourt ... must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c). "The [C]ourt may judicially notice a fact that is not subject to reasonable dispute because it ... can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). "In addition to the complaint, [a] district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002). And when a plaintiff's claim depends upon a contract, the defendant may attach the contract to the motion to dismiss, and the court may consider the contract part of the pleadings. *See Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 521 (10th Cir. 2013). If the contract contradicts a plaintiff's allegations, the contract's terms govern. *Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*, 771 F.3d 1230, 1238 (10th Cir. 2014). Neither Defendants nor Plaintiff dispute the insurance policy offered in Exhibit A. Therefore, the Court takes judicial notice of Exhibit A. "Facts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment." *Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006).

expression of intent to the family regarding coverage. *Id.* at 348-349. After reviewing the extrinsic evidence, the court held that the family reasonably expected to be able to stack the UM coverage for an additional vehicle. *Id.* at 350. The Court is not convinced that the UM/UIM coverage automatically increases upon acquiring another vehicle. For additional UM/UIM coverage based on Plaintiff's policy, an individual must acquire another vehicle, notify Progressive within 30 days of becoming an owner, and pay any additional premium due. Defendant argues that if an accident occurs within 30 days of the purchase and Plaintiff has not yet notified Progressive, Plaintiff's policy will still cover the additional vehicle. Doc. 16 at 11. However, that is not clear in the contract, because the policy still requires Plaintiff to "pay any additional premium due." Doc. 16-1, Exh. A, at 5.

Furthermore, if a non-stack single vehicle policy contains an anti-stacking clause, the New Mexico Courts have held that "insurance company[ies] must obtain a written rejection of UM coverage for each additional vehicle covered by a policy, in order to clarify the insured expectations and to make certain that the insured gets only what he or she has paid for." Bird., ¶ 8, 165 P.3d 343, 346 (citing *Montaño v. Allstate Indemnity Co.,* 2004–NMSC–020, ¶¶ 5, 19–21, 135 N.M. 681, 92 P.3d 1255 (2004)). "If an insurer fails to obtain a valid rejection of stacked coverage that has been offered, 'the insured is entitled [to stacking] by default.'" *Hawley v. Farm Bureau Prop. & Cas. Ins. Co.,* 840 F. App'x 354, 359 (10th Cir. 2021*)* (quoting *Montaño*, 92 P.3d at 1260); *see also Arias v. Phoenix Indem. Ins. Co.,* 495 P.3d 1136, 1139-40 (N.M. App. 2013) ("Stacking must then be a default entitlement with regard to all individual vehicles covered under a policy where no sufficient rejection of stacking exists."). As such, an individual with a single vehicle non-stacked policy with an anti-stacking clause can review their UM/UIM non-stacked coverage upon purchasing an additional vehicle and change their UM/UIM to

stacked coverage, and if not given a chance to reject stacking, the individual will receive stacking by default. At this stage in the pleadings, it is unclear if single-vehicle UM/UIM stacked coverage has a benefit that is not available in the single-vehicle UM/UIM non-stacked coverage. If no tangible benefit exists; the insurer would have collected a premium without providing coverage, and thus, the Court finds that Plaintiff has adequately plead a claim under the UIPA.

Even if the Court agreed with Defendants that the policy's UM/UIM coverage has some value, that designation would not foreclose Plaintiff's claims that Defendant misled him about what the stacking UM/UIM policy covered. The New Mexico Supreme Court has held that while a policy with minimum benefits is not "illusory" as applied in contract law, the policy may still be deceptive. *Crutcher,* ¶ 23-24, 501 P.3d 433, 438-439. "In construing standardized policy language, our focus must be upon the objective expectations the language of the policy would create in the mind of a hypothetical reasonable insured, who, we assume, will have limited knowledge of insurance law." *Computer Corner, Inc. v. Fireman's Fund Ins. Co.*, 2002-NMCA-054, ¶ 7, 132 N.M. 264, 46 P.3d 1264. "[L]anguage at issue should be considered not from the viewpoint of a lawyer or a person with training in the insurance field, but from the standpoint of a reasonably intelligent lay[person]." *Taos Ski Valley, Inc. v. Nova Cas. Co.*, 153 F. Supp. 3d 1351, 1353 (D.N.M. 2015) (internal quotation marks omitted) (quoting *Computer Corner, Inc.*, 2002-NMCA-054, ¶ 7, 132 N.M. 264, 46 P.3d 1264), *aff'd*, 705 F. App'x 749 (10th Cir. 2017).

Defendants argue that stacking coverage has been explicitly disclosed. Doc. 16 at 15. Plaintiff argues that Defendants failed to disclose that there is no difference between stacked and non-stacked coverage for a single vehicle. Doc. 21 at 10. The policy does discuss that stacked coverage "allows you to combine UM/UIM Coverage for each covered vehicle for which a premium has been paid for UM/UIM Coverage on this policy to determine the total amount that

may be paid under this coverage" and further provide examples of stacked UM/UIM coverage. Exh. A, Doc. 16-1 at 69-71. The Court agrees that stacked UM/UIM coverage for multiple vehicles is disclosed. However, this disclosure does not address stacked UM/UIM coverage for a single vehicle or the benefits of stacked UM/UIM coverage for a single vehicle. *Crutcher*, ¶ 31, 501 P.3d 433, 441 (holding that minimum UM/UIM coverage is misleading because policyholders are not adequately informed that they are not eligible to receive UIM coverage pursuant to the Mandatory Financial Accountability Act and the corresponding offset rule articulated in *Schmick*); *Apodaca v. Young America Ins. Co*., 2019 WL 231757, at *7 (D.N.M.) ("[M]erely reading the offset provision in the policy would not inform an insured that the underinsured motorist coverage she purchased at the minimum level would in fact have little to no value." (quoting *Schwartz v. State Farm*, 2018 WL 4148434, at *6 (D.N.M. 2018)); *see also Progressive Nw. Ins. Co. v. Weed Warrior*, 2010-NMSC-050, ¶ 13, 149 N.M. 157, 245 P.3d 1209 (2010) ("The courts of New Mexico assume the average purchaser of automobile insurance will have limited knowledge of insurance law, and we will not impose on the consumer an expectation that she or he will be able to make an informed decision as to the amount of UM/UIM coverage desired or required without first receiving information from the insurance company." (internal quotation marks and citation omitted)). Therefore, the Court finds Plaintiff has adequately pled misrepresentation.

Plaintiff has alleged a viable claim under the UIPA, and therefore the Court **DENIES** Defendant's request to dismiss Count 1.

### III.    Court dismisses breach of contract (Count II)

Defendants argue that Plaintiff has offered no facts to support that any terms of the policy were breached. Doc. 16 at 17. Plaintiff argues that Defendants breached the terms of the contract

by not providing additional coverage or benefits in consideration for the extra premium. Doc. 21 at 15. The Court finds that Plaintiff has failed to plead a breach of contract.

To sustain a claim for breach of contract under New Mexico law, Plaintiff must show "the existence of a contract, breach of the contract, causation, and damages." *Abreu v. N.M. Children, Youth & Fams. Dep't*, 797 F. Supp. 2d 1199, 1247 (D.N.M. 2011). For a contract "to be legally enforceable, New Mexico courts require evidence of an offer, acceptance, consideration, and mutual assent." *Luginbuhl v. City of Gallup*, 2013-NMCA-053, ¶ 15, 302 P.3d 751 (N.M. Ct. App. 2013) (internal quotation marks and citation omitted). (alteration, internal quotation marks, and citation omitted). "Consideration consists of a promise to do something that a party is under no legal obligation to do or to forbear from doing something he has a legal right to do." *Id.* (internal quotation marks and citation omitted). "Furthermore, a promise must be binding. When a promise puts no constraints on what a party may do in the future—in other words, when a promise, in reality, promises nothing—it is illusory, and it is not consideration." *Talbott v. Roswell Hosp. Corp.,* 2005-NMCA-109, ¶ 16, 138 N.M. 189, 118 P.3d 194 (N.M. Ct. App. 2005) (internal quotation marks and citation omitted).

Plaintiff has failed to plead a breach of contract. Instead, Plaintiff alleges that the contract provision is illusory. A party asserting "an illusory contract cannot then turn around and *enforce* the illusory contract against the other party; [Plaintiff] cannot have [his] cake and eat it, too." *McBride v. Peak Wellness Ctr., Inc.*, 688 F.3d 698, 708 (10th Cir. 2012); *see also Joseph E. Montoya & Assocs. v. State*, 704 P.2d 1100, 1102 (N.M. 1985) ("Without a valid contract there can be no breach, and thus no cause of action."); 3 *Williston on Contracts* § 7:7 (4th ed.) (stating that an illusory promise cannot serve as consideration to support a contract). An illusory

11

provision of the contract is unenforceable, and thus, Plaintiff cannot allege a breach of contract on an illusory provision. The Court **GRANTS** Defendants' motion and dismiss Count II.

IV.     **Court declines to dismiss breach of implied covenant of good faith and fair dealing claim (Count III).**

Plaintiff alleges the tort of breach of covenant of good faith and fair dealing, which arises from the special relationship between an insurer and insured. Defendants argue that they have not deprived Plaintiff of the benefits of the agreement. Doc. 16 at 17. Plaintiff argues that Defendants collected premiums without providing coverage and made misrepresentations. Doc. 21 at 16. The Court finds that Plaintiff plausibly alleged a claim for breach of the implied covenant of good faith and fair dealing.

New Mexico recognizes a duty of good faith between insurer and insured. *Ambassador Ins. Co. v. St. Paul Fire & Marine Ins. Co.*, 1984-NMSC-107, ¶ 11, 102 N.M. 28, 30, 690 P.2d 1022, 1024 (internal citation omitted) (1984); *see also Salas v. Mountain States Mut. Cas. Co.*, 145 N.M. 542, 546, 202 P.3d 801 (2009). With insurance contracts, as with every contract, there is an implied covenant of good faith and fair dealing that one party will not do anything that will deprive the other of the benefits of the agreement. *Watson Truck & Supply Co., Inc. v. Males*, 1990-NMSC-105, ¶ 12, 111 N.M. 57, 801 P.2d 639 (1990). "Broadly stated, the covenant requires that neither party do anything which will deprive the other of the benefits of the agreement." *Id.*

As discussed, the Court finds that Plaintiff has adequately pled an illusory coverage and misrepresentation of coverage. These allegations go to the heart of whether Progressive acted in "good faith." The Court therefore finds that Plaintiff has plausibly alleged a claim for breach of

the covenant of good faith and fair dealing and **DENIES** Defendants' request to dismiss the claim.

V.      **Court declines to dismiss the New Mexico Unfair Trade Practices Act (UPA) claim (Count IV)**

Plaintiff alleges that Defendants violated the New Mexico Unfair Trade Practices Act, NMSA 1978 § 57-12-2, including sections 57-12-2(D)(7), (D)(14), (D)(15), (D)(17), and 57-12-2-(E). Defendants argue that Plaintiff failed to plead a plausible UIPA claim because stacked UM/UIM coverage on a single vehicle has a tangible benefit and Defendant disclosed the nature of stacked UM/UIM coverage. Doc. 16 at 19. Plaintiff argues that there is no benefit. Doc. 21 at 16. The Court disagrees with Defendants and finds that Plaintiff adequately pled a UPA claim.

"To state a claim under the UPA, a plaintiff must show that: (1) defendant made an oral or written statement that was either false or misleading; (2) the false or misleading representation was knowingly made in connection with the sale of goods or services; (3) the conduct complained of occurred in the regular course of defendant's business; and (4) the representation may, tends to, or does deceive or mislead any person." *Mulford v. Altria Grp., Inc.*, 242 F.R.D. 615, 621 (D.N.M. 2007), citing *Brooks v. Norwest Corp.*, 136 N.M. 599, 611, 103 P.3d 39 (2004); *see also Ashlock v. Sunwest Bank of Roswell, N.A.*, 107 N.M. 100, 101, 753 P.2d 346, 347 (1988).

Plaintiffs appear to assert that Defendants "misrepresent[ed] to insureds pertinent facts or policy provisions relating to coverages at issue." NMSA § 59A-16-20(A). For the reasons stated above, Defendants failed to provide material information so that a reasonable insured would understand that the single vehicle stacked UM/UIM coverage would have little value. Therefore,

Plaintiffs stated a plausible UIPA claim, the Court **DENIES** Defendants' motion to dismiss Count 4.

**VI.    Court declines to dismiss the civil conspiracy claim (Count V)**

Defendants argue that Plaintiff only offered conclusory allegations that are unsupported by any factual averments. Doc. 16 at 19. Plaintiff argues that the allegations are not conclusory and rather are of specific conduct. Doc. 21 at 19. The Court finds that the allegations are not conclusory.

In order to state a claim for civil conspiracy, Plaintiffs must allege "(1) that a conspiracy between two or more individuals existed; (2) that specific wrongful acts were carried out by the defendants pursuant to the conspiracy; and (3) that the plaintiff was damaged as a result of such acts." *Ettenson v. Burke,* 2001–NMCA–003, ¶ 12, 130 N.M. 67, 17 P.3d 440 (N.M. Ct. App. 2001) (internal quotation marks and citation omitted). "The existence of the conspiracy must be pled either by direct allegations or by allegation of circumstances from which a conclusion of the existence of a conspiracy may be reasonably inferred." *Valles v. Silverman*, 2004-NMCA-019, ¶ 28, 135 N.M. 91, 100, 84 P.3d 1056, 1065 (N.M. Ct. App. 2004).

Plaintiff alleges that Defendants are "part of the Progressive Group of companies and, upon information and belief, operate in concert in implementation of certain polices, procedures, directives, strategies, training, guidance, and the like." Doc. 1-1 ¶ 15 Plaintiff further alleges that "stacked UM/UIM coverage on a single-vehicle policy is a practice engaged in by each of the named Defendants pursuant to a scheme or plan of collective action, or per a collective directive, guidance, policy, procedure, strategy, plan." *Id* ¶ 30. Plaintiff alleges that "Defendants are all related companies, under the Progressive Group of companies, who upon information and belief, offer and sell stacked UM/UIM coverage on single-vehicle policies in the state of New Mexico."

14

*Id.* ¶ 68. The Court does not find these to be conclusory allegations. It is reasonable to infer that Defendants interacted with one another and provided the same insurance policy. For example, the policy only list "Progressive" and does not identify each individual Defendant. Exh. A, Doc. 16-1 at 1-61. The Court finds that Plaintiff has adequately pled a civil conspiracy claim against Defendants, and thus, the Court **DENIES** Defendants' motion to dismiss Count V.

## VII.   Court declines to dismiss unjust enrichment claim (Count VI)

"One who has been unjustly enriched at the expense of another may be required by law to make restitution. This quasi-contractual obligation is created by the courts for reasons of justice and equity[.]" *Hydro Conduit Corp. v. Kemble*, 1990-NMSC-061, ¶ 8, 793 P.2d 855, 857 (1990) (quotation marks omitted). "[T]o prevail on an unjust enrichment claim, a party must demonstrate that: (1) another has been knowingly benefitted at one's expense (2) in a manner such that allow[ing] the other to retain the benefit would be unjust." *Res. Assocs. Grant Writing & Evaluation Servs., Inc. v. Southampton Union Free Sch. Dist.*, 193 F.Supp.3d 1200, 1246-47 (D.N.M. 2016) (quotation marks omitted); *City of Rio Rancho v. Amrep Sw. Inc.*, 2011-NMSC-037, ¶ 54, 260 P.3d 414, 428–29 (2011).

Defendants argue that unjust enrichment claims have been dismissed in cases where there is a contractual relationship between the parties. Doc. 16 at 18. Plaintiff argues that there are not adequate remedies under contract law. Doc. 21 at 17. The Court agrees that unjust enrichment claims are not available where contract law provides full remedy. However, as discussed, Plaintiff has adequately pled that the contract provision is illusory. Therefore, the contract provision is unenforceable, and Plaintiff cannot seek adequate remedy under contract law. "As a general rule, equity will not act if there is a complete and adequate remedy at law." *Belanger v. Allstate Fire & Cas. Ins. Co.,* 588 F. Supp. 3d 1249, 1267 (D.N.M. 2022). The Court finds that

Plaintiff has adequately pled unjust enrichment, and therefore, the Court **DENIES** Defendants'
motion to dismiss Count VI.

**VIII.   Court declines to dismiss the injunctive relief and declaratory judgment claims
(Count VII and VIII)**

Defendant argues that injunctive relief is not a separate claim and is only available where
the underlying claim is meritorious. Doc. 16 at 20. Defendants further argue that Declaratory
Judgment Act does not provide an independent basis for relief unless some other valid cause of
action is stated under the rules of substantive law. *Id.*

Because the Court will deny Defendants' Motion in part, bases for a derivative claim
remain. The Court **DENIES** Defendants' motion as to Plaintiff's injunctive relief and declaratory
judgment claim.

**IX.    Court declines to dismiss the punitive damages claim (Count IX)**

Punitive damages "may be appropriate where a defendant has the requisite culpable
mental state, which includes willfulness or recklessness." *Tellez-Giron v. Conn's Appliances,
Inc.*, No. 17-cv-1074 WJ/SCY, 2018 WL 611361, at *3 (D.N.M. Jan. 29, 2018) (citing N.M. Civ.
UJI 13-1827); *see also Clay v. Ferrellgas, Inc.*, 1994-NMSC-080, ¶ 12, 881 P.2d 11, 14 (1994)
("To be liable for punitive damages, a wrongdoer must have some culpable mental state and the
wrongdoer's conduct must rise to a willful, wanton, malicious, reckless, oppressive, or fraudulent
level."). "Recklessness in the context of punitive damages refers to 'the intentional doing of an
act with utter indifference to the consequences.' " *Nowell v. Medtronic Inc.*, 372 F. Supp. 3d
1166, 1238 (D.N.M. 2019) (*quoting Torres v. El Paso Elec. Co.*, 1999-NMSC-029, ¶ 28, 987
P.2d 386, 397 (1999) (overruled on other grounds)), *aff'd,* No. 19-2073, 2021 WL 4979300 (10th
Cir. Oct. 27, 2021); *cf. Sloan v. State Farm Mut. Auto. Ins.* Co., 2004-NMSC-004, ¶ 2, 85 P.3d

16

230, 232 (2004) (stating, in the context of an insurer's alleged failure to pay or settle a claim, that "punitive damages may only be awarded when the insurer's conduct was in reckless disregard for the interests of the plaintiff, or was based on a dishonest judgment, or was otherwise malicious, willful, or wanton"); *Smith v. Liberty Mut. Fire Ins. Co*., 495 F.Supp.3d 1019, 1034 (D.N.M. 2020) ("To make out a claim for punitive damages for insurance bad faith, a plaintiff must show that the insurer 'acted with reckless disregard for the interest of the nonbreaching party.' ") (quoting *Paiz v. State Farm Fire & Cas. Co*., 1994-NMSC-079, ¶ 24, 880 P.2d 300, 307 (1994)). That a plaintiff has stated a claim for relief is not, by itself, a sufficient basis for a punitive damages claim; rather, the plaintiff must also show the requisite culpable mental state. *See Young v. Hartford Cas. Ins. Co*., 503 F. Supp. 3d 1125, 1209–10 (D.N.M. 2020).

Defendant argues that Plaintiff has failed to allege facts showing that it had a "culpable state of mind." Doc. 16 at 22. However, Plaintiff's allegations that Defendants knew the UM/UIM coverage would not benefit him and made false and misleading statements regarding its value, are sufficient to allege that Defendants were "utterly indifferen[t]" to the consequences of their conduct. *Nowell*, 372 F. Supp. 3d at 1238. While Plaintiff may ultimately be unable to prove entitlement to punitive damages, his Complaint pleads just enough facts to survive dismissal at this stage. Therefore, the Court **DENIES** Defendant's motion as it relates to Count IV.

**IT IS THEREFORE ORDERED** that the Defendant's Motion to Dismiss (**Doc. 15**) is hereby **GRANTED IN PART AND DENIED IN PART** for reasons described in this Memorandum Opinion and Order.

**IT IS FURTHER ORDERED** that Count II in the Complaint is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

_____

**KEA W. RIGGS**
**UNITED STATES DISTRICT JUDGE**