IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JEREMY PECK, on behalf of himself
and all others similarly situated,

      Plaintiff,

v.                                        Civ. No. 1:22-cv-00490-SMD-JFR

PROGRESSIVE NORTHERN
INSURANCE COMPANY, et al.,

      Defendants.

**PLAINTIFF'S UNOPPOSED MOTION FOR ORDER:
(1) PRELIMINARILY APPROVING CLASS SETTLEMENT,
(2) CERTIFYING CLASS FOR SETTLEMENT PURPOSES ONLY,
(3) APPROVING NOTICE TO CLASS MEMBERS,
(4) ESTABLISHING OPT OUT AND OBJECTION PROCEDURES,
(5) APPOINTING A CLASS ADMINISTRATOR,
AND (6) SETTING A FINAL HEARING DATE TO CONSIDER FINAL APPROVAL OF
THE CLASS SETTLEMENT, ATTORNEYS' FEES AND EXPENSES**

Plaintiff Jeremy Peck, by and through his undersigned counsel, Geoffrey R. Romero, Esq., Ray M. Vargas, II, Esq., Paul Zebrowski, Esq. and Thomas A. Biscup, Esq., submits this Unopposed Motion as a result of the parties reaching a settlement in this matter on a Class-wide basis.

The proposed Class Action Settlement Agreement provides substantial benefits to Class Members, including a cash fund of One Million Seven Hundred Sixty-Five Thousand Six Hundred Six Dollars and Thirteen Cents ($1,765,606.13). There are two groups, one where a statute of limitations defense was not available (claims from May 10, 2018, through April 30, 2025) and one where a statute of limitations defense was possible (claims from January 1, 2009, through May 9, 2018).

1

Those class members in the first group ("Automatic Payments") will be reimbursed 100 percent of the earned premium attributable to the stacked component of UM/UIM Coverage (*i.e.,* the aggregate net difference between the UM/UIM Coverage premium earned while the policy was in force and insured a single vehicle with stacked UM/UIM Coverage and the estimated premium that would have been earned had the policy included non-stacked UM/UIM Coverage instead of stacked UM/UIM Coverage). Within Automatic Payments, those receiving $10.00 or more will receive automatic check payments without any action on their part (although they can affirmatively request payment via electronic means). Those receiving less than $10.00 will have to select a method of payment from the settlement website before receiving a payment.

Those in the second group ("Valid Claims for Other Payments") will receive no more than 100% of the earned premium attributable to the stacked component of UM/UIM Coverage, but could receive less, depending on the number of claims. There will be a floor on payments in the aggregate of $37,000.00 and a ceiling of $75,000.00. This group must make a timely claim and select a payment method. The floor and ceiling were based on the number of class members in this group and a reasonable and typical take rate. This group will be paid out of the Settlement Fund, including unclaimed or forfeited amounts from the Automatic Payments group, or from additional funding by Progressive if necessary. Payments to this group occurs later than the Automatic Payments given this structure.

In addition, the parties have agreed to certain declaratory relief regarding future practices in which the Progressive companies have agreed not to sell stacked Uninsured/Underinsured Motorists Coverage on a single vehicle basis in New Mexico. The parties have agreed that a

reasonable valuation for such relief is $500,000.00. Additional terms of the settlement are set forth in **Exhibit 1**, the Class Action Settlement Agreement, and in the text subsequently.

Mr. Peck asks this Court to approve the settlement on a preliminary basis, to certify the class for settlement purposes only, to direct issuance of notice, and to schedule a fairness hearing. The proposed Notice is attached as Exhibit B to the Settlement Agreement, and the proposed long-form notice, which will be available on the proposed settlement website, is attached as Exhibit D to the Settlement Agreement. Progressive does not oppose this Motion. The parties agree that the proposed Class Action Settlement Agreement is fair, reasonable, adequate, and worthy of preliminary approval.

I.      **Standard for Preliminary Approval of Class Action Settlements**

Review and approval of a proposed class action settlement involves two stages: preliminary and final approval. In the preliminary stage, class counsel submits the proposed terms of settlement to the court for a preliminary fairness evaluation. Fed. R. Civ. P. 23(e)(1); Manual for Complex Litigation, Fourth, §21.632. "At the preliminary approval stage, the Court makes a preliminary evaluation of the fairness of the proposed settlement and determines whether it has any reason to not notify class members of the proposed settlement." *Lowery v. City of Albuquerque*, No. CIV 09-0457 JB/WDS, 2012 WL 394392, at *22 (D.N.M. Jan. 24, 2012) (Browning, J.). "There is usually an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for Court approval." H. Newberg, A. Conte, *Newberg on Class Actions* (4th ed. 2002), §11.41.

Under the 2018 amendments to Rule 23(e), in order to grant preliminary approval, the Court must determine, based on sufficient information provided by the parties as required by Rule

23(e)(1)(A), whether giving notice to the class is justified. Such justification is established by the parties' showing that the court will likely be able to approve the proposal under Rule 23(e)(2). Fed. R. Civ. P. 23(e)(1)(B).

In a recent case, Magistrate Judge Yarbrough granted preliminary approval after making appropriate findings under Rule 23:

> Upon preliminary review, there is probable cause to submit the proposal to class members and hold a hearing as to final approval. The Court preliminarily finds the Settlement is fair, reasonable, and adequate. Accordingly, the Settlement is preliminarily approved. In making this determination, the Court has considered the monetary and non-monetary benefits provided to the Settlement Class through the Settlement, the specific risks faced by the Settlement Class in prevailing on their claims, the stage of the proceedings at which the Settlement was reached and the discovery that was conducted, the effectiveness of the proposed method for distributing relief to the Settlement Class, the proposed manner of allocating benefits to Settlement Class Members, and all of the other factors required by Rule 23.

*Charlie v. Rehoboth McKinley Christian Health Care Services,* CIVIL NO. 21-652 SCY/KK, 2023 WL 131060, at *2 (D.N.M. Jan. 9, 2023). Final approval was granted on May 25, 2023. 2023 WL 3648985.

The Rule now provides that final approval of the proposed settlement may be granted "only after a hearing and only on a finding that it is fair, reasonable, and adequate after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate …; and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2).

At the preliminary approval stage, the Court need not reach a final determination whether to approve the proposed settlement agreement pursuant to Rule 23(e)(2). That determination must follow notice to the class, a period of time for class members to object to the

4

settlement, and a fairness hearing. Nonetheless, because the criteria for determining whether class notice is justified is whether the Court is *likely* to approve the settlement, the same factors that will be addressed on the final approval motion are properly considered initially.

The amended Rule supplements, but does not supplant, the controlling jurisprudence in this Circuit. As before, the District Court considering a proposed class action settlement must determine whether the proposed settlement appears to be fair, reasonable, and adequate. *In re Integra Realty Res., Inc.*, 354 F.3d 1246, 1266 (10th Cir. 2004). The Tenth Circuit has utilized a four-factor test for assessing whether a proposed settlement is fair, reasonable, and adequate, which includes: (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable. *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322 (10th Cir.1984). As noted above, the Rule now also requires consideration of adequacy of representation and equitable treatment of class members. Generally speaking, the Court should grant preliminary approval where the proposed settlement "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval." *In re Motor Fuel Temperatures Sales Practices Litig.*, 2011 WL 4431090, at *5 (S.D.N.Y. May 19, 2009) (internal quotation marks and citation omitted).

Once the Court is satisfied that the proposed settlement is worthy of preliminary approval, and determines that the proposed notice to the class is adequate, the Court authorizes notice of the

settlement to the class members and schedules a fairness hearing. Fed. R. Civ. P. 23(e); Manual for Complex Litigation, Fourth, §21.633. The fairness hearing determines whether final approval of the proposed settlement agreement will be granted, based on the factors set forth in Rule 23(e)(2), and considers any objections raised by class members. Fed. R. Civ. P. 23(e)(1); Manual for Complex Litigation, Fourth, §21.634. At the fairness hearing, the Court also determines the amount of the attorneys' fees and costs and the class representative service award. Manual for Complex Litigation, Fourth, §21.726.

## II.    **Factual and Procedural Background**

This lawsuit arises from Mr. Peck's allegations on behalf of himself and the Class that he was sold Uninsured Motorist/Uninsured Motorist (UIM/UM) coverage on a stacked basis on a single vehicle (in Mr. Peck's case, a motorhome). Mr. Peck alleges that he was charged a higher premium for stacked coverage and that stacked coverage on a single vehicle is illusory, *i.e.,* it provides no benefit in exchange for the higher premium. In other words, Mr. Peck received the same benefit as those single vehicle owners who purchased unstacked UIM/UM coverage at a lower premium.

On May 10, 2022, Mr. Peck sued the various Progressive Defendants in the Second Judicial District Court for the state of New Mexico. Plaintiff asserted a variety of claims: (1) Violation of the Trade Practices and Frauds Act, (2) Breach Of Contract, (3) Breach of the Implied Covenant of Good Faith and Fair Dealing and Insurance Bad Faith, (4) Violation of the Unfair Trade Practices Act, (5) Civil Conspiracy to Violate the Trade Practices and Frauds Act, (6) Violation of the Unfair Trade Practices Act and Contractual and Common Law Duties, (7) Unjust Enrichment,

(8) Injunctive Relief, (9) Declaratory Judgment, and (10) for Punitive Damages. Doc. 1-1. Defendants removed the matter to this Court. Doc. 1.

On August 5, 2022, Defendants filed their motion to dismiss (Doc. 15). After full briefing, on March 30, 2023, this Court entered its Memorandum Opinion and Order granting the motion in part and denying the motion in part (Doc. 26). The Court dismissed the breach of contract claim, but declined to dismiss the other claims. Subsequently, Defendants agreed to provide certain discovery and the parties agreed to engage in mediation.

On March 13, 2024, the parties mediated this matter before nationally recognized class action and insurance mediator Rodney Max of Upchurch Watson White & Max. The parties engaged in good faith, arm's-length settlement negotiations. The parties reached agreement on monetary terms, but declaratory/injunctive relief remained outstanding. Mr. Peck's counsel submitted a list of items to defense counsel and subsequent discussions occurred. On or about September 12, 2024, the parties reached agreement on the terms of the declaratory/injunctive relief, thus finalizing the essential settlement terms.

Mr. Peck, through his counsel, believes that the Settlement confers substantial benefits on the Settlement Class and is in the best interest of the Settlement Class. It is also understood that Mr. Peck and counsel believe his claims have substantial merit. Nonetheless, Mr. Peck and counsel recognize the expense and length of continued proceedings necessary to prosecute the claims against Progressive through to final judgment (including motion practice, trial, and potential appeals). Mr. Peck and counsel also have considered the uncertain outcome and risks of further litigation, as well as the difficulties and delays inherent in such litigation.

Plaintiff's counsel is experienced in insurance litigation, including class actions, and is knowledgeable regarding the relevant claims, remedies, and defenses at issue generally in such litigation and specifically in this case. Mr. Peck's counsel has determined that the Settlement set forth in the Settlement Agreement is fair, reasonable, and adequate, and in the best interest of the Settlement Class.

Progressive continues to deny each and all of the claims and contentions alleged against it in this case. Progressive denies all charges of wrongdoing or liability as alleged, or which could be alleged, in this case. However, Progressive has concluded that further litigation would be protracted and expensive. Progressive has considered the uncertainty and risks inherent in any litigation, and Progressive has therefore determined that it is desirable and beneficial that the case be settled in the manner and upon the terms and conditions set forth in this Settlement Agreement.

### III.  The Proposed Settlement Class Should be Certified

If, at the preliminary approval stage, "a class has not been certified, the parties must ensure that the court has a basis for concluding that it likely will be able, after the final hearing, to certify the class." Fed. R. Civ. P. 23(e), 2018 Advisory Committee Note. Here, Mr. Peck contends that the Settlement Class meets all requirements of Rule 23(a) and Rule 23(b)(3) and can be certified by the Court, with Mr. Peck's counsel appointed as Class Counsel and Mr. Peck appointed as Class Representative. Progressive agrees that a class should be certified for the purposes of settlement only and does not object to class certification solely for that purpose.

A.  *The Class Meets the Requirements of Rule 23(a).*

**Numerosity.** The Settlement Class consists of tens of thousands of individuals (63,309 for Automatic Payments group—16,034 at $10+ and 47,275 under $10—and 58,154 in the Valid

Claims for Other Payments group (with some overlap likely), making joinder of all members impracticable. Fed. R. Civ. P. 23(a)(1).

**Commonality.** Mr. Peck alleges that the claims of the Class Members and his claims depend upon common contentions of fact and law that could be resolved for all through a single proceeding. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). For example, one of Mr. Peck's main complaints is that Progressive sold stacked UM/UIM coverage to insureds with single vehicles at higher premiums than those who bought unstacked coverage with a single vehicle, with no difference in coverage (that is, Mr. Peck alleges, the "stacked" coverage on a single vehicle is illusory). That issue is common among the Class Members and resolution of that issue would advance the litigation. *See Rose v. Travelers Home & Marine Ins. Co.,* 2020 WL 4059613, at *5 (E.D. Pa. July 20, 2020) (illusory coverage issue was common and predominated); *Venerus v. Avis Budget Car Rental*, LLC, 723 F. App'x 807, 815 (11th Cir. 2018) (common questions predominate in class action based on Florida consumer protection law arising out of failure to provide promised insurance coverage). For those within the Automatic Payments group, the settlement will fully reimburse them for the excess premiums paid without having to submit a claim document (although the under $10.00 payment members will have to select a payment method). For those in the Valid Claims for Other Payments group, they are likely to receive full payment, although that could change based on the number of claims made.

**Typicality.** To satisfy the typicality requirement, a party seeking class certification must demonstrate that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "[D]iffering fact situations of class members do not defeat typicality ... so long as the claims of the class representative and class members are

9

based on the same legal or remedial theory." *Colo. Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1216 (10th Cir. 2014) (quotations omitted); *Menocal v. GEO Group, Inc.*, 882 F.3d 905, 914 (10th Cir. 2018).

Mr. Peck seeks return of premiums and other damages for himself and on behalf of Class Members as a result of Progressive's violations of its common law and statutory duties. Mr. Peck contends that the Class was subject to the same conduct, the selling of allegedly illusory stacked UM/UIM coverage on single vehicles. Mr. Peck further alleges that the relief he seeks for himself is based on the same nucleus of facts, evidence, and legal theories as the rest of the Class. Any differences between Mr. Peck and the purchasers of stacked single vehicle UM/UIM coverage from Progressive are minimal and unsubstantial. Rule 23(a)(3) is satisfied.

**Adequacy.** "Resolution of ... two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Pruess v. Presbyterian Health Plan, Inc.,* No. 1:19-cv-00629, 2024 WL 3844965, at *9 (D.N.M. Aug. 16, 2024). A representative must be a member of the class and have the same interests and suffer the same injuries as the class. *Id.* As discussed under typicality, Mr. Peck is a member of the class and has the same interests and damages. Mr. Peck has been active in this case, working with counsel to pursue the matter and in bringing about a settlement.

Counsel for Mr. Peck has no conflicts either. Counsel has sued Progressive on many occasions. Counsel has the experience and knowledge to represent the Class vigorously. Mr. Peck is represented by Geoffrey R. Romero, Esq. (Romero, Harada & Winters), Ray M. Vargas, II, Esq. (The Vargas Law Firm), Paul Zebrowski, Esq. and Thomas A. Biscup, Esq. (Zebrowski Law).

The attorneys have extensive experience litigating negligence, UPA, UIPA, and breach of contract cases and have brought liberal joinder and class actions, including class actions under the UPA, in this Court and the state courts of New Mexico as well as other Federal and state courts. Mr. Peck, Plaintiff, further alleges that he is an adequate class representative and there is no reason to find otherwise.

      B.      *The Class Meets the Requirements of Rule 23(b)(3).*

**Predominance.**  The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amgen Inc.*, 568 U.S. at 459 ("Rule 23(b)(3) requires a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class.").

An individual question is one where "members of a proposed class will need to present evidence that varies from member to member," while a common question is one where "the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045, 194 L. Ed. 2d 124 (2016) (*citing* 2 Rubenstein, Newberg on Class Actions § 4:50, pp. 196–197 (5th ed. 2012) (internal quotation marks omitted)).

If the liability issues are common to the class, common questions will generally predominate.  Cases dealing with the legality of standardized documents or conduct are generally appropriate for resolution by class action because the document or conduct is the focal point of the analysis. *See Naylor Farms, Inc.*, 923 F.3d at 795 (10th Cir. 2019)(class certification is appropriate in case involving oil and gas leases with similar provisions); *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108 (2nd Cir. 2013) *cert. denied sub nom. US Foods, Inc. v. Catholic Healthcare*

*West*, 134 S. Ct. 1938, 188 L. Ed. 2d 960 (2014) (predominance will be found in the absence of material differences in contract language); *Hanks v. Lincoln Life & Annuity Co. of New York*, 330 F.R.D. 374, 382 (S.D.N.Y 2019) (contract language at issue does not vary by individual class member and is not materially different across the eighteen policies…Therefore, adjudication of the question of breach "will focus predominantly on common evidence").

Here, Mr. Peck alleges there are no individual questions relating to liability and the damages are standardized across the class. Most importantly, Mr. Peck alleges the Class's claims are susceptible to generalized proof because they all rest on the purchase of single vehicle stacked UM/UIM coverage at premium amounts higher than for single vehicle unstacked UM/UIM coverage. This overarching issue is the same or virtually the same for every class member. The issue of whether the coverage was illusory is the same for all class members as well. For that reason, Mr. Peck contends the factual and legal issues concerning the violations of New Mexico law predominate over any other possible issues.

**Superiority.** The class action format is a superior method for resolving this dispute. For most members, maintaining an individual suit is not worthwhile. A majority of the Automatic Payments group is entitled to less than $10.00 in payments. Individually, such amounts would never be recovered. But through the class action medium, they become viable due to the large number of Class Members. The fundamental purpose of the money damages class action is to vindicate consumer's rights in cases like this.

In addressing whether a proposed class action is superior to other available methods of adjudicating the controversy, courts start with the four factors in Rule 23(b)(3)(A)-(D):

> 1. the class members' interests in individually controlling the prosecution or

>    defense of separate actions;
>
>    2.   the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
>    3.   the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
>    4.   the likely difficulties in managing a class action.

*Id.; see Daye v. Cmty. Fin. Serv. Centers, LLC*, 313 F.R.D. 147, 165 (D.N.M. 2016).

Mr. Peck contends that most Class Members likely do not know they even have claims against Progressive. It is fair to say that most Class Members would not know they purchased allegedly illusory coverage. It is highly unlikely that most would bring their own individual actions, especially given the small individual amounts. Even if they were aware of their potential claims, the cost of individual litigation would in nearly all cases eclipse the potential recovery.

All the requirements of Rule 23(b)(3) are met for settlement purposes. There are common questions of law and fact that predominate over any questions affecting only individual class members and the class action is superior to any other available methods for adjudicating this controversy.

**IV.**   **Summary of the Settlement Terms and Proposed Distribution**

The proposed Class Action Settlement Agreement and the plan of distribution therein provides substantial benefits to class members, and is worthy of preliminary approval.

### A.     *Cash Payments to Class Members.*

#### 1.     Automatic Payments.

The Class Members who paid stacked, single vehicle UM/UIM premiums during the six years prior to the filing of the Complaint (where no statute of limitations period defense exists) will receive full reimbursement of the excess premiums paid (*i.e.,* the difference between premiums paid for single vehicle stacked UM/UIM coverage, and the corresponding premiums charged for single vehicle unstacked UM/UIM coverage). Progressive will make these payments directly to the applicable Class Members without the need for any Class Member to file a claim. Those whose payments are less than $10.00 will have to select a payment method, while those whose payments are $10.00 or above will either receive an automatic check or be permitted to direct payment via a different method.

#### 2.     Valid Claims for Other Payments.

For the group of Class Members who paid premiums for single vehicle stacked coverage more than six years ago (there likely will be overlap between this group and the Automatic Payments group group), Progressive will pay on a claims-made basis. There is a floor of $37,000.00 in the aggregate and a cap of $75,000.00. The amount was established based on the amount at issue prior to six years before the filing of the complaint and the typical take rate for such funds. Class Members in this group who present valid claims will be paid no more than 100% of the difference between the premiums they paid for single vehicle stacked UM/UIM coverage and the corresponding premiums charged for single vehicle unstacked UM/UIM coverage during the pre-limitations period. Depending on the total number of claims and amounts of unclaimed funds, it could be that this group receives less than 100% on a pro rata basis. Class Members who

14

timely submit a Valid Claim, as approved through the Notice Program described in Section V of the Settlement Agreement, and who make a payment method selection timely, shall be eligible to receive payment.

  B. *Non-Monetary Relief.*

Within a reasonable time after the entry of a Final Approval Order and Judgment and approval by the Department of Insurance, Progressive will (i) implement changes such that existing and future New Mexico insureds with single-vehicle insurance policies will not be offered stacked UM/UIM Coverage, and (ii) for those New Mexico policyholders for whom intra-policy stacking of UM/UIM Coverage is an available option on a multi-vehicle policy, Progressive agrees to alert such policyholders whose policies incept with a single vehicle of the option to elect intra-policy stacked UM/UIM Coverage in the event they later add an additional vehicle to their policy. Although the value of such relief is difficult to determine, the parties have agreed on a value of $500,000.00 for this relief.

  C. *Notice.*

Plaintiff's proposed Notice of Class Action Settlement explains class members' right to object and/or opt-out to the proposed Class Action Settlement Agreement. Plaintiffs request that class members who wish to object and/or opt-out be ordered to do so in writing, postmarked no later than forty-five (45) days after the mailing deadline for the Notice. Progressive has agreed to pay administrative costs.

  D. *Award of Attorneys' Fees.*

Plaintiff requests that the Court grant preliminary approval to an award of attorney's fees in the amount of $906,242.45) (which is comprised of 40% of the sum of the Settlement Fund and

15

the amount of $500,000.00 that is the value attributed to the Injunctive Relief); and (b) an award of reimbursement for the New Mexico Gross Receipts Tax of up to Seventy-One Thousand Three Hundred Sixty-Six Dollars and Fifty-Nine Cents ($71,366.59) (7.875% x $906,242.45). These fees are to paid separately by Defendants and not from the funds directed towards reimbursement of the class members.

  E. *Service Award to Plaintiff.*

Plaintiff requests that the Court grant preliminary approval to an incentive award of Twenty Thousand Dollars ($20,000.00) to Mr. Peck to be paid by Progressive. "[C]ourts regularly give incentive awards to compensate named plaintiffs for the work they performed—their time and effort invested in the case." *Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 861 F.3d 1182, 1195 (10th Cir. 2017). "The practice of granting incentive awards to Class Representatives is common and widespread in class litigation." *Ponca Tribe of Indians of Oklahoma v. Cont'l Carbon Co.*, No. 05-445 (C), 2009 WL 2836508, at *2 (W.D. Okla. July 30, 2009) (approving awards ranging from $1,000 to $15,000 for class representatives). "[I]ncentive awards are an efficient and productive way to encourage members of a class to become class representatives, and to reward the efforts they make on behalf of the class." *Shaw v. Interthinx, Inc.*, No. 13-CV-01229-REB-NYW, 2015 WL 1867861, at *8 (D. Colo. Apr. 22, 2015) (internal quotation marks and citation omitted) (awarding $10,000 to each of five named plaintiffs); *see also*, *Jones v. I.Q. Data Int'l, Inc.*, No. 1:14-CV-00130-PJK, 2015 WL 5704016, at *2 (D.N.M. Sept. 23, 2015) (approving an incentive award of $20,000 out of a $1,000,000 settlement fund). Mr. Peck was actively involved with counsel in the pursuit of the case and in the efforts to resolve it on behalf of the Class.

## V.  Preliminary Approval of the Settlement Agreement is Appropriate

*A.  The proposed Class Action Settlement Agreement is Fair, Reasonable, and Adequate.*

For all of the reasons set forth herein, the proposed Class Action Settlement Agreement is fair, reasonable, and adequate, is highly likely to meet the requirements of Rule 23(e)(2), and is worthy of notice to the class.

Under Fed. R. Civ. P. 23(e)(2), a class action settlement must be "fair, reasonable and adequate." The Tenth Circuit has instructed district courts to analyze the following factors to determine whether this standard is met: (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, such that the ultimate outcome of the litigation is in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable. *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002). An evaluation of the above-referenced factors fully supports preliminary approval of the proposed Class Settlement.

First, the settlement was fairly and honestly negotiated. Prior to reaching a settlement, the parties engaged in voluntary review of information produced by Progressive. The parties also engaged in extensive good-faith negotiations at arm's length before reaching agreement on the terms of the proposed settlement for the Class, negotiations that continued for many months regarding the non-monetary relief after the parties verbally agreed to settlement in the ongoing mediation.

Second, serious questions of law and fact exist which place the ultimate outcome of this litigation in doubt, including whether, and to what extent, Progressive sold illusory coverage.

17

Progressive denies that it sold illusory coverage or charged excessive premiums on single vehicle stacked UM/UIM coverages or has acted improperly and would vigorously defend its rights if the case were litigated further. Third, the value of an immediate recovery to the Class clearly outweighs the mere possibility of future relief after additional protracted and expensive litigation. As per the parties' calculations, the value of the amount which Progressive has agreed to pay the Class Members to settle their claims plus the future relief, including injunctive relief, exceeds $2,250,000.00. This avoids the risk to the Class Members of a recovery of a substantially smaller amount at an uncertain date in the future.

Finally, it is the judgment of the parties and their counsel that the proposed Settlement Agreement is fair and reasonable.

B.     *The Proposed Notice of Class Action Settlement Should Be Approved.*

Under Fed. R. Civ. P. 23(e)(1)(B), class members are entitled to notice of the proposed Class Action Settlement, and an opportunity to object before it is finally approved by the Court. The Notice of Class Action Settlement proposed by Plaintiff is clear and straightforward, providing class members with information to evaluate whether to object to the Class Action Settlement Agreement, as well as directions on how to seek further information. *See* Exhibit A of Settlement Agreement; *see also* Exhibit D of Settlement Agreement.

Plaintiff plans to use an experienced administrator, Epiq, to manage the proposed notice. The Declaration of Cameron R. Azari, Senior Vice President of Epiq Class Action & Claims Solutions, Inc., is attached as Exhibit 2 and provides additional details regarding Notice and Administration. The proposed Notice of Class Action Settlement will be sent by email to addresses obtained from Defendants' records. If Progressive does not have a valid email address, notice shall

be sent by first class mail to those Settlement Class Members' last known address. The last known address shall be determined from information reasonably available in Progressive's files, which will be run through the United States Postal Service's national change of address database prior to mailing by the Settlement Administrator.

A copy of the Claim Form for the Valid Claims for Other Payments group, substantially in the form attached hereto as Exhibit A of the Settlement Agreement, will be available on the Settlement Website identified in the Class Notice and can be requested to be received in the mail from the Settlement Administrator.

**VI.    Conclusion and Relief Requested**

Plaintiff respectfully requests that the Court preliminarily approve the Class Action Settlement Agreement, enter an order directing the issuance of the proposed Notice of Class Action Settlement, and schedule a fairness hearing.

DATED this 10th day of October, 2025.

Respectfully submitted,

**ROMERO HARADA & WINTERS**

Geoffrey R. Romero
4801 All Saints Road NE
Albuquerque, NM 87120
Phone: (505) 247-3338
Fax: (505) 271-1539
Geoff@RHWLawNM.com

**THE VARGAS LAW FIRM LLC**

Ray M. Vargas, II
807 Silver Ave SW
Albuquerque, NM 87102-3020
Phone: (505) 242-1670
ray@vargaslawfirmabq.com

19

**ZEBROWSKI LAW**

*/s/Thomas A. Biscup*
Paul Zebrowski
Thomas A. Biscup
4801 All Saints Road NE
Albuquerque, NM 87120
Phone: (505) 715-5161
Fax: (586) 566-6898
paul@zebrowskilaw.com
tom@zebrowskilaw.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on October 10, 2025, I filed the foregoing along with the referenced exhibits through the ECF system, which will provide notice and serve a copy on all counsel of record.

*/s/Thomas A. Biscup*
*Counsel for Plaintiff*