**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**JEREMY PECK, on behalf of himself
and all others similarly situated,**

       **Plaintiff,**

**v.**                                **Civ. No. 1:22-cv-00490-SMD-JFR**

**PROGRESSIVE NORTHERN INSURANCE COMPANY, et al.,**

       **Defendants.**

**<u>PLAINTIFF'S UNOPPOSED MOTION AND MEMORANDUM OF LAW
IN SUPPORT OF FINAL APPROVAL OF CLASS SETTLEMENT
AND NOTICE PROGRAM AND RELATED RELIEF</u>**

Plaintiff Jeremy Peck by and through his undersigned counsel, Geoffrey R. Romero, Esq., Ray M. Vargas, II, Esq., Paul Zebrowski, Esq. and Thomas A. Biscup, Esq., submits this Unopposed Motion seeking Final Approval of the Class Settlement reached by the parties and the Notice Program and Related Relief.

Per Federal Rule of Civil Procedure 23(e), Plaintiff seeks entry of a Final Order and Judgment, which: (1) grants final certification of the Settlement Class, (2) final approval of the proposed Settlement as fair, adequate, and reasonable, (3) approves the form, content, and manner of the Settlement Class Notice and Notice Program, and (4) finds there are no objections to the proposed Settlement and that the Settlement is binding as to all Class Members (including the member who submitted a late opt-out request). Progressive does not oppose this motion but denies all liability and any allegations of wrongdoing.

By Order dated October 29, 2025 (doc. 55), this Court granted Preliminary Approval of the Class Settlement. Per the schedule set forth in that Order, Plaintiff timely submits this Motion. Plaintiff submits that the prerequisites for final class approval have been met, as detailed below,

and seeks this Court's final approval.

## Factual and Procedural Background

This lawsuit arises from Mr. Peck's allegations on behalf of himself and the Class that he was sold Uninsured Motorist/Uninsured Motorist (UIM/UM) coverage on a stacked basis on a single vehicle (in Mr. Peck's case, a motorhome). Mr. Peck alleges that he was charged a higher premium for stacked coverage and that stacked coverage on a single vehicle is illusory, *i.e.,* it provides no benefit in exchange for the higher premium. In other words, Mr. Peck received the same benefit as those single vehicle owners who purchased unstacked UIM/UM coverage at a lower premium.

On May 10, 2022, Mr. Peck sued the various Progressive Defendants in the Second Judicial District Court for the state of New Mexico. Plaintiff asserted a variety of claims: (1) Violation of the Trade Practices and Frauds Act, (2) Breach Of Contract, (3) Breach of the Implied Covenant of Good Faith and Fair Dealing and Insurance Bad Faith, (4) Violation of the Unfair Trade Practices Act, (5) Civil Conspiracy to Violate the Trade Practices and Frauds Act, (6) Violation of the Unfair Trade Practices Act and Contractual and Common Law Duties, (7) Unjust Enrichment, (8) Injunctive Relief, (9) Declaratory Judgment, and (10) for Punitive Damages. Doc. 1-1. Defendants removed the matter to this Court. Doc. 1.

On August 5, 2022, Defendants filed a motion to dismiss (Doc. 15). After full briefing, on March 30, 2023, this Court entered its Memorandum Opinion and Order granting the motion in part and denying the motion in part (Doc. 26). The Court dismissed the breach of contract claim, but declined to dismiss the other claims. Subsequently, Defendants agreed to provide certain discovery and the parties agreed to engage in mediation.

On March 13, 2024, the parties mediated this matter before nationally recognized class action and insurance mediator Rodney Max of Upchurch Watson White & Max. The parties engaged in

good faith, arm's-length settlement negotiations. At all times Plaintiff dutifully advanced the interests of the Class. The parties reached agreement on monetary terms, but declaratory/injunctive relief remained outstanding. Injunctive relief was an important aspect of this suit to prevent similar harm, as alleged in the Complaint, from happening to other New Mexicans in the future.  Mr. Peck's counsel submitted a list of items to defense counsel and subsequent discussions occurred. On or about September 12, 2024, the parties reached agreement on the terms of the declaratory/injunctive relief, thus finalizing the essential settlement terms.

It took some time for verification of information, including Progressive's ability to implement the changes needed to comply with the injunctive relief remedy, and to work out the language of the Settlement Agreement and related documents (notices, etc.).  On October 10, 2025, Mr. Peck filed his Unopposed Motion for Preliminary Approval and related matters (doc. 54).  On October 29, 2025, this Court issued its Order (doc. 55) granting preliminary approval of the settlement, finding that settlement class certification is likely, finding that appointment of Mr. Peck as class representative and appointment of Plaintiff's counsel as class counsel is likely, and setting dates for notices, etc.

Plaintiff, through his counsel, believes that the Settlement confers substantial benefits on the Settlement Class and is in the best interest of the Settlement Class. Plaintiff, through his counsel, also believes that the claims have substantial merit.  Nonetheless, Plaintiff, through his counsel, recognizes and acknowledges the expense and length of continued proceedings necessary to prosecute the case against Progressive through discovery, motions practice, trial, and potential appeals. He has also considered the uncertain outcome and risks of further litigation, as well as the difficulties and delays inherent in such litigation. Plaintiff's counsel is experienced in class action insurance litigation and knowledgeable regarding the relevant claims, remedies, and defenses at

issue generally in such litigation and specifically in this case. Class Counsel has determined that the Settlement Agreement is fair, reasonable, and adequate, and in the best interest of the Settlement Class.

Progressive continues to deny each and all of the claims and contentions alleged against it in the case. Progressive denies all charges of wrongdoing or liability as alleged, or which could be alleged, in the case. However, Progressive has concluded that further litigation would be protracted and expensive. Progressive has considered the uncertainty and risks inherent in any litigation, and Progressive has therefore determined that it is desirable and beneficial that the case be settled in the manner and upon the terms and conditions set forth in this Settlement Agreement.

The Motion for Preliminary Approval approving the Class settlement and the proposed notice procedure was filed on October 10, 2025 (doc. 54). The Order on Preliminary Approval was granted on _October 29, 2025 (doc. 55).

Upon entry of the Court's Order, Epiq Class Action & Claims Solutions, Inc., the Administrator for the Class, implemented the Notice Program set forth in the Settlement Agreement. **Exh. A**, Declaration of Cameron R. Azari, Esq., on Implementation and Adequacy of Notice Program, ℙ 3. Mr. Azari is Senior Vice President of Epiq and the Managing Director of Epiq Legal Noticing, a business unit of Epiq focused on large scale, unbiased, legal noticing programs. *Id.,* ℙ 10.

Epiq sorted data received from Progressive and eliminated duplicates. The end result was "123,194 unique, identified Settlement Class Members records who were sent notice." *Id.,* ℙ 11. Over 50,000 email notices were sent and over 71,000 postcard notices were sent. *Id.,* ℙℙ 12, 14.

Overall, notice was delivered to "122,855 of the 123,194 unique, identified Settlement Class Members." *Id.,* ℙ 18. "[I]ndividual notice efforts reached approximately 99% of the identified Settlement Class." *Id.*

Mr. Azari then describes the dedicated website and phone number among other aspects of the notice program.   The deadline to opt-out of the Settlement or to lodge objections was January 12, 2026. Order on Preliminary Approval (doc. 55, ℙ 18)(45 days after Notice date); **Exh. A**, ℙ 24. "As of February 2, 2026, Epiq has received one request for exclusion, which was postmarked after the exclusion deadline [and] is aware of no objections to the Settlement." *Id.*   Counsel for Plaintiff is unaware of any objections.  Counsel for Defendants is unaware of any objections.

## **MEMORANDUM OF LAW**

I.    **This Court should grant final certification of this matter as a class action for settlement purposes pursuant to Fed. R. Civ. P. 23(a) and (b)(3).**

As set forth in the Motion for Preliminary Approval and as preliminarily determined by this Court, this matter meets the criteria for certification of a settlement class.  This Court should grant final certification at the final approval hearing.

This case meets the Rule 23(a) requirements.  The Class consists of more than one hundred thousand individuals, making joinder impractical (numerosity), there are common issues applicable to all class members (such as being sold stacked UIM coverage on a single vehicle at a higher premium than unstacked single vehicle UIM coverage where paying for stacked coverage provides no benefit), the resolution of which will advance or resolve the case (commonality), the claims are based on the same legal theory (typicality), neither Mr. Peck nor counsel have any conflicts with the class members and Mr. Peck and counsel have vigorously pursued this matter

(adequacy).  Mr. Peck is a member of the class and suffered the same harm as the other class members.

The class meets the requirements of Rule 23(b)(3) as well.  The common questions predominate here, particularly the primary issue whether Progressive sold illusory stacked UIM coverage on a single vehicle policy at a higher premium than for unstacked UIM coverage on a single vehicle policy.  That liability issue is subject to common proof and evidence.  That issue is at the heart of the case, and all other questions derive from it.  The damages are standardized across the class as well.

The class format is superior.  For most members, maintaining an individual suit is not worthwhile. A majority of the Automatic Payments group is entitled to less than $10.00 in payments. Individually, such amounts would never be recovered. But through the class action medium, they become viable due to the large number of Class Members.  The class method does not impede any individual interests in controlling this case, counsel is not aware of similar litigation on the main issues of this case, concentration of the issues in this forum makes sense, and the management of the class action has not been too difficult.  This Court should grant final certification of the Settlement Class.

II. **This Court should grant final approval of the Class Settlement as fair, adequate, and reasonable.**

 As demonstrated below, the Settlement is fair, adequate, and reasonable and, therefore, should be finally approved. Additionally, the Notice to the Class constituted fair and adequate notice and constituted the best practicable Notice under the circumstances, satisfying all requirements of due process and Fed. R. Civ. P. 23.

A.    <u>Standards for Final Approval.</u>

Under Fed. R. Civ. P. 23(e), the trial court should approve a class action settlement that meets certain criteria. Each of the criteria is present in this case and this Court should approve the settlement finally. The Tenth Circuit has identified the various considerations.

> Federal Rule of Civil Procedure 23(e) governs the approval of settlement agreements in class actions. Under the Rule, a district court, before approving a settlement agreement, must find that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In making this determination, a district court must consider whether:
>
> > (A) the class representatives and *class counsel have adequately represented the class*;
> >
> > (B) the proposal was *negotiated at arm's length*;
> >
> > (C) the *relief provided for the class is adequate*, taking into account:
> >
> > > (i) the costs, risks, and delay of trial and appeal;
> > >
> > > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> > >
> > > (iii) *the terms of any proposed award of attorney's fees*, including timing of payment; and
> > >
> > > (iv) any agreement required to be identified under Rule 23(e)(3); and
> >
> > (D) the proposal treats class members equitably relative to each other.
>
> Fed. R. Civ. P. 23(e)(2)(A)-(D) (emphasis added). This court has further noted four factors for evaluation by a district court:
>
> > (1) whether the proposed settlement was fairly and honestly negotiated;
> >
> > (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;

7

(3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and

(4) the judgment of the parties that the settlement is fair and reasonable.

*Wells v. Best Buy Co. (In re Samsung Top-Load Washing Mach. Mktg., Sales Practices & Prods. Liab. Litig.),* 997 F.3d 1077, 1087 (10th Cir. 2021)(quoting *In re Motor Fuel Temperature Sales Pracs. Litig.*, 872 F.3d 1094, 1116-17 (10th Cir.2017)(cleaned up)).  Examination of these factors supports final approval of the Class Settlement.[1]

       B.    <u>The class has been adequately represented.</u>

This factor "focuses on the actual performance of counsel acting on behalf of the class." *Solis,* 2025 U.S. Dist. LEXIS 204077, at *6 (cleaned up).  Counsel spent significant time investigating this case, prepared and pursued it, fought off dismissal, and had begun what was sure to be a long, involved discovery battle.  Lengthy settlement discussions took place, with a mediator and without.  Plaintiff obtained much information regarding this case in verified form.  At various times, it seemed that the litigation would have to resume.  But ultimately an extraordinary settlement occurred, with full reimbursement of excess premiums for tens of thousands of insureds without the need for making a claim.  And Mr. Peck has been actively involved in pursuing this case all along.  The time and effort expended by experienced counsel, the beneficial negotiated outcome, included the cessation in New Mexico of selling stacked single vehicle UIM coverage

---

[1]The Tenth Circuit criteria are known as the *Rutter* factors (*Rutter & Wilbanks Corp. v. Shell Oil Co.,* 314 F.3d 1180, 1188 (10th Cir. 2002)).  "The fourth *Rutter* factor is the only factor that does not directly overlap with Rule 23(e)(2) factors." *Solis v. Wexford Health Sources, Inc.,* No. 22-878 MLG/GBW, 2025 U.S. Dist. LEXIS 204077, at *17 (D.N.M. Oct. 16, 2025).  The first three *Rutter* factors need not be analyzed again. *Id.*

by Progressive, and the lack of any objections demonstrates the strength of representation. *See Solis.*

     C.    <u>The Settlement was negotiated at arm's length, fairly and honestly.</u>

     The first factor supports final approval, because the Settlement was fairly and honestly negotiated. The settlement here arose from "arm's length negotiations between experienced counsel." Here, the settlement "was negotiated at arm's length through a neutral mediator with no evidence of collusion." *In re Progressive Leasing Breach Litig.,* No. 2:23-cv-00783-DBB-CMR, 2025 U.S. Dist. LEXIS 219073, at *9 (D. Utah Nov. 5, 2025). In fact, after the monetary parameters were agreed to in principal, the issue of injunctive relief was negotiated directly between the parties vigorously for a significant amount of time. This creates a strong presumption that the Settlement was fair and adequate. *Marcus v. Kan. Dept. of Revenue,* 209 F. Supp. 2d 1179, 1182 (D. Kan. 2002) ("When a settlement is reached by experienced counsel after negotiations in an adversarial setting, there is an initial presumption that the settlement is fair and reasonable."); *see Reed v. Gen. Motors Corp.,* 703 F.2d 170, 175 (5th Cir. 1983) ("[T]he value of the assessment of able counsel negotiating at arm's length cannot be gainsaid.").

     The Settlement here occurred after the Court denied Progressive's Motion to Dismiss (except as to the breach of contract claim) and after discovery requests that would result in a large effort by Progressive were served. The parties mediated with Rodney Max, well-known national class action mediator who successfully mediated other New Mexico UM/UIM class actions. The parties ultimately reached agreement in principle on the monetary issues. The parties then continued to engage in significant and lengthy negotiations on injunctive relief, finally reaching agreement on the injunctive relief. Plaintiff's counsel's was able to draw on experience from other cases involving insurance company practices, some similar to the issues presented in this case, in

order to negotiate a complex settlement which provides significant benefits to class members and prevent future harm to other New Mexicans. Tens of thousands of claimants will receive full reimbursement of the excess premiums charged for the stacked, single vehicle UIM coverage without having to make a claim.  Tens of thousands of others (in the out of limitations period group) will get up to full reimbursement amount, depending on the number of claims, etc.

Progressive has agreed to stop selling stacked single vehicle UIM coverage in New Mexico as well.  The Settlement is more than adequate and fair, especially given the likelihood that the vast majority of the Class Members had no idea they were being charged excess premiums for no additional coverage. The parties did not engage in any negotiation or discussion of attorney fees/costs or incentive award until all terms of settlement on behalf of the Class were agreed upon.

D.    The relief provided for the class is adequate.

As set forth in the Motion for Preliminary Approval and this Motion, the relief provided to the Class is adequate.  Tens of thousands of class members will get full reimbursement without needing to make a claim and only those with amounts due under $10.00 are required to specify a method of payment.  Those in the limitations period sub group will receive a significant percentage of their excess premiums reimbursed, with a real possibility of obtaining 100%, depending on the number of claims submitted.

Consideration of the costs, risks, and delay of trial and appeal only enhance the adequacy of the relief to the class.  The complexities of premiums and their calculations/factors alone render this case different than other UIM class claims.  That complexity and other factors presented a serious risk of prevailing at trial or on appeal.

The method of processing and distributing relief through Epiq has been highly effective. That so many checks were sent out without any need for class members to do anything speaks volumes on the uniqueness of this settlement process and its adequacy.

    E.    <u>The settlement treats class members equitably relative to each other.</u>

The main settlement group comprised those who paid premiums for stacked single vehicle UIM coverage and for whom no possible statute of limitations defense could be raised. All of those members are to receive full reimbursement without having to make a claim. The only effort required is for those receiving $10.00 or less: they must choose a method of payment. Given the cost of mailing individual checks for such amounts, the requirement to choose payment makes sense.

The other settlement group comprises those for whom Progressive could have raised a statute of limitations defense. Given the harsh nature of a limitations defense, that they are eligible for payment at all is significant. This group does have to make claims and there is a limited amount of money allocated to this group. Again this makes sense, but this group also has the possibility of receiving full reimbursement of their excess premiums depending on the number of claims made.

    F.    <u>The parties believe the settlement is fair and reasonable.</u>

Subsections B – E addressed the factors set forth in the Rule. This subsection F addresses fourth *Rutter* factor. As discussed in footnote 1 above, the first three Rutter factors overlap with the Rule requirements and therefore Mr. Peck incorporates the previous analyses in subsections B – E as addressing the first three *Rutter* factors.

Regarding this fourth *Rutter* consideration, "the recommendation of a settlement by experienced plaintiffs counsel is entitled to great weight." *Solis,* 2025 U.S. Dist. LEXIS 204077,

at *17.  As noted previously and in the Motion for Award of Attorney Fees, counsel for Plaintiff are highly experienced in insurance law and experienced in class action matters.  Counsel for Plaintiff believes that this settlement is objectively fair and reasonable.  It provides full reimbursement for tens of thousands of policyholders and it prevents future Progressive policyholders from paying unnecessary premiums.

G.    The Class Overwhelmingly Supports the Settlement.

Of the 122,855 (out of 123,194) unique, identified Settlement Class Members who received Notice of the Settlement, there were no timely opt outs, but 1 person who untimely sought to opt out. Not a single member has objected to the Settlement.  Only a miniscule .0008% of the Class reacted in any negative way, by opting out albeit without explanation.  The lack of any objections and only one untimely opt out is reflective of the support of the Class for the Settlement. *Fager v. CenturyLink Communs., LLC,* 854 F.3d 1167, 1175 (10th Cir. 2016)(few opt outs and one objection indicated fairness).  "If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement*." Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,* 396 F.3d 96, 118 (2d Cir. 2005)("class appears to be overwhelmingly in favor of the Settlement" where only 18 of 5 million members objected); *Oregon Laborers Emp'rs Pension Tr. Fund v. Maxar Techs. Inc.,* Civil Action No. 19-cv-0124-WJM-SKC, 2024 U.S. Dist. LEXIS 4704, at *14 (D. Colo. Jan. 9, 2024)(lack of objections and small number of opt outs given "great weight").  Here, only untimely opt out and no objections from over 122,000 delivered notices is strong indication that the Class favors the Settlement.

**III.** **This Court should grant final approval to the form, content, and manner of notice to the Class.**

The form, content, and manner of the Notice to the Class also should be finally approved. Fed. R. Civ. P. 23(e)(1) requires that notice of a settlement be "in a reasonable manner to all class members." In terms of content, a settlement notice needs to be reasonably calculated, under all of the circumstances, to apprise the interested parties of the pendency of the proposed settlement and to afford them an opportunity to present their objections. *See Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950). The standard for class action notice is "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Apodoca v. Armada Skilled Home Care of NM LLC,* No. 18-cv-1071 KG/JFR, 2025 U.S. Dist. LEXIS 100231, at *4 (D.N.M. May 27, 2025).

As discussed above, after this Court's Order granting preliminary approval, including the proposed claim form and notices (doc. 55, ℙ 7), Epiq implemented the Notice Program. **Exh. A**, ℙ 10. Epiq was hired as the administrator of the class, including providing notices and payment of settlement funds.

As detailed in Mr. Azari's Declaration, Epiq delivered over 122,000 notices, representing 99% of the Class members. Epiq undertook various efforts to update information where emails or postcards were returned. Epiq created a website, tracked claims made, ran a telephone line for inquiries, sent out detailed information as requested, and otherwise complied with the requirements of the Court's Order, the Settlement Agreement, and Rule 23. **Exh. A**, ℙℙ 12-24. As Mr. Azari's Declaration demonstrates, the reach of the Notice was extremely broad, and there were only a minuscule number of undeliverable notices. **Exh. A**.

Mr. Azari notes that the 2010 Federal Judicial Center's *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* identifies notice reaching between 70–95% of class members is reasonable and that the Notice here went beyond the high end of the FJC's range. Exh. A, ℙ 26.  Mr. Azari goes on to state that the Notice was the best practical notice under the circumstances of this case and met various standards, including Rule 23 and the Manual for Complex Litigation (4th ed.). *Id.,* ℙ 28.  The Notice provided sufficient time for opt outs and objections. *Id.,* ℙ 29.

## IV.   This Court should grant final approval of attorney fees and costs and the class representative incentive award.

These issues are before the Court already on separately filed motion (doc. 56) per the schedule in the Order granting preliminary approval (doc. 55).  No Class Member objected to the proposed attorney's fees, litigation expenses, and incentive awards as stated in the Notice.

## V.   Conclusion.

For the foregoing reasons and those set forth in the attorney fee/incentive award motion, Jeremy Peck asks this Court to its Order:

1.   granting final certification of the Settlement Class;

2.   granting final approval of the proposed Settlement as fair, adequate and reasonable;

3.   approving the form, content, and manner of the Settlement Class Notice and Notice Program;

4.   finding there are no objections to the proposed Settlement and that the Settlement is binding as to all Class Members (including the member who submitted a late opt-out request);

5.   approving attorney's fees and costs and named Plaintiff's incentive award; and

14

6.      granting any other relief the Court deems just and proper.

DATED this 5th day of February, 2026.

Respectfully submitted,

ROMERO, HARADA & WINTERS

Geoffrey R. Romero
4801 All Saints Road NE
Albuquerque, NM 87120
Phone: (505) 247-3338
Fax: (505) 271-1539
Geoff@RHWLawNM.com

THE VARGAS LAW FIRM LLC

Ray M. Vargas, II
807 Silver Ave SW
Albuquerque, NM 87102-3020
Phone: (505) 242-1670
ray@vargaslawfirmabq.com

ZEBROWSKI LAW

                    /s/Thomas A. Biscup
Paul Zebrowski
Thomas A. Biscup
4801 All Saints Road NE
Albuquerque, NM 87120
Phone: (505) 715-5161
Fax: (586) 566-6898
paul@zebrowskilaw.com
tom@zebrowskilaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 5, 2026, I filed the foregoing PLAINTIFF'S UNOPPOSED MOTION AND MEMORANDUM OF LAW FOR FINAL APPROVAL OF CLASS SETTLEMENT AND NOTICE PROGRAM, along with Exhibit A, through the ECF system which will provide notice and serve a copy on all counsel of record.


         /s/Thomas A. Biscup

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JEREMY PECK, *individually and on behalf of*
*all others similarly situated,*

      Plaintiff,

v.                                                 No. 1:22-cv-00490-KWR-JFR

PROGRESSIVE NORTHERN INSURANCE COMPANY,
PROGRESSIVE ADVANCED INSURANCE COMPANY,
PROGRESSIVE CASUALTY INSURANCE COMPANY,
PROGRESSIVE CLASSIC INSURANCE COMPANY,
PROGRESSIVE COMMERCIAL CASUALTY COMPANY,
PROGRESSIVE DIRECT INSURANCE COMPANY
PROGRESSIVE MAX INSURANCE COMPANY,
PROGRESSIVE NORTHWESTERN INSURANCE COMPANY,
PROGRESSIVE PREFERRED INSURANCE COMPANY,
PROGRESSIVE SPECIALTY INSURANCE COMPANY,
PROGRESSIVE WEST INSURANCE CO.,
NATIONAL CONTINENTAL INSURANCE COMPANY, and
UNITED FINANCIAL CASUALTY COMPANY,

      Defendants.

## DECLARATION OF CAMERON R. AZARI, ESQ. ON IMPLEMENTATION AND ADEQUACY OF NOTICE PROGRAM

I, Cameron R. Azari, Esq., declare as follows:

1.    My name is Cameron R. Azari, Esq. I have personal knowledge of the matters set forth herein, and I believe them to be true and correct.

2.    I am a nationally recognized expert in the field of legal notice, and I have served as an expert in hundreds of federal and state cases involving class action notice plans.

3.    I am a Senior Vice President of Epiq Class Action & Claims Solutions, Inc. ("Epiq") and the Managing Director of Epiq Legal Noticing (aka Hilsoft Notifications), a business unit of Epiq that specializes in designing, developing, analyzing, and implementing large-scale, un-biased, legal notification plans.

**Exhibit A**

4.     The facts in this declaration are based on my personal knowledge, as well as information provided to me by my colleagues in the ordinary course of my business at Epiq and Epiq Legal Noticing (hereinafter "Epiq").

## OVERVIEW

5.     This declaration details the successful implementation of the Settlement Notice Program ("Notice Program") and notices (the "Notice" or "Notices") for *Jeremy Peck v. Progressive Northern Insurance Company, et al*., Case No. 1:22-cv-00490 currently pending in the United States District Court for the District of New Mexico.  I previously executed my *Declaration of Cameron R. Azari, Esq on Notice Program* ("Notice Program Declaration") on September 23, 2025, which described the Notice Program, detailed Epiq's class action experience, and attached Epiq's *curriculum vitae*.  I also provided my educational and professional experience relating to class actions and my ability to render opinions on overall adequacy of notice programs. The Notice Program as designed and implemented was the best notice practicable under the circumstances to provide notice to the Settlement Class.

## NOTICE PROGRAM METHODOLOGY

6.     Rule 23 of the Federal Rules of Civil Procedure directs that the best notice practicable under the circumstances must include "individual notice to all members who can be identified through reasonable effort," and that "the notice may be by one or more of the following: United States mail, electronic means, or other appropriate means."[1]  The Notice Program satisfied this requirement.

7.     The Notice Program as designed and implemented reached the greatest practicable number of Settlement Class Members.  With the address updating protocols that were used, the Notice Program individual notice efforts via email and/or mail to identified Settlement Class Members reached approximately 99% of the identified Settlement Class.  The reach was further enhanced by a Settlement Website.  In my experience, the Notice Program was consistent with

---

[1]  Fed. R. Civ. P. 23(c)(2)(B).

DECLARATION OF CAMERON R. AZARI, ESQ. ON IMPLEMENTATION AND
ADEQUACY OF NOTICE PROGRAM

**Exhibit A**

other court-approved notice plans, was the best notice practicable under the circumstances, and satisfied the requirements of due process, including the "desire to actually inform" requirement.[2]

## CAFA NOTICE

8.     On October 20, 2025, Epiq sent two CAFA Notice Packages ("CAFA Notice"), as required by the Federal Class Action Fairness Act of 2005 (CAFA), 28 U.S.C. § 1715.  The CAFA Notice was sent via United Parcel Service ("UPS") to the Attorney General of the United States and the New Mexico Superintendent of Insurance.  Details regarding the CAFA Notice mailing are provided in the *Declaration of Kyle S. Bingham on Implementation of CAFA Notice*, dated October 20, 2025, which is included as **Attachment 1**.

## NOTICE PROGRAM DETAIL

9.     On October 29, 2025, the Court approved the Notice Program and appointed Epiq as the Settlement Administrator in the *Order Granting Plaintiffs' Motion for Preliminary Approval of Settlement Agreement* ("Preliminary Approval Order").  In the Preliminary Approval Order, the Court certified, for settlement purposes only, the following "Settlement Class":

> [A]ll Progressive policyholders between January 1, 2009, and April 30, 2025, who a) Resided in New Mexico; and b) Purchased or otherwise paid for an insurance policy that included stacked UM/UIM Coverage while insuring a single covered vehicle.
>
> Excluded from the Settlement Class are: 1) any claimant who has separately filed suit against any of the Released Parties up to the Notice Date, the subject of which suit is based on or contests the value or benefits provided for stacked UM/UIM Coverage on a single-vehicle insurance policy; 2) any of the Judge(s) presiding over the Action; 3) Progressive and any employee of Progressive; and 4) Settlement Class Members who submit a valid Request for Exclusion prior to the Opt-Out Deadline.

10.     After the Court's Preliminary Approval Order was entered, Epiq implemented the Notice Program.  This declaration details the notice activities undertaken to date and explains

---

[2] "But when notice is a person's due, process which is a mere gesture is not due process.  The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it.  The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected . . . ."  *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950).

DECLARATION OF CAMERON R. AZARI, ESQ. ON IMPLEMENTATION AND ADEQUACY OF NOTICE PROGRAM

**Exhibit A**

how and why the Notice Program was comprehensive and well-suited to reach the Settlement Class. This declaration also discusses the administration activity to date.

## NOTICE PROGRAM

### *Individual Notice*

11.    On October 15, 2025, Epiq received two data files containing 127,878 identified Settlement Class Member records, which included names, email addresses, if any, last known mailing addresses, policy numbers, and insurance claim information ("Class List"). Epiq deduplicated and rolled-up the records and loaded the unique, identified Settlement Class Member records into its database for this Settlement. These efforts resulted in 123,194 unique, identified Settlement Class Members records who were sent notice.

### *Individual Notice – Email Notice*

12.    On November 28, 2025, Epiq commenced sending 53,599 Email Notices to 51,426 identified Settlement Class Members for whom a valid email address was available. Some identified Settlement Class Members had more than one valid email address and an Email Notice was sent to each unique, valid email address, thus resulting in a larger number of Email Notices sent than the number of identified Settlement Class Members. The following industry standard best practices were followed. The Email Notice was drafted in such a way that the subject line, the sender, and the body of the message overcame SPAM filters and ensured readership to the fullest extent reasonably practicable. For instance, the Email Notice used an embedded html text format. This format provided easy-to-read text without graphics, tables, images and other elements that in our experience would have increased the likelihood that the message could have been blocked by Internet Service Providers (ISPs) and/or SPAM filters for this type of email communication. The Email Notices were sent from an IP address known to major email providers as one not used to send bulk "SPAM" or "junk" email blasts. Each Email Notice was transmitted with a digital signature to the header and content of the Email Notice, which allowed ISPs to programmatically authenticate that the Email Notices were from our authorized mail servers. Each Email Notice was also transmitted with a unique message identifier. The Email Notice included

4
DECLARATION OF CAMERON R. AZARI, ESQ. ON IMPLEMENTATION AND
ADEQUACY OF NOTICE PROGRAM

**Exhibit A**

an embedded link to the Settlement Website. By clicking the link, recipients were able to access the Long Form Notice and other information about the Settlement. The Email Notice is included as **Attachment 2**.

13. If the receiving email server could not deliver the message, a "bounce code" was returned along with the unique message identifier. For any Email Notice for which a bounce code was received indicating that the message was undeliverable for reasons such as inactive or disabled account, the recipient's mailbox was full, technical autoreplies, etc., at least two additional attempts were made to deliver the Notice by email.

***Individual Notice – Direct Mail***

14. On November 28, 2025, Epiq commenced sending 71,768 Postcard Notices to identified Settlement Class Members with an associated mailing address for whom a valid email address was not available. Subsequently, on January 2, 2026, Epiq commenced sending 5,320 Postcard Notices to identified Settlement Class Members with an associated mailing address for whom the Email Notice was returned as undeliverable after multiple attempts. The Postcard Notice was sent via United States Postal Service ("USPS") first class mail. The Postcard Notice clearly and concisely summarized the Settlement and the legal rights of the Settlement Class Members. The Postcard Notice is included as **Attachment 3**.

15. Prior to sending the Postcard Notice, all mailing addresses were checked against the National Change of Address ("NCOA") database maintained by the USPS to ensure the Settlement Class Member address information was up-to-date and accurately formatted for mailing.[3] In addition, the addresses were certified via the Coding Accuracy Support System ("CASS") to ensure the quality of the zip code and verified through Delivery Point Validation ("DPV") to verify the accuracy of the addresses. This address updating process is standard for the industry and for the majority of promotional mailings that occur today.

---

[3] The NCOA database contains records of all permanent change of address submissions received by the USPS for the last four years. The USPS makes this data available to mailing firms and lists submitted to it are automatically updated with any reported move based on a comparison with the person's name and known address.

16.    The return address on the Postcard Notices is a post office box that Epiq maintains for this Settlement.   The USPS automatically forwarded Postcard Notices with an available forwarding address order that had not expired ("Postal Forwards").   Postcard Notices returned as undeliverable were re-mailed to any new address available through USPS information, for example, to the address provided by the USPS on returned pieces for which the automatic forwarding order has expired, or to better addresses that may be found using a third-party lookup service.   This process is also commonly referred to as "skip-tracing."   Upon successfully locating better addresses, Postcard Notices were promptly re-mailed.   As of February 2, 2026, Epiq has remailed 571 Postcard Notices.

17.    Additionally, a Long Form Notice (in English) and Claim Form ("Claim Package") were mailed to all persons who requested one via the toll-free telephone number or other means.   As of February 2, 2026, Epiq mailed 50 Claim Packages as a result of such requests.   The Long Form Notice in English is included as **Attachment 4**.   The Claim Form is included as **Attachment 5.**

### *Notice Results*

18.    As of February 2, 2026, an Email Notice and/or Postcard Notice was delivered to 122,855 of the 123,194 unique, identified Settlement Class Members.   This means the individual notice efforts reached approximately 99% of the identified Settlement Class.

### *Settlement Website*

19.    On November 27, 2025, Epiq established a dedicated website for the Settlement with an easy-to-remember domain name (www.nmuimsettlement.com).   Relevant documents are posted on the Settlement Website, including the Settlement Agreement, Preliminary Approval Order, Long Form Notice (in English and Spanish), Claim Form, and Payment Selection Form.   In addition, the Settlement Website includes relevant dates, answers to frequently asked questions ("FAQs"), instructions for how Settlement Class Members could opt-out (request exclusion) from or object to the Settlement prior to the deadlines, contact information for the Settlement Administrator, and how to obtain other case-related information.   Settlement Class Members are also able to submit a Claim Form on the Settlement Website.   The Settlement Website address was

DECLARATION OF CAMERON R. AZARI, ESQ. ON IMPLEMENTATION AND
ADEQUACY OF NOTICE PROGRAM

**Exhibit A**

2ccc

prominently displayed in all notice documents. As of February 2, 2026, there have been 12,278 unique visitor sessions to the Settlement Website, and 31,377 web pages have been presented. The Long Form Notice in Spanish is included as **Attachment 6**.

### *Toll-free Telephone Number and Contact Information*

20.    On November 27, 2025, a toll-free telephone number (1-888-885-4525) was established for the Settlement. Callers are able to hear an introductory message, have the option to learn more about the Settlement in the form of recorded answers to FAQs, and request that a Claim Package be mailed to them. The automated phone system is available 24 hours per day, 7 days per week. The toll-free telephone number is prominently displayed in all notice documents. As of February 2, 2026, there have been 830 calls to the toll-free telephone number representing 2,353 minutes of use.

21.    A postal mailing address was established and continues to be available to allow Settlement Class Members the opportunity to request additional information or ask questions.

### *Claim Submission & Distribution Options*

22.    The Notices provided a detailed summary of relevant information about the Settlement, including the Settlement Website address and how Settlement Class Members who do not request exclusion from the Settlement will receive a payment automatically. The Notices also included information on how Settlement Class Members could file a Claim Form online or by mail for an additional payment, and that Settlement Class Members could choose to file an Election Form online or by mail to update their address, and/or elect to receive a digital payment (with various payment options) instead of a traditional paper check. Epiq worked with counsel for the parties to select an appropriate menu of payment options. The type of digital payment selected does not impact Epiq's compensation for its work as the Settlement Administrator, and no digital option is discouraged relative to other options.

23.    The deadline for Settlement Class Members to file a Claim Form is February 26, 2026. As of February 2, 2026, Epiq has received 3,507 Claim Forms (3,285 online and 222 paper). Since the Claim Deadline has not yet passed, these numbers are preliminary and are subject to

DECLARATION OF CAMERON R. AZARI, ESQ. ON IMPLEMENTATION AND
ADEQUACY OF NOTICE PROGRAM

**Exhibit A**

change.  As standard practice, Epiq is in the process of conducting a complete quality control review of Claim Forms received.  There is a likelihood that after detailed review, the total number of Claim Forms received will change due to duplicate and denied Claim Forms.

### *Request for Exclusion and Objections*

24.    The deadline to request exclusion from the Settlement or to object to the Settlement was January 12, 2026.  As of February 2, 2026, Epiq has received one request for exclusion, which was postmarked after the exclusion deadline.  As of February 2, 2026, Epiq is aware of no objections to the Settlement.  The Exclusion Report is included as **Attachment 7**.

### CONCLUSION

25.    In class action notice planning, execution, and analysis, we are guided by due process considerations under the United States Constitution, by federal and local rules and statutes, and further by case law pertaining to notice.  This framework directs that the notice plan be designed to reach the greatest practicable number of potential class members and, in a settlement class action notice situation such as this, that the notice or notice plan itself not limit knowledge of the availability of benefits—nor the ability to exercise other options—to class members in any way.  All of these requirements were met in this case.

26.    The Notice Program included individual notice via email and/or mail to identified Settlement Class Members.  With the address updating protocols that were used, the Notice Program individual notice efforts reached approximately 99% of the identified Settlement Class.  A Settlement Website further enhanced the reach.  In 2010, the Federal Judicial Center ("FJC") issued a *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*, which is relied upon for federal cases.  This Guide states that, "the lynchpin in an objective determination of the adequacy of a proposed notice effort is whether all the notice efforts together will reach a high percentage of the class.  It is reasonable to reach between 70–95%."[4]  Here, we

---

[4] FED. JUDICIAL CTR, JUDGES' CLASS ACTION NOTICE AND CLAIMS PROCESS CHECKLIST AND PLAIN LANGUAGE GUIDE 3 (2010), available at https://www.fjc.gov/content/judges-class-action-notice-and-claims-process-checklist-and-plain-language-guide-0.

DECLARATION OF CAMERON R. AZARI, ESQ. ON IMPLEMENTATION AND ADEQUACY OF NOTICE PROGRAM

**Exhibit A**

have developed and implemented a Notice Program that readily achieved a reach beyond the high end of that standard.

27.    The Notice Plan followed the guidance for satisfying due process obligations that a notice expert gleans from the United States Supreme Court's seminal decisions, which emphasize the need: (a) to endeavor to actually inform the Settlement Class, and (b) to ensure that notice is reasonably calculated to do so:

    A.    "[W]hen notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it," *Mullane v. Central Hanover Trust*, 339 U.S. 306, 315 (1950); and

    B.    "[N]otice must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections," *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) (citing *Mullane*, 339 U.S. at 314).

28.    The Notice Program as implemented provided the best notice practicable under the circumstances of this case, conformed to all aspects of Federal Rule of Civil Procedure 23 regarding notice, comported with the guidance for effective notice set out in the Manual for Complex Litigation, Fourth, and applicable FJC materials, and satisfied the requirements of due process, including its "desire to actually inform" requirement.

29.    The Notice Program schedule afforded sufficient time to provide full and proper notice to Settlement Class Members before the opt-out and objection deadlines.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct. Executed on February 4, 2026, at Beaverton, Oregon.

                                              _____
                                                Cameron R. Azari

DECLARATION OF CAMERON R. AZARI, ESQ. ON IMPLEMENTATION AND
ADEQUACY OF NOTICE PROGRAM

**Exhibit A**

# Attachment 1

**Exhibit A**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

| | |
|---|---|
| JEREMY PECK, *individually and on behalf of all others similarly situated,*<br><br>    Plaintiff,<br><br>v.<br><br>PROGRESSIVE NORTHERN INSURANCE COMPANY, PROGRESSIVE ADVANCED INSURANCE COMPANY, PROGRESSIVE CASUALTY INSURANCE COMPANY, PROGRESSIVE CLASSIC INSURANCE COMPANY, PROGRESSIVE COMMERCIAL CASUALTY COMPANY, PROGRESSIVE DIRECT INSURANCE COMPANY, PROGRESSIVE MAX INSURANCE COMPANY, PROGRESSIVE NORTHWESTERN INSURANCE COMPANY, PROGRESSIVE PREFERRED INSURANCE COMPANY, PROGRESSIVE SPECIALTY INSURANCE COMPANY, PROGRESSIVE WEST INSURANCE CO., NATIONAL CONTINENTAL INSURANCE COMPANY, and UNITED FINANCIAL CASUALTY COMPANY,<br><br>    Defendants. | Case No.<br>1:22-cv-00490-SMD-JFR |

## <u>DECLARATION OF KYLE S. BINGHAM ON IMPLEMENTATION OF CAFA NOTICE</u>

I, KYLE S. BINGHAM, hereby declare and state as follows:

    1.    My name is KYLE S. BINGHAM.  I am over the age of 25 and I have personal knowledge of the matters set forth herein, and I believe them to be true and correct.

    2.    I am the Senior Director of Legal Noticing for Epiq Class Action & Claims Solutions, Inc. ("Epiq"), a firm that specializes in designing, developing, analyzing and implementing large-scale, un-biased, legal notification plans.  I have overseen and handled Class Action Fairness Act ("CAFA") notice mailings for more than 500 class action settlements.

DECLARATION OF KYLE S. BINGHAM ON IMPLEMENTATION OF CAFA NOTICE

**Exhibit A**

3.      Epiq is a firm with more than 25 years of experience in claims processing and settlement administration.  Epiq's class action case administration services include coordination of all notice requirements, design of direct-mail notices, establishment of fulfillment services, receipt and processing of opt-outs, coordination with the United States Postal Service ("USPS"), claims database management, claim adjudication, funds management and distribution services.

4.      The facts in this Declaration are based on what I personally know, as well as information provided to me in the ordinary course of my business by my colleagues at Epiq.

## CAFA NOTICE IMPLEMENTATION

5.      At the direction of counsel for Defendants Progressive Northern Insurance Company, Progressive Advanced Insurance Company, Progressive Casualty Insurance Company, Progressive Classic Insurance Company, Progressive Commercial Casualty Company, Progressive Direct Insurance Company, Progressive Max Insurance Company, Progressive Northwestern Insurance Company, Progressive Preferred Insurance Company, Progressive Specialty Insurance Company, Progressive West Insurance Company n/k/a Drive Insurance Company, National Continental Insurance Company, and United Financial Casualty Company, two officials (the Attorney General of the United States and the New Mexico Superintendent of Insurance) were identified to receive CAFA notice.

6.      Epiq maintains a list of these federal and state officials with contact information for the purpose of providing CAFA notice.

7.      On October 20, 2025, Epiq sent two CAFA Notice Packages ("Notice").  The Notice was sent via United Parcel Service ("UPS") to the Attorney General of the United States and the New Mexico Superintendent of Insurance.  The CAFA Notice Service List (UPS) is included as **Attachment 1**.

DECLARATION OF KYLE S. BINGHAM ON IMPLEMENTATION OF CAFA NOTICE

**Exhibit A**

8.      The materials sent to the federal and state officials included a Cover Letter, which provided notice of the proposed Settlement of the above-captioned case.  The Cover Letter is included as **Attachment 2**.

9.      The cover letter was accompanied by a CD, which included the following:

a.      **Per 28 U.S.C. § 1715(b)(1) – Complaint and Any Amended Complaints:**

- Class Action Complaint (filed July 1, 2022).

b.      **Per 28 U.S.C. § 1715(b)(3) – Notification to Class Members:**

- Claim Form *(Exhibit A to the Settlement Agreement and Release);*

- Summary Notice *(Exhibit B to the Settlement Agreement and Release);*

- Payment Selection Form *(Exhibit C to the Settlement Agreement and Release);* and

- Long Form Notice *(Exhibit D to the Settlement Agreement and Release).*

c.      **Per 28 U.S.C. § 1715(b)(4) – Class Action Settlement Agreement:** The following documents were included:

- Plaintiff's Unopposed Motion for Order: (1) Preliminarily Approving Class Settlement, (2) Certifying Class for Settlement Purposes Only, (3) Approving Notice to Class Members, (4) Establishing Opt Out and Objection Procedures, (5) Appointing a Class Administrator, and (6) Setting a Final Hearing Date to Consider Final Approval of the Class Settlement, Attorneys' Fees and Expenses;

    - Settlement Agreement and Release *(Exhibit 1 to Plaintiff's Unopposed Motion)*; and

DECLARATION OF KYLE S. BINGHAM ON IMPLEMENTATION OF CAFA NOTICE

**Exhibit A**

     o   Declaration of Cameron R. Azari, Esq. on Notice Program *(Exhibit 2 to Plaintiff's Unopposed Motion)*.

  d.  **Per 28 U.S.C. § 1715(b)(7) – Estimate of Class Members:** A geographic analysis of potential Class Members was included on the CD.

    I declare under penalty of perjury that the foregoing is true and correct.  Executed on October 20, 2025.

_____
KYLE S. BINGHAM

**Exhibit A**

# **Attachment 1**

**Exhibit A**

**CAFA Notice Service List**

**UPS**

| Company | FullName | Address1 | Address2 | City | State | Zip |
|---|---|---|---|---|---|---|
| US Department of Justice | Pamela Bondi | 950 Pennsylvania Ave NW | | Washington | DC | 20530 |
| Office of Superintendent of Insurance | Alice T. Kane | 1120 Paseo de Peralta | | Santa Fe | NM | 87501 |

# Exhibit A

# **Attachment 2**

**Exhibit A**

**CAFA NOTICE ADMINISTRATOR**
10300 SW Allen Blvd
Beaverton, OR 97005
P 503-350-5800
DL-CAFA@epiqglobal.com

October 20, 2025

**VIA UPS**

| |
|---|
| **Class Action Fairness Act – Notice to Federal and State Officials** |

Dear Federal and State Officials:

Pursuant to the Class Action Fairness Act of 2005 ("CAFA"), codified at 28 U.S.C. § 1715, please find enclosed information from Defendants Progressive Northern Insurance Company, Progressive Advanced Insurance Company, Progressive Casualty Insurance Company, Progressive Classic Insurance Company, Progressive Commercial Casualty Company, Progressive Direct Insurance Company, Progressive Max Insurance Company, Progressive Northwestern Insurance Company, Progressive Preferred Insurance Company, Progressive Specialty Insurance Company, Progressive West Insurance Company n/k/a Drive Insurance Company, National Continental Insurance Company, and United Financial Casualty Company (collectively "Defendants") relating to the proposed settlement of a class action lawsuit.

- **Case:** *Jeremy Peck, individually and on behalf of all others similarly situated v. Progressive Northern Insurance Company, et al.,* Case No. 1:22-cv-00490-KWR-JFR.

- **Court:**  United States District Court for the District of New Mexico.

- **Defendants:**  Progressive Northern Insurance Company, Progressive Advanced Insurance Company, Progressive Casualty Insurance Company, Progressive Classic Insurance Company, Progressive Commercial Casualty Company, Progressive Direct Insurance Company, Progressive Max Insurance Company, Progressive Northwestern Insurance Company, Progressive Preferred Insurance Company, Progressive Specialty Insurance Company, Progressive West Insurance Company n/k/a Drive Insurance Company, National Continental Insurance Company, and United Financial Casualty Company.

- **Documents Enclosed**:  In accordance with the requirements of 28 U.S.C. § 1715, please find copies of the following documents associated with this action on the enclosed CD:

  1. **Per 28 U.S.C. § 1715(b)(1) – Complaint and Any Amended Complaints:**

     - Class Action Complaint (filed July 1, 2022).

  2. **Per 28 U.S.C. § 1715(b)(2) – Notice of Any Scheduled Judicial Hearing:**  The Court has not scheduled a preliminary approval hearing or a final approval hearing or any other judicial hearing concerning the settlement agreement at this time.

  3. **Per 28 U.S.C. § 1715(b)(3) – Notification to Class Members:**

     - Claim Form *(Exhibit A to the Settlement Agreement and Release);*

     - Summary Notice *(Exhibit B to the Settlement Agreement and Release);*

**Exhibit A**

**CAFA NOTICE ADMINISTRATOR**
10300 SW Allen Blvd
Beaverton, OR 97005
P 503-350-5800
DL-CAFA@epiqglobal.com

- Payment Selection Form *(Exhibit C to the Settlement Agreement and Release);* and

- Long Form Notice *(Exhibit D to the Settlement Agreement and Release);*

4. **Per 28 U.S.C. § 1715(b)(4) – Class Action Settlement Agreement:** The following documents are included:

  - Plaintiff's Unopposed Motion for Order: (1) Preliminarily Approving Class Settlement, (2) Certifying Class for Settlement Purposes Only, (3) Approving Notice to Class Members, (4) Establishing Opt Out and Objection Procedures, (5) Appointing a Class Administrator, and (6) Setting a Final Hearing Date to Consider Final Approval of the Class Settlement, Attorneys' Fees and Expenses;

    o Settlement Agreement and Release *(Exhibit 1 to Plaintiff's Unopposed Motion)*; and

    o Declaration of Cameron R. Azari, Esq. on Notice Program *(Exhibit 2 to Plaintiff's Unopposed Motion).*

5. **Per 28 U.S.C. § 1715(b)(5) – Any Settlement or Other Agreements:** There are no other Settlements or Agreements between the parties.

6. **Per 28 U.S.C. § 1715(b)(6) – Final Judgment or Notice of Dismissal:** To date, the Court has not issued a final order, judgment or dismissal in the above-referenced action.

7. **Per 28 U.S.C. § 1715(b)(7) – Estimate of Class Members:** The Settlement Class means all Progressive policyholders between January 1, 2009, and April 30, 2025, who: (a) resided in New Mexico; and (b) purchased or otherwise paid for an insurance policy that included stacked UM/UIM Coverage while insuring a single covered vehicle.

  A geographic analysis of potential Class Members is included on the enclosed CD.

8. **Per 28 U.S.C. § 1715(b)(8) – Judicial Opinions Related to the Settlement:** To date, the Court has not issued a final order or judgment in the above-referenced action.

If you have questions or concerns about this notice or the enclosed materials, please contact this office.

Sincerely,

CAFA Notice Administrator

Enclosures

**Exhibit A**

# Attachment 2

**Exhibit A**

Peck v Progressive Notice of Class Action Settlement

**From** Peck v. Progressive Settlement Administrator <noreply@NMUIMSettlement.com>
**To** ███████████████████████████



Name: ██████████
Unique ID: ████████████
PIN: ████

<u>**NOTICE OF CLASS ACTION SETTLEMENT**</u>

<u>**THIS IS NOT A SOLICITATION BUT A NOTICE OF YOUR RIGHTS UNDER A CLASS ACTION SETTLEMENT IN UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW MEXICO (*PECK V. PROGRESSIVE NORTHERN INSURANCE COMPANY, ET AL.*, CASE NO. 1:22-CV-00490-SMD-JFR)**</u>

**YOU ARE RECEIVING THIS NOTICE BECAUSE YOU WERE IDENTIFIED AS HAVING A PROGRESSIVE INSURANCE POLICY IN NEW MEXICO ON A SINGLE VEHICLE (AUTO, MOTORCYCLE, AND/OR RECREATIONAL VEHICLE) WITH STACKED UNINSURED AND UNDERINSURED MOTORIST (UM/UIM) COVERAGE AT SOME POINT DURING THE PERIOD FROM JANUARY 1, 2009, THROUGH APRIL 30, 2025.**

- A Settlement has been reached in this class action about charging premiums for stacked Uninsured/Underinsured Motorist Coverage on single vehicle policies.

- Plaintiff alleged that stacked UM/UIM Coverage on a single vehicle policy provided no benefit in exchange for the higher premium. Progressive denies any liability, and the Parties have reached an agreement that provides benefits in the form of return premiums and equitable relief for the Settlement Class.

- YOU ARE RECEIVING THIS NOTICE BECAUSE YOU HAVE BEEN IDENTIFIED AS ONE OF THE CLASS MEMBERS WHO IS ENTITLED TO RECEIVE AN AUTOMATIC PAYMENT OF THE EXCESS PREMIUMS BETWEEN STACKED AND UNSTACKED COVERAGE, AND THE AMOUNT TO WHICH YOU ARE ENTITLED IS LESS THAN $10.00.

- YOU DO NOT NEED TO SUBMIT A CLAIM FORM TO RECEIVE AN AUTOMATIC PAYMENT. BUT TO RECEIVE AN AUTOMATIC PAYMENT, YOU WILL NEED TO YOU TO THE SETTLEMENT WEBSITE, SELECT A

**Exhibit A**

PAYMENT METHOD, PROVIDE YOUR INFORMATION, AND UPDATE
ANY OTHER INFORMATION, SUCH AS YOUR ADDRESS, NO LATER
THAN **FEBRUARY 26, 2026**. FAILURE TO UPDATE YOUR PERSONAL
INFORMATION AND SELECT A PAYMENT METHOD WILL RESULT IN
FORFEITURE OF YOUR AUTOMATIC PAYMENT BENEFIT. PAYMENTS
WILL BE SENT OUT WITHIN 45 DAYS OF THE EFFECTIVE DATE.

- The Court has preliminarily approved the Settlement and authorized this
  Notice. A more complete Notice may be obtained by contacting Epiq, the
  Settlement Administrator, at 1-888-885-4525, or on the website,
  www.NMUIMSettlement.com. A copy of the Complaint and the Settlement
  Agreement, along with the Court's Order, are available on the website, as
  well.

- The Court will hold a Final Approval Hearing at 2 p.m. on February 23,
  2026, at the U.S. District Court, District of New Mexico, United States
  Courthouse, 100 N. Church Street, Las Cruces, New Mexico, before the
  Honorable Judge Sarah M. Davenport to determine whether to approve
  the Settlement as fair, adequate, and reasonable, among other
  considerations, and to address any objections.

- You may opt out of the Settlement and the class action. If you choose to
  opt out, you will not receive anything from the Settlement. If you opt out,
  you may have your own remedies to pursue. The deadline to opt out is
  **January 12, 2026**.

- You may stay in the class action but object to the proposed Settlement.
  The particular requirements are set forth in the full Notice. The deadline to
  file an objection is **January 12, 2026**.

- The Court has appointed the following as Class Counsel to represent you
  and the other Settlement Class Members.

  Geoffrey R. Romero
  Romero, Harada & Winters
  4801 All Saints Road NW
  Albuquerque, NM 87120

  Ray M. Vargas II
  The Vargas Law Firm LLC
  807 Silver Avenue SW
  Albuquerque, NM 87102

  Paul Zebrowski
  Thomas A. Biscup
  Zebrowski Law
  4801 All Saints Road NW
  Albuquerque, NM 87120

- Class Counsel will ask the Court to award attorneys' fees separately from
  the Settlement Fund.

**Exhibit A**

- For Class Members entitled to an Automatic Payment in an amount less than $10.00, Progressive will send payments within 45 days of the Effective Date. Failure to select a payment method, however, will result in forfeiture of the payment.

---

If ███████████████ should not be subscribed or if you need to change your subscription information for Peck v Progressive, <u>please use this preferences page</u>.

AM041 v 04

**Exhibit A**

# Attachment 3

**Exhibit A**

*Peck v. Progressive Northern Insurance Company*
Settlement Administrator
P.O. Box 3339
Portland, OR 97208-3339

FIRST-CLASS MAIL
PRESORTED
U.S. POSTAGE PAID
PORTLAND, OR
PERMIT NO. 2882

**Unique ID:** 
**PIN:**

## NOTICE OF CLASS ACTION SETTLEMENT

**THIS IS NOT A SOLICITATION BUT A NOTICE OF YOUR RIGHTS UNDER A CLASS ACTION SETTLEMENT IN UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW MEXICO (*PECK V. PROGRESSIVE NORTHERN INSURANCE COMPANY, ET AL.*, CASE NO. 1:22-CV-00490-SMD-JFR).**

**YOU ARE RECEIVING THIS NOTICE BECAUSE YOU WERE IDENTIFIED AS HAVING A PROGRESSIVE INSURANCE POLICY IN NEW MEXICO ON A SINGLE VEHICLE (AUTO, MOTORCYCLE, AND/OR RECREATIONAL VEHICLE) WITH STACKED UNINSURED AND UNDERINSURED MOTORIST (UM/UIM) COVERAGE AT SOME POINT DURING THE PERIOD FROM JANUARY 1, 2009, THROUGH APRIL 30, 2025.**

Questions? Call 1-888-885-4525 or visit www.NMUIMSettlement.com.

*Los hispanohablantes deben llamar al 1-888-885-4525 para obtener más información y asistencia.*



1
1

**Exhibit A**

- A Settlement has been reached in this class action about charging premiums for stacked Uninsured/Underinsured Motorist Coverage on single vehicle policies.

- Plaintiff alleged that stacked UM/UIM Coverage on a single vehicle policy provided no benefit in exchange for the higher premium. Progressive denies any liability, and the Parties have reached an agreement that provides benefits in the form of return premiums and equitable relief for the Settlement Class.

- YOU ARE RECEIVING THIS NOTICE BECAUSE YOU HAVE BEEN IDENTIFIED AS ONE OF THE CLASS MEMBERS WHO IS ENTITLED TO RECEIVE AN AUTOMATIC PAYMENT OF THE EXCESS PREMIUMS BETWEEN STACKED AND UNSTACKED COVERAGE, AND THE AMOUNT TO WHICH YOU ARE ENTITLED IS LESS THAN $10.00.

- YOU DO NOT NEED TO SUBMIT A CLAIM FORM TO RECEIVE AN AUTOMATIC PAYMENT. BUT TO RECEIVE AN AUTOMATIC PAYMENT, YOU WILL NEED TO GO TO THE SETTLEMENT WEBSITE, SELECT A PAYMENT METHOD, PROVIDE YOUR INFORMATION, AND UPDATE ANY OTHER INFORMATION, SUCH AS YOUR ADDRESS, NO LATER THAN **FEBRUARY 26, 2026**. FAILURE TO UPDATE YOUR PERSONAL INFORMATION AND SELECT A PAYMENT METHOD WILL RESULT IN FORFEITURE OF YOUR AUTOMATIC PAYMENT BENEFIT. PAYMENTS WILL BE SENT OUT WITHIN 45 DAYS OF THE EFFECTIVE DATE.

- The Court has preliminarily approved the Settlement and authorized this Notice. A more complete Notice may be obtained by contacting Epiq, the Settlement Administrator, at 1-888-885-4525, or on the website, www.NMUIMSettlement.com. A copy of the Complaint and of the Settlement Agreement, along with the Court's Order, are available on the website, as well.

- The Court will hold a Final Approval Hearing at 2 p.m. on February 23, 2026, at the U.S. District Court, District of New Mexico, United States Courthouse, 100 N. Church Street, Las Cruces, New Mexico, before the Honorable Judge Sarah M. Davenport to determine whether to approve the Settlement as fair, adequate, and reasonable, among other considerations, and to address any objections.

- You may opt out of the Settlement and the class action. If you choose to opt out, you will not receive anything from the Settlement. If you opt out, you may have your own remedies to pursue. The deadline to opt out is **January 12, 2026**.

- You may stay in the class action but object to the proposed Settlement. The particular requirements are set forth in the full Notice. The deadline to file an objection is **January 12, 2026**.

- The Court has appointed the following as Class Counsel to represent you and the other Settlement Class Members.

| Geoffrey R. Romero | Ray M. Vargas II | Paul Zebrowski |
|---|---|---|
| Romero, Harada & Winters | The Vargas Law Firm LLC | Thomas A. Biscup Zebrowski Law |
| 4801 All Saints Road NW | 807 Silver Avenue SW | 4801 All Saints Road NW |
| Albuquerque, NM 87120 | Albuquerque, NM 87102 | Albuquerque, NM 87120 |

- Class Counsel will ask the Court to award attorneys' fees separately from the Settlement Fund.

- For Class Members entitled to an Automatic Payment in an amount less than $10.00, Progressive will send payments within 45 days of the Effective Date. Failure to select a payment method, however, will result in forfeiture of the payment.

# Exhibit A



AM-432 v.04

# Attachment 4

**Exhibit A**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**NOTICE OF CLASS ACTION SETTLEMENT INVOLVING:**

**INSUREDS WHO PURCHASED STACKED UNINSURED AND UNDERINSURED MOTORIST ("UM/UIM") COVERAGE ON NEW MEXICO AUTOMOBILE POLICIES COVERING A SINGLE VEHICLE (AUTOMOBILE, MOTORCYCLE, RV), ISSUED BY, RENEWED BY, OR IN EFFECT WITH ANY OF THE FOLLOWING INSURANCE COMPANIES FROM JANUARY 1, 2009, THROUGH APRIL 30, 2025:**

PROGRESSIVE NORTHERN INSURANCE COMPANY,
PROGRESSIVE ADVANCED INSURANCE COMPANY,
PROGRESSIVE CASUALTY INSURANCE COMPANY,
PROGRESSIVE CLASSIC INSURANCE COMPANY,
PROGRESSIVE COMMERCIAL CASUALTY COMPANY,
PROGRESSIVE DIRECT INSURANCE COMPANY,
PROGRESSIVE MAX INSURANCE COMPANY,
PROGRESSIVE NORTHWESTERN INSURANCE COMPANY,
PROGRESSIVE PREFERRED INSURANCE COMPANY,
PROGRESSIVE SPECIALTY INSURANCE COMPANY,
PROGRESSIVE WEST INSURANCE COMPANY,
NATIONAL CONTINENTAL INSURANCE COMPANY, and
UNITED FINANCIAL CASUALTY COMPANY

**(Collectively, these insurers are described throughout this Notice as "Progressive.")**

**PLEASE CAREFULLY READ THIS COURT-AUTHORIZED NOTICE.
ALL OF ITS TERMS MAY AFFECT YOUR RIGHTS.**

**MAKING A CLAIM OR RECEIVING A PAYMENT WILL NOT CAUSE YOUR
INSURANCE PREMIUMS TO INCREASE.**

- A settlement has been reached in this class action about charging premiums for stacked Uninsured/Underinsured Motorist Coverage ("UM/UIM Coverage") on single vehicle policies.

- This settlement establishes a process for certain individuals to receive automatic payments and others to make Claims for monetary payments. This is true even if you are no longer insured with Progressive.

- This Notice describes your rights, how to submit a Claim or how you will receive automatic payment, how to object to the settlement, how to exclude yourself from the settlement, upcoming deadlines, a hearing on the proposed settlement, and many other details about your legal rights and options in this settlement.

**Do not discard this Notice before reading it carefully.
Keep Reading**

FOR QUESTIONS, CALL 1-888-885-4525 OR VISIT
www.NMUIMSettlement.com
**Los hispanohablantes deben llamar al 1-888-885-4525 para obtener más información y
asistencia.**

**Exhibit A**

**WHAT THIS NOTICE CONTAINS**

**BASIC INFORMATION**

1. Why was this Notice issued? 3
2. Where can I get additional information about the settlement? 3
3. What is the significance of capitalized words in this Notice? 3
4. Which insurance companies are part of this settlement? 3
5. What is this lawsuit about? 3
6. What is Uninsured Motorist/Underinsured Motorist Coverage? 3
7. What is stacked and unstacked UM/UIM Coverage? 3
8. What is a Progressive Policy (or Progressive Policies)? 4
9. What is the Class Period? 4
10. Who is an Insured? 4
11. Why is this a class action? 4
12. Why is there a settlement? 4

**WHO IS IN THE SETTLEMENT?**

13. How do I know if I am part of the settlement? 4
14. Are there some people who are excluded from the settlement? 5

**SETTLEMENT BENEFITS – WHAT YOU MAY GET**

15. What does the settlement provide? 5
16. When will I get my potential repayment? 5
17. Can Claims be made on behalf of a deceased Settlement Class Member? 6
18. What happens to any funds not claimed or paid out? 6

**HOW TO EXCLUDE YOURSELF FROM THE SETTLEMENT OR OBJECT TO THE SETTLEMENT**

19. How do I exclude myself from the settlement? 6
20. If I do not exclude myself, can I sue later? 6
21. If I exclude myself, can I get a payment from this settlement? 6
22. How do I tell the Court if I do not agree with or object to the settlement? 6
23. What is the difference between objecting and asking to be excluded? 7

**THE LAWYERS REPRESENTING YOU**

24. Do I have a lawyer in this case? 7
25. How will the lawyers be paid? 7

**THE SETTLEMENT ADMINISTRATOR**

26. Who is the Settlement Administrator, and how can I contact the Settlement Administrator? 8

**THE COURT'S FINAL APPROVAL HEARING**

27. When and where will the Court decide whether to approve the settlement? 8
28. Do I have to come to the Final Approval Hearing? 8
29. May I speak at the Final Approval Hearing? 8
30. When will the settlement become effective? 8

**THE EFFECT OF THE SETTLEMENT**

31. What am I giving up if I stay in the Settlement Class? 8

**Keep Reading**

**FOR QUESTIONS, CALL 1-888-885-4525 OR VISIT WWW.NMUIMSETTLEMENT.COM**

**Exhibit A**

## BASIC INFORMATION

**1.    Why was this Notice issued?**

The Court in the lawsuit known as *Peck v. Progressive Northern Insurance Company, et al.*, United States District Court for the District of New Mexico, Case No. 1:22-cv-00490-SMD-JFR, authorized this Notice because you have a right to know about a proposed settlement of this case. The lawsuit is pending in the United States District Court for the District of New Mexico before Judge Sarah M. Davenport, who entered an Order preliminarily approving this settlement on October 29, 2025. This Notice explains the Lawsuit, the settlement, your legal rights, what benefits are available to you and how to get them, and who may be eligible. A Final Approval Hearing, at which the Court will consider whether the settlement is fair, reasonable, adequate, and in the best interests of the Class and whether to approve it, is scheduled for February 23, 2026, at 2:00 p.m. Do not contact Judge Davenport or the Clerk of the Court with questions about this settlement or the lawsuit.

**2.    Where can I get additional information about the settlement?**

This Notice is intended to summarize the Settlement. More details are set forth in a Settlement Agreement. If you want a copy of the Settlement Agreement, additional information, or have questions, call 1-888-885-4525 or visit www.NMUIMSettlement.com.

**3.    What is the significance of capitalized words in this Notice?**

Capitalized words in this Notice correspond to terms that are defined in the Settlement Agreement in paragraphs 13–48. Some of these defined terms are also set out in this Notice, but for those that are not, you can refer to the Settlement Agreement, which can be obtained by visiting www.NMUIMSettlement.com.

**4.    Which insurance companies are part of this settlement?**

The settlement includes the automobile insurance companies identified on the cover page of this Notice. Collectively, those companies are referred to throughout this Notice as "Progressive."

**5.    What is this lawsuit about?**

This lawsuit relates to stacked Uninsured and Underinsured Motorist Coverage (referred to throughout this notice as "UM/UIM Coverage") on single vehicle automobile or specialty insurance policies. The Plaintiff has alleged that Progressive sold stacked UM Coverage where they insured a single vehicle and charged a higher premium than on single vehicle policies without stacked coverage. Plaintiff has alleged that there was no benefit to the higher premium charged and that the stacked coverage was illusory and otherwise violated New Mexico law. Progressive denies all allegations of wrongdoing.

**6.    What is Uninsured Motorist/Underinsured Motorist Coverage?**

UM/UIM Coverage refers to a type of automobile insurance, which covers an Insured for damages he or she is legally entitled to recover from the driver or owner of an Uninsured or Underinsured Motor Vehicle for Bodily Injury or Property Damage. An Uninsured or Underinsured driver is a driver who either has no liability insurance coverage, or has liability insurance, but in an amount that is less than the UM/UIM Bodily Injury and Property Damage coverage available to the Insured.

**7.    What is stacked and unstacked UM/UIM Coverage?**

When an Insured has multiple vehicles and selects stacked UM/UIM Coverage, the Insured has UM/UIM Coverage equal to the number of vehicles owned (or a lesser number of two or more) times the UM/UIM Coverage limit amounts. Unstacked UM Coverage is when an insured has rejected stacking and thus only has the amount of UM Coverage selected in the first place available.

**FOR QUESTIONS, CALL 1-888-885-4525 OR VISIT WWW.NMUIMSETTLEMENT.COM**

**Exhibit A**

**8.   What is a Progressive Policy (or Progressive Policies)?**

"Progressive Policy" (or "Progressive Policies") means all automobile insurance policies issued in New Mexico by any of the insurance companies listed on the cover page of this Notice, that were issued, renewed, or in effect during the Class Period and where the Insureds paid for stacked UM Coverage where only one vehicle was insured. For purposes of this Notice and class action, automobile policies include policies covering motorcycles and recreational vehicles.

**9.   What is the Class Period?**

The Class Period covers Progressive Policies issued, renewed, or in effect between January 1, 2009, and April 30, 2025.

**10.   Who is an Insured?**

For purposes of the Settlement, the term "Insured" includes the Named Insured or Insureds on the Progressive Policy or any individual who paid the premiums for a Progressive Policy.

**11.   Why is this a class action?**

In a class action, one or more people called a "Class Representative" (in this case, Jeremy Peck) sue on behalf of people who may have similar claims. All these people constitute a "Settlement Class" and are known as "Settlement Class Members." One court resolves the issues for all Settlement Class Members, except for those who exclude themselves from the Settlement Class.

**12.   Why is there a settlement?**

The Court has not decided this case for or against either side. Instead, both sides have agreed to settle. That way, they avoid the cost of a trial and other court proceedings and the risk of losing, and the people who qualify may receive compensation. The Class Representative and Class Counsel think the settlement is in the best interest of all Settlement Class Members. The settlement does not mean that Progressive did anything wrong.

## WHO IS IN THE SETTLEMENT?

**13.   How do I know if I am part of the settlement?**

The "Settlement Class" means all Progressive policyholders between January 1, 2009, and April 30, 2025, who
   a.   resided in New Mexico; and
   b.   purchased or otherwise paid for an insurance policy that included stacked UM Coverage while insuring only a single covered vehicle.

There are two different groups of Settlement Class Members. Each is described below.

**"Automatic Payments"** group members are those Settlement Class Members who purchased/paid for stacked UM/UIM Coverage where only a single vehicle was covered at any time from May 10, 2018, through April 30, 2025. Automatic Payments members are those in the time period where no statute of limitations defense was available to Progressive. The Automatic Payments group is further divided into those entitled to ten dollars ($10) or more and those entitled to less than that amount, as far as processing and steps to obtaining payment are concerned, as outlined below.

**"Valid Claims for Other Payments"** group members are those Settlement Class Members who purchased/paid for stacked UM/UIM Coverage where a single vehicle was covered at any time from January 1, 2009, through May 9, 2018. Other Payments members are those in the time period where a statute of limitations defense may have been available to Progressive. Other Payments members may receive less than the full amount of the difference between premiums paid for stacked UM/UIM Coverage and unstacked UM/UIM Coverage on single vehicles, depending on the number of Claims made by Other Payments members. The total amount allocated to Other Payments members is no less than $37,000 and no more than $75,000.

**Exhibit A**

## 14.    Are there some people who are excluded from the settlement?

**YES.** There are some people who are excluded from the Settlement Class and Automatic Payments and Other Payments groups. **Read carefully to determine if you are excluded.**

Settlement Class Exclusions:

The following are excluded from the Settlement Class: (1) any persons who make a timely election to be excluded [i.e., opt out of the Settlement Class], as discussed further below; (2) any Claimant who has separately filed suit against any of the Released Parties up to the Notice Date, the subject of which suit is based on or contests the value or benefits provided for stacked UM/UIM Coverage on a single vehicle insurance policy; (3) any of the Judge[s] presiding over the Action; and (4) Progressive and any employee of Progressive.

# SETTLEMENT BENEFITS – WHAT YOU GET

## 15.    What does the settlement provide?

Under this settlement, Progressive will pay one million seven hundred sixty-five thousand six hundred six dollars and thirteen cents ($1,765,606.13) into a Settlement Fund. Progressive also has agreed that it no longer will sell stacked UM/UIM Coverage on single vehicle policies.

Progressive has agreed to make automatic payments to Automatic Payments members. The amount for each Insured is the difference between the premium amounts paid for single vehicle stacked UM/UIM Coverage and the premium amounts that would have been paid for single vehicle unstacked UM/UIM Coverage. Those Automatic Payments members who are entitled to receive ten dollars ($10) or more may (i) do nothing and receive a check by mail to the address the Settlement Administrator has on file; (ii) go to the Settlement Website and provide an updated address to which the Settlement Administrator will send the check; or (iii) go to the Settlement Website and elect a payment method other than check (e.g., PayPal, Venmo, EpiqPay) to receive payment. The Settlement Administrator shall make the Settlement Class Payments pursuant to the Settlement Class Members' response or non-response to this Notice consistent with the above within forty-five (45) days of the Effective Date.

Automatic Payments members who are entitled to receive less than ten dollars ($10) shall have various options to receive a Settlement Class Payment (e.g., check, Paypal, Venmo, EpiqPay) and shall have ninety (90) days after the Notice Date to select a payment option.

Other Payments members will follow procedures similar to Automatic Payments members entitled to less than $10 but shall be required to submit a Claim Form and select a payment method. Other Payments will be no less than $37,000 in the aggregate and no more than $75,000 in the aggregate. No Other Payments member shall receive more than 100% of the difference in premium payments, but may receive less depending on the number of Other Payments Claims made.

The Settlement Administrator shall determine whether all Claims are valid.

## 16.    When will I get my potential repayment?

As set forth above, for Automatic Payments members entitled to $10 or more, Progressive will send payments within 45 days of the Effective Date. Failure to update personal information on the Settlement Website upon receipt of this Notice may delay your payment.

For Automatic Payments members entitled to less than $10, Progressive will send payments within 45 days of the Effective Date. Failure to select a payment method will result in forfeiture of the payment.

Other Payments members will receive payment within 45 days of the Settlement Administrator's determination that there are sufficient unclaimed funds to pay all Claims made by Other Payments members or within 45 days of additional payment made by Progressive of necessary additional funds upon the Settlement Administrator's determination that such additional funds are needed. This latter determination cannot occur sooner than 180 days after the Effective Date of the Agreement.

**FOR QUESTIONS, CALL 1-888-885-4525 OR VISIT WWW.NMUIMSETTLEMENT.COM**

**Exhibit A**

### 17.    Can Claims be made on behalf of a deceased Settlement Class Member?

**YES.** If the Settlement Administrator is notified that a Settlement Class Member is deceased, the Settlement Administrator is authorized to reissue the Settlement Class Payment to the Settlement Member's estate upon receiving proof the Settlement Class Member is deceased and after consultation with Class Counsel and Progressive's Counsel.

### 18.    What happens to any funds not claimed or paid out?

Any unclaimed or forfeited funds left over shall be paid to the non-profit Equal Access to Justice, Inc., subject to the Court's approval.

## HOW TO EXCLUDE YOURSELF FROM THE SETTLEMENT OR OBJECT TO THE SETTLEMENT

### 19.    How do I exclude myself from the settlement?

If you are a Settlement Class Member, you have the right and ability to exclude yourself from the Settlement Class. In order to validly be excluded from the settlement, the potential Settlement Class Member must send a letter that says he or she wants to be excluded from the settlement in *Jeremy Peck v. Progressive Northern Insurance Company, et al.*, United Stated District Court for the District of New Mexico, Case No. 1:22-cv-00490-SMD-JFR, to Progressive and Class Counsel at the addresses identified in this Notice. The letter must include the Settlement Class Member's name, address, and signature and be postmarked by **January 12, 2026**.

### 20.    If I do not exclude myself, can I sue later?

**NO.** Unless you timely exclude yourself, you will be in the Settlement Class. This means that you cannot sue, continue to sue, or be part of any other lawsuit against Progressive concerning the factual allegations, claims, or issues in this case, that you are releasing various claims and parties, as further detailed in paragraphs 35 and 36 of the Settlement Agreement, and that issue and claim preclusion and *res judicata* principles will apply to the fullest extent. It also means that all the Court's orders in this case will apply to you and legally bind you.

### 21.    If I exclude myself, can I get a payment from this settlement?

**NO.** If you timely exclude yourself, you cannot participate in this settlement, but you will retain all rights, claims, and causes of action that you might have against Progressive or the other Released Parties (as defined below and in the Settlement Agreement) should you choose to sue any of them on your own. You will not be legally bound by anything that happens in this lawsuit.

### 22.    How do I tell the Court if I do not agree with or object to the settlement?

If you do not exclude yourself from the Settlement Class pursuant to the procedures described in question 19 above, you can object to the settlement. To be valid, an objection must include: (a) the objector's full name, address, telephone number, and email address (if any); (b) information identifying the objector as a Settlement Class Member; (c) a written statement of all grounds for the objection, accompanied by any legal support the objector cares to submit; (d) the identity of all lawyers (if any) representing the objector; (e) the identity of all of the objector's lawyers (if any) who will appear at the Final Approval Hearing; (f) a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection; (g) a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; and (h) the objector's signature or the signature of the objector's duly authorized lawyer or other duly authorized representative (along with documentation setting forth such representation).

In addition to the foregoing, objections should also provide the following information: (a) a list, by case name, court, and docket number, of all other cases in which the objector (directly or through a lawyer) has filed an objection to any proposed class action settlement within the last three [3] years; (b) a list, by case name, court, and docket number, of all other cases in which the objector's lawyer [on behalf of any person or entity] has filed an objection to any proposed class action settlement within the last three [3] years; and (c) a list, by case number, court, and docket number, of all other cases in which the objector has been a named plaintiff in any class action or served as a lead plaintiff or class representative.

**FOR QUESTIONS, CALL 1-888-885-4525 OR VISIT WWW.NMUIMSETTLEMENT.COM**

**Exhibit A**

To be considered timely, any valid objection in the appropriate form must be **filed** with the Clerk of the United States District Court for the District of New Mexico, no later than **January 12, 2026**. Settlement Class Members must **mail** a copy of their objection to the following three different places postmarked no later than **January 12, 2026**.

| Court | Class Counsel | Progressive's Counsel |
|---|---|---|
| U.S. District Court<br>District of New Mexico<br>Pete V. Domenici U.S. Courthouse<br>333 Lomas Blvd NW<br>Suite 270<br>Albuquerque, NM 87102 | Geoffrey Romero<br>Romero, Harada & Winters<br>4801 All Saints Road NW<br>Albuquerque, NM 87120<br>Phone: (505) 247-3338<br>Fax: (505) 271-1539<br>Geoff@RHWLawNM.com | Michael E. Mumford<br>Baker Hostetler LLP<br>127 Public Square<br>Suite 2000<br>Cleveland, OH 44114 |

### 23.   What is the difference between objecting and asking to be excluded?

Objecting means you are telling the Court that you disagree with something about the settlement. You can only object if you intend to stay in the Settlement Class. Excluding yourself, on the other hand, is telling the Court you do not want to be part of the Settlement Class. If you exclude yourself, you have no basis to object because the settlement no longer affects you.

## THE LAWYERS REPRESENTING YOU

### 24.   Do I have a lawyer in this case?

**YES.** For purposes of this settlement, the Court has appointed the following attorneys as Class Counsel to represent you and the other Settlement Class Members.

> Geoffrey R. Romero
> Romero, Harada & Winters
> 4801 All Saints Road NW
> Albuquerque, NM 87120

> Ray M. Vargas II, Esq.
> The Vargas Law Firm LLC
> 807 Silver Avenue, SW
> Albuquerque, NM 87102

> Paul Zebrowski
> Thomas A. Biscup
> Zebrowski Law
> 4801 All Saints Road NW
> Albuquerque, NM 87120

### 25.   How will the lawyers be paid?

Class Counsel will ask the Court to award them attorneys' fees of up to, but not to exceed, $977,609.04, inclusive of all fees, costs, and applicable New Mexico gross receipts tax, and ask the Court to order a Service Award Payment to the Plaintiff Class Representative Jeremy Peck of up to, but not to exceed, $20,000. Approved fees and Service Award Payment amounts will be paid by Progressive. The Court may award less than these amounts. You will not be required to pay any portion of these attorneys' fees and other costs and the payment of these fees and costs will not affect or reduce the benefits that you may be entitled to under this settlement.

**Exhibit A**

## THE SETTLEMENT ADMINISTRATOR

**26.    Who is the Settlement Administrator, and how can I contact the Settlement Administrator?**

Epiq shall act as the Settlement Administrator. Claim Forms and other documents identified in this Notice and the settlement should be mailed or provided to Epiq, whose contact information is:

**P.O. Box 3339**
**Portland, OR 97208-3339**
**www.NMUIMSettlement.com**
**1-888-885-4525**

## THE COURT'S FINAL APPROVAL HEARING

**27.    When and where will the Court decide whether to approve the settlement?**

The Court will hold a Final Approval Hearing at **2:00 p.m. on February 23, 2026**, at the U.S. District Court, District of New Mexico, United States Courthouse, 100 N. Church Street, Las Cruces, New Mexico, before the Honorable Judge Sarah M. Davenport to determine whether to approve the Settlement as fair, adequate, and reasonable, among other considerations, and to address any objections.

The purpose of the Final Approval Hearing will be for the Court to consider whether the settlement is fair, reasonable, adequate, and in the best interests of the Settlement Class. If there are objections, the Court will consider them. If the Court approves the settlement, a final judgment approving the settlement, dismissing the lawsuit, and ordering the declaratory relief sought (the "Judgment") will be issued. If the Court disapproves the settlement, then the lawsuit will continue, and the rights and duties set out in the settlement will be void as if no settlement had been reached.

**28.    Do I have to come to the Final Approval Hearing?**

**NO.** Class Counsel and Defense Counsel will answer any questions the Court may have, but you are welcome to attend at your own expense.

**29.    May I speak at the Final Approval Hearing?**

**YES.** If you wish to speak at the Final Approval Hearing, you are permitted to do so.

**30.    When will the settlement become effective?**

Even if the Court approves the settlement, it will not become effective unless and until all the events occur as provided in Paragraph 23 of the Settlement Agreement defining "Effective Date" and describing the conditions necessary for the Effective Date to occur.

If the Effective Date does not occur, or the settlement falls through, then the lawsuit will continue, and the rights and duties set out in the settlement will be void as if no settlement had been reached.

## THE EFFECT OF THE SETTLEMENT

**31.    What am I giving up if I stay in the Settlement Class?**

If the Effective Date occurs and the settlement becomes final, as set forth in the Settlement Agreement, then Settlement Class Members, except those who file a proper and timely notice of intent to be excluded or "opt out," will be subject to this settlement. This means that unless you exclude yourself, you will remain in the Settlement Class, and that means that you cannot sue, continue to sue, or be part of any other lawsuit against any of the Released Parties asserting any of the Released Claims. It also means that all of the Court's orders in this case will apply to you and legally bind you. If you stay in the Settlement Class, you are releasing various claims and parties, as described below and in the Settlement Agreement.

**FOR QUESTIONS, CALL 1-888-885-4525 OR VISIT WWW.NMUIMSETTLEMENT.COM**

**Exhibit A**

**Released Claims**

"Released Claims" means any and all claims, rights, demands, charges, complaints, causes of action, liabilities, and damages of any and every kind and nature that either has been asserted, was asserted, or could have been asserted, by any of the Releasing Parties against any of the Released Parties in the Action or in any other action or proceeding before any court, arbitrator(s), tribunal, or administrative body, regardless of whether the claims or causes of action are based on federal, state, or local law, statute, ordinance, regulation, contract, common law, or any other sources, and regardless of whether they are known or unknown, foreseen or unforeseen, suspected or unsuspected, or fixed or contingent, arising out of, or related or connected in any way with the claims or causes of action of every kind and description that were brought, alleged, argued, raised or asserted in any pleading or court filing in the Action, including, without limitation, (a) any and all claims that arise out of the alleged facts, circumstances, and occurrences underlying the allegations as set forth in the Complaint filed in the Action; (b) any and all claims disputing the value or benefit of stacked UM/UIM Coverage on single vehicle insurance policies sold and issued by Progressive; and (c) any and all claims related to or arising out of Progressive's failure to offer Plaintiff or any Settlement Class Member the opportunity to select or reject stacked UM/UIM Coverage upon the addition of a second or additional vehicle to such person's insurance policy.

**Released Parties**

"Released Parties" or "Released Party" means Progressive Northern Insurance Company, Progressive Advanced Insurance Company, Progressive Casualty Insurance Company, Progressive Classic Insurance Company, Progressive Commercial Casualty Company, Progressive Direct Insurance Company, Progressive Max Insurance Company, Progressive Northwestern Insurance Company, Progressive Preferred Insurance Company, Progressive Specialty Insurance Company, Progressive West Insurance Company, National Continental Insurance Company, and United Financial Casualty Company, and each of their respective past and present parent companies, subsidiaries, affiliates, related entities, successors, assigns, officers, directors, shareholders, members, agents, employees, representatives, attorneys, administrators, independent agents of Progressive and their employees, and any person related to such entities or individuals who is, was, or could have been named as a defendant in the Action, and each of their respective past and present predecessors, successors, assigns, officers, directors, shareholders, members, agents, employees, representatives, attorneys, administrators, independent agents of Progressive and their employees, and any person related to such entities or individuals who is, was, or could have been named as a defendant in the Action.

**Exhibit A**

Attachment 5

**Exhibit A**

<table>
<tr><td>**Your Claim Form must be postmarked by Feb. 26, 2026.**</td><td>**U.S. DISTRICT COURT (NEW MEXICO)**<br>*Jeremy Peck v. Progressive Northern Ins. Co., et al.*<br>Case No. 1:22-cv-00490-SMD-JFR<br>**Claim Form**</td><td>**Progressive Stacked Uninsured Motorist/Underinsured Motorist Coverage on Single Vehicle**</td></tr>
</table>

You should fill out and submit this Claim Form online or by mail if you are a Settlement Class Member in the Other Payments group and you would like to receive a payment from the settlement.

You received the Notice because you are likely a Settlement Class Member. You are a Settlement Class Member in the Other Payments group if, between January 1, 2009, and May 9, 2018, you were a New Mexico resident and purchased an automobile policy or policies from one or more of the Progressive insurers and paid for stacked Uninsured/Underinsured Motorists ("UM/UIM") Coverage on a single vehicle (automobile, motorcycle, or recreational vehicle).

You will receive a payment if you fill out this Claim Form completely, if the settlement is approved, and if you are found to be eligible for a payment.

The Notice describes your legal rights and options. Please visit the official Settlement Website, www.NMUIMSettlement.com, or call 1-888-885-4525 for more information. *Los hispanohablantes deben llamar al 1-888-885-4525 para obtener más información y asistencia.*

If you wish to submit a Claim for a Settlement Class Payment, you need to provide all of the applicable information requested below. If you do not clearly provide the applicable requested information to indicate that you qualify and would like to receive benefits from the settlement, your Claim Form will be deemed invalid, and your Claim will be denied.

Please print clearly in blue or black ink. This Claim Form must be submitted online or postmarked by **February 26, 2026**.

## I. SETTLEMENT CLASS MEMBER NAME AND CONTACT INFORMATION

Provide your name and contact information below. You must notify the Settlement Administrator if your contact information changes after you submit this form.

First Name    MI    Last Name

Street Address

City    State    ZIP Code

Phone Number

Email Address

01-CA40086825

1

**Exhibit A**

<table>
<tr><td>

**Your Claim Form must be postmarked by Feb. 26, 2026.**

</td><td>

**U.S. DISTRICT COURT (NEW MEXICO)**
*Jeremy Peck v. Progressive Northern Ins. Co., et al.*
Case No. 1:22-cv-00490-SMD-JFR
**Claim Form**

</td><td>

**Progressive Stacked Uninsured Motorist/Underinsured Motorist Coverage on Single Vehicle**

</td></tr>
</table>

## II. VERIFICATION

☐ I attest that I purchased/paid for automobile insurance from Progressive during the period from January 1, 2009, through May 9, 2018, and the insurance included stacked UM/UIM Coverage on a single vehicle.

## III. PAYMENT OPTIONS

Please select **one** of the following four payment options:

☐ **PayPal** - Enter your PayPal email address:

☐ **Venmo** - Enter the mobile number associated with your account:

☐ **Zelle** - Enter the mobile number or email address associated with your account:

or

☐ **Physical Check** - Payment will be mailed to the address provided above.

## IV. SIGN AND DATE YOUR CLAIM FORM

I declare that the information I supplied in this Claim Form is true and correct to the best of my recollection, and that I executed this form on the date set forth below.

Your signature                              Date: ☐☐ – ☐☐ – ☐☐☐☐
                                                  MM      DD       YYYY

Your name

### MAIL YOUR CLAIM FORM OR SUBMIT IT ONLINE.

This Claim Form must be postmarked by **February 26, 2026**, and mailed to P.O. Box 3339, Portland, OR 97208-3339, **OR** submitted through the Settlement Website by midnight on **February 26, 2026**.

**Exhibit A**

# Attachment 6

**Exhibit A**

## TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS PARA EL DISTRITO DE NUEVO MÉXICO

### AVISO DE ACUERDO DE CONCILIACIÓN DE DEMANDA COLECTIVA QUE AFECTA A ESTAS PERSONAS:

**ASEGURADOS QUE ADQUIRIERON UNA COBERTURA ACUMULABLE PARA CONDUCTORES SIN SEGURO O CON SEGURO INSUFICIENTE (UNINSURED MOTORIST AND UNDERINSURED MOTORIST, "UM/UIM") EN PÓLIZAS DE SEGURO DE AUTOMÓVIL DE NUEVO MÉXICO QUE CUBREN UN ÚNICO VEHÍCULO (AUTOMÓVIL, MOTOCICLETA, VEHÍCULO RECREATIVO), EMITIDAS O RENOVADAS POR CUALQUIERA DE LAS SIGUIENTES COMPAÑÍAS DE SEGUROS, O VIGENTES CON ESTAS, DESDE EL 1 DE ENERO DE 2009 HASTA EL 30 DE ABRIL DE 2025:**

PROGRESSIVE NORTHERN INSURANCE COMPANY,
PROGRESSIVE ADVANCED INSURANCE COMPANY,
PROGRESSIVE CASUALTY INSURANCE COMPANY,
PROGRESSIVE CLASSIC INSURANCE COMPANY,
PROGRESSIVE COMMERCIAL CASUALTY COMPANY,
PROGRESSIVE DIRECT INSURANCE COMPANY,
PROGRESSIVE MAX INSURANCE COMPANY,
PROGRESSIVE NORTHWESTERN INSURANCE COMPANY,
PROGRESSIVE PREFERRED INSURANCE COMPANY,
PROGRESSIVE SPECIALTY INSURANCE COMPANY,
PROGRESSIVE WEST INSURANCE COMPANY,
NATIONAL CONTINENTAL INSURANCE COMPANY y UNITED
FINANCIAL CASUALTY COMPANY

**(En conjunto, a estas aseguradoras se las denomina en este Aviso como "Progressive").**

**LEA DETENIDAMENTE ESTE AVISO AUTORIZADO POR EL TRIBUNAL. TODOS SUS TÉRMINOS PUEDEN AFECTAR SUS DERECHOS.**

**PRESENTAR UNA RECLAMACIÓN O RECIBIR UN PAGO NO PROVOCARÁ UN AUMENTO EN LAS PRIMAS DE SU SEGURO.**

- Se ha llegado a un acuerdo de conciliación en esta demanda colectiva sobre el cobro de primas por la Cobertura acumulable para Conductores sin Seguro o con Seguro Insuficiente ("Cobertura UM/UIM") en pólizas de un solo vehículo.

- Este acuerdo de conciliación establece un proceso para que determinadas personas reciban pagos automáticos y otras presenten Reclamaciones para obtener pagos monetarios. Esto es así incluso si ya no está asegurado con Progressive.

- Este Aviso describe sus derechos, cómo presentar una Reclamación o cómo recibirá el pago automático, cómo oponerse al acuerdo de conciliación, cómo excluirse del acuerdo, los próximos plazos, una audiencia sobre el acuerdo de conciliación propuesto y muchos otros detalles sobre sus derechos legales y opciones en este acuerdo.

**No descarte este Aviso antes de leerlo atentamente.**
**Siga leyendo**

**Exhibit A**

## QUÉ CONTIENE ESTE AVISO

**INFORMACIÓN BÁSICA**

| | | |
|---|---|---|
| 1. | ¿Por qué se emitió este Aviso? | 3 |
| 2. | ¿Dónde puedo obtener información adicional acerca de la conciliación? | 3 |
| 3. | ¿Cuál es el significado de las palabras en mayúscula en este Aviso? | 3 |
| 4. | ¿Qué compañías aseguradoras son parte de la conciliación? | 3 |
| 5. | ¿De qué trata esta demanda? | 3 |
| 6. | ¿Qué es la Cobertura para Conductores sin Seguro o con Seguro Insuficiente? | 3 |
| 7. | ¿Qué es la Cobertura UM/UIM acumulable y no acumulable? | 3 |
| 8. | ¿Qué es una Póliza de Progressive (o Pólizas de Progressive)? | 4 |
| 9. | ¿Cuál es el Período de la Demanda Colectiva? | 4 |
| 10. | ¿Quién es un Asegurado? | 4 |
| 11. | ¿Por qué es esta una demanda colectiva? | 4 |
| 12. | ¿Por qué existe una conciliación? | 4 |

**QUIÉNES FORMAN PARTE DE LA CONCILIACIÓN?**

| | | |
|---|---|---|
| 13. | ¿Cómo sé si formo parte de la conciliación? | 4 |
| 14. | ¿Hay algunas personas excluidas de la conciliación? | 5 |

**BENEFICIOS DE LA CONCILIACIÓN: ¿QUÉ OBTENDRÁ?**

| | | |
|---|---|---|
| 15. | ¿Qué establece la conciliación? | 5 |
| 16. | ¿Cuándo recibiré mi posible reembolso? | 5 |
| 17. | ¿Se pueden presentar Reclamaciones en nombre de un Miembro del Grupo del Acuerdo fallecido? | 6 |
| 18. | ¿Qué sucede con los fondos no reclamados o pagados? | 6 |

**CÓMO EXCLUIRSE DE LA CONCILIACIÓN O PRESENTAR OBJECIONES**

| | | |
|---|---|---|
| 19. | ¿Cómo me excluyo de la conciliación? | 6 |
| 20. | Si no me excluyo, ¿puedo presentar una demanda más adelante? | 6 |
| 21. | Si me excluyo, ¿puedo obtener un pago en virtud de esta conciliación? | 6 |
| 22. | ¿Cómo le comunico al Tribunal que no estoy de acuerdo con la conciliación o que deseo objetarla? | 6 |
| 23. | ¿Cuál es la diferencia entre objetar y solicitar ser excluido? | 7 |

**LOS ABOGADOS QUE LO REPRESENTAN**

| | | |
|---|---|---|
| 24. | ¿Tengo un abogado en este caso? | 7 |
| 25. | ¿Cómo se pagará a los abogados? | 8 |

**EL ADMINISTRADOR DE LA CONCILIACIÓN**

| | | |
|---|---|---|
| 26. | ¿Quién es el Administrador de la Conciliación y cómo puedo comunicarme con él? | 8 |

**AUDIENCIA DE APROBACIÓN DEFINITIVA DEL TRIBUNAL**

| | | |
|---|---|---|
| 27. | ¿Cuándo y dónde decidirá el Tribunal si aprueba la conciliación? | 8 |
| 28. | ¿Tengo que asistir a la Audiencia de Aprobación Definitiva? | 8 |
| 29. | ¿Puedo declarar en la Audiencia de Aprobación Definitiva? | 8 |
| 30. | ¿Cuándo entrará en vigor la conciliación? | 8 |

**LOS EFECTOS DE LA CONCILIACIÓN**

| | | |
|---|---|---|
| 31. | ¿A qué renuncio si permanezco en el Grupo del Acuerdo? | 9 |

**Siga leyendo**

**Exhibit A**

# INFORMACIÓN BÁSICA

## 1.    ¿Por qué se emitió este Aviso?

El Tribunal en la demanda titulada *Peck v. Progressive Northern Insurance Company, et al.,* Tribunal de Distrito de los Estados Unidos para el Distrito de Nuevo México, caso n.º 1:22-cv-00490-SMD-JFR, ha autorizado este Aviso porque usted tiene derecho a conocer el acuerdo de conciliación propuesto para este caso. La demanda está pendiente en el Tribunal de Distrito de los Estados Unidos para el Distrito de Nuevo México ante la jueza Sarah M. Davenport, quien dictó una Orden de aprobación preliminar de este acuerdo de conciliación el 29 de octubre de 2025. Este Aviso explica la demanda, la conciliación, sus derechos legales, qué beneficios están disponibles para usted y cómo obtenerlos, y quiénes pueden ser elegibles. La Audiencia de Aprobación Definitiva, en la que el Tribunal considerará si el acuerdo de conciliación es justo, razonable, adecuado y si redunda en el mejor interés del Grupo de Demandantes, y si lo aprueba, está programada para el 23 de febrero de 2026 a las 2:00 p. m. No se comunique con la jueza Davenport ni con el Secretario del Tribunal para hacer preguntas sobre esta conciliación o la demanda.

## 2.    ¿Dónde puedo obtener información adicional acerca de la conciliación?

Este Aviso pretende ser un resumen de la Conciliación. El Acuerdo de Conciliación incluye más detalles al respecto. Si desea una copia del Acuerdo de Conciliación, información adicional o tiene preguntas, llame al 1-888-885-4525 o visite www.NMUIMSettlement.com.

## 3.    ¿Cuál es el significado de las palabras en mayúscula en este Aviso?

Las palabras en mayúsculas en este Aviso corresponden a los términos que se definen en el Acuerdo de Conciliación en los párrafos 13 a 48. Algunos de estos términos definidos también se incluyen en este Aviso, pero para aquellos no incluidos, puede consultar el Acuerdo de Conciliación, el cual puede obtenerse visitando www.NMUIMSettlement.com.

## 4.    ¿Qué compañías aseguradoras son parte de la conciliación?

La conciliación incluye a las compañías de seguros de automóviles identificadas en la portada de este Aviso. En conjunto, a estas compañías se las denomina "Progressive" en este Aviso.

## 5.    ¿De qué trata esta demanda?

Esta demanda se refiere a la Cobertura acumulable para Conductores sin Seguro y con Seguro Insuficiente (denominada en este aviso "Cobertura UM/UIM") en pólizas de seguro de automóvil para un solo vehículo o pólizas de seguro especializadas. El Demandante alega que Progressive vendió Coberturas UM acumulables en las que aseguraba un solo vehículo y cobraba una prima más alta que en las pólizas de un solo vehículo sin cobertura acumulable. El Demandante alega que no había ningún beneficio por la prima más alta que se cobraba y que la cobertura acumulable era ilusoria y, además, infringía la ley de Nuevo México. Progressive niega todas las acusaciones de irregularidades.

## 6.    ¿Qué es la Cobertura para Conductores sin Seguro o con Seguro Insuficiente?

La Cobertura UM/UIM se refiere a un tipo de seguro de automóvil que cubre al Asegurado por los daños y perjuicios que tiene derecho a recuperar legalmente del conductor o propietario de un Vehículo Motorizado sin Seguro o con Seguro Insuficiente por Lesiones Físicas o Daños a la Propiedad. Un conductor sin Seguro o con Seguro Insuficiente es un conductor que no tiene cobertura de seguro de responsabilidad civil o que tiene un seguro de responsabilidad civil, pero por un importe inferior a la Cobertura UM/UIM por Lesiones Físicas y Daños a la Propiedad disponible para el Asegurado.

## 7.    ¿Qué es la Cobertura UM/UIM acumulable y no acumulable?

Cuando un Asegurado tiene varios vehículos y selecciona la Cobertura UM/UIM acumulable, el Asegurado tiene una Cobertura UM/UIM igual al número de vehículos que posee (o un número menor de dos o más) multiplicado por los límites de Cobertura UM/UIM. La Cobertura UM no acumulable implica que el Asegurado ha rechazado la

**Exhibit A**

acumulación y, por lo tanto, solo dispone de la cantidad de Cobertura UM seleccionada en un principio.

## 8.    ¿Qué es una Póliza de Progressive (o Pólizas de Progressive)?

"Póliza de Progressive" (o "Pólizas de Progressive") significa todas las pólizas de seguro de automóvil emitidas en Nuevo México por cualquiera de las compañías aseguradoras que figuran en la portada de este Aviso, que se emitieron, renovaron o estuvieron en vigor durante el Período de la Demanda Colectiva y por las que los Asegurados pagaron una Cobertura UM acumulable cuando solo se aseguraba un vehículo. A los efectos de este Aviso y de la demanda colectiva, las pólizas de automóvil incluyen las pólizas que cubren motocicletas y vehículos recreativos.

## 9.    ¿Cuál es el Período de la Demanda Colectiva?

El Período de la Demanda Colectiva cubre las Pólizas de Progressive emitidas, renovadas o en vigor entre el 1 de enero de 2009 y el 30 de abril de 2025.

## 10.    ¿Quién es un Asegurado?

A los efectos del Acuerdo, el término "Asegurado" incluye al Asegurado o Asegurados nombrados en la Póliza de Progressive o a cualquier persona que haya pagado las primas de una Póliza de Progressive.

## 11.    ¿Por qué es esta una demanda colectiva?

En una demanda colectiva, una o más personas denominadas "Representantes del Grupo de Demandantes" (en este caso, Jeremy Peck) demandan en nombre de personas que pueden tener reclamaciones similares. Todas estas personas constituyen un "Grupo del Acuerdo" y se conocen como "Miembros del Grupo del Acuerdo". Un tribunal resuelve las cuestiones para todos los Miembros del Grupo del Acuerdo, excepto para aquellos que se excluyan del Grupo del Acuerdo.

## 12.    ¿Por qué existe una conciliación?

El Tribunal no ha decidido este caso a favor o en contra de ninguna de las partes. En su lugar, ambas partes han convenido llegar a un acuerdo. De esta manera, evitan el costo de un juicio y otros procedimientos judiciales, así como el riesgo de perder, y las personas que reúnan los requisitos podrán recibir una indemnización. El Representante del Grupo de Demandantes y el Abogado del Grupo de Demandantes consideran que la conciliación es lo más conveniente para todos los Miembros del Grupo del Acuerdo. La conciliación no significa que Progressive haya hecho nada malo.

# ¿QUIÉNES FORMAN PARTE DE LA CONCILIACIÓN?

## 13.    ¿Cómo sé si formo parte de la conciliación?

El "Grupo del Acuerdo" se refiere a todos los titulares de pólizas de Progressive entre el 1 de enero de 2009 y el 30 de abril de 2025 que
   a.   residían en Nuevo México; y
   b.   compraron o pagaron de otro modo una póliza de seguro que incluía una Cobertura UM acumulable mientras aseguraban un solo vehículo cubierto.

Hay dos grupos diferentes de Miembros del Grupo del Acuerdo. A continuación se describe cada uno de ellos.

Los miembros del grupo de "**Pagos Automáticos**" son aquellos Miembros del Grupo del Acuerdo que compraron/pagaron una Cobertura UM/UIM acumulable en la que solo se cubría un único vehículo, en cualquier momento entre el 10 de mayo de 2018 y el 30 de abril de 2025. Los miembros del grupo de Pagos Automáticos son aquellos que se encuentran en el período en el que Progressive no podía alegar la defensa de prescripción. El grupo de Pagos Automáticos se divide, a su vez, en aquellos con derecho a diez dólares ($10) o más y aquellos con derecho a menos de esa cantidad, en lo que respecta al procesamiento y los pasos para obtener el pago, tal y como se describe a continuación.

Los miembros del grupo de "**Reclamaciones Válidas para Otros Pagos**" son aquellos Miembros del Grupo del Acuerdo que compraron/pagaron una Cobertura UM/UIM acumulable en la que se cubría un solo vehículo, en cualquier momento entre el 1 de enero de 2009 y el 9 de mayo de 2018. Los miembros del grupo de Otros Pagos son

**Exhibit A**

AM0056 v.04

aquellos que se encontraban en el período en el que Progressive podía haber invocado la defensa de prescripción. Los miembros del grupo de Otros Pagos pueden recibir menos del importe total de la diferencia entre las primas pagadas por la Cobertura UM/UIM acumulable y la Cobertura UM/UIM no acumulable en vehículos individuales, dependiendo del número de Reclamaciones presentadas por los miembros del grupo de Otros Pagos. El importe total asignado a los miembros de Otros Pagos no es inferior a $37,000 ni superior a $75,000.

## 14.   ¿Hay algunas personas excluidas de la conciliación?

**SÍ.** Hay algunas personas que están excluidas del Grupo del Acuerdo y de los grupos de Pagos Automáticos y Otros Pagos. **Lea atentamente para determinar si está excluido.**

Exclusiones del Grupo del Acuerdo:

Quedan excluidas del Grupo del Acuerdo las siguientes personas: (1) cualquier persona que elija oportunamente ser excluida [es decir, que se retire del Grupo del Acuerdo], como se explica más adelante; (2) cualquier Demandante que haya presentado por separado una demanda contra cualquiera de las Partes Exoneradas hasta la Fecha del Aviso, cuyo objeto se base en o impugne el valor o las prestaciones proporcionadas por la Cobertura UM/UIM acumulable en una póliza de seguro de un solo vehículo; (3) cualquiera de los Jueces que presidan la Acción judicial; y (4) Progressive y cualquier empleado de Progressive.

# BENEFICIOS DE LA CONCILIACIÓN: ¿QUÉ OBTENDRÁ?

## 15.   ¿Qué establece la conciliación?

En virtud de esta conciliación, Progressive pagará un millón setecientos sesenta y cinco mil seiscientos seis dólares con trece centavos ($1,765,606.13) a un Fondo de la Conciliación. Progressive también ha acordado que dejará de vender la Cobertura UM/UIM acumulable en pólizas de un solo vehículo.

Progressive ha acordado realizar pagos automáticos a los miembros del grupo de Pagos Automáticos. El importe para cada Asegurado es la diferencia entre las primas pagadas por la Cobertura UM/UIM acumulable para un solo vehículo y las primas que se habrían pagado por la Cobertura UM/UIM no acumulable para un solo vehículo. Los miembros del grupo de Pagos Automáticos que tengan derecho a recibir diez dólares ($10) o más pueden (i) no hacer nada y recibir un cheque por correo en la dirección que el Administrador de la Conciliación tiene registrada; (ii) ir al Sitio Web de la Conciliación y proporcionar una dirección actualizada a la que el Administrador de la Conciliación enviará el cheque; o (iii) ir al Sitio Web de la Conciliación y elegir un método de pago distinto al cheque (por ejemplo, PayPal, Venmo, EpiqPay) para recibir el pago. El Administrador de la Conciliación realizará los Pagos del Grupo del Acuerdo de conformidad con la respuesta o la falta de respuesta de los Miembros del Grupo del Acuerdo a este Aviso, de acuerdo con lo anterior, en un plazo de cuarenta y cinco (45) días a partir de la Fecha de Entrada en Vigor.

Los miembros del grupo de Pagos Automáticos que tengan derecho a recibir menos de diez dólares ($10) tendrán varias opciones para recibir un Pago del Grupo del Acuerdo (por ejemplo, cheque, Paypal, Venmo, EpiqPay) y dispondrán de noventa (90) días después de la Fecha del Aviso para seleccionar una opción de pago.

Los miembros del grupo de Otros Pagos seguirán procedimientos similares a los de los miembros del grupo de Pagos Automáticos con derecho a menos de $10, pero deberán presentar un Formulario de Reclamación y seleccionar un método de pago. Los Otros Pagos no serán inferiores a $37,000 en total y no más de $75,000 en total. Ningún miembro del grupo de Otros Pagos recibirá más del 100 % de la diferencia en los pagos de las primas, pero podrá recibir menos en función del número de Reclamaciones de Otros Pagos presentadas.

El Administrador de la Conciliación determinará si todas las Reclamaciones son válidas.

## 16.   ¿Cuándo recibiré mi posible reembolso?

Como se establece anteriormente, para los miembros de Pagos Automáticos con derecho a $10 o más, Progressive enviará los pagos dentro de los 45 días posteriores a la Fecha de Entrada en Vigor. Si no actualiza la información personal en el Sitio Web de la Conciliación tras recibir este Aviso, su pago podría retrasarse.

Para los miembros del grupo de Pagos Automáticos con derecho a menos de $10, Progressive enviará los pagos en un plazo de 45 días a partir de la Fecha de Entrada en Vigor. Si no se selecciona un método de pago, se perderá el derecho al pago.

**Exhibit A**

AM0057 v.04

Los miembros del grupo de Otros Pagos recibirán el pago en un plazo de 45 días a partir de la determinación del Administrador de la Conciliación de que hay fondos suficientes sin reclamar para pagar todas las Reclamaciones realizadas por los miembros del grupo de Otros Pagos, o en un plazo de 45 días a partir del pago adicional realizado por Progressive de los fondos adicionales necesarios, previa determinación del Administrador de la Conciliación de que dichos fondos adicionales son necesarios. Esta última determinación no puede producirse antes de 180 días después de la Fecha de Entrada en Vigor de la Conciliación.

## 17.    ¿Se pueden presentar Reclamaciones en nombre de un Miembro del Grupo del Acuerdo fallecido?

**SÍ.** Si se notifica al Administrador de la Conciliación que un Miembro del Grupo del Acuerdo ha fallecido, el Administrador de la Conciliación está autorizado a volver a emitir el pago del Grupo del Acuerdo a la herencia del Miembro del Grupo del Acuerdo tras recibir la prueba de que el Miembro del Grupo del Acuerdo ha fallecido y tras consultar con el Abogado del Grupo de Demandantes y el Abogado de Progressive.

## 18.    ¿Qué sucede con los fondos no reclamados o pagados?

Los fondos sobrantes no reclamados o perdidos se pagarán a la organización sin ánimo de lucro Equal Access to Justice, Inc., sujeto a la aprobación del Tribunal.

# CÓMO EXCLUIRSE DE LA CONCILIACIÓN O PRESENTAR OBJECIONES

## 19.    ¿Cómo me excluyo de la conciliación?

Si es Miembro del Grupo del Acuerdo, tiene el derecho y la posibilidad de excluirse del Grupo del Acuerdo. Para excluirse válidamente de la conciliación, el posible Miembro del Grupo del Acuerdo debe enviar una carta en la que indique que desea excluirse de la conciliación en *Jeremy Peck v. Progressive Northern Insurance Company, et al*., Tribunal de Distrito de los Estados Unidos para el Distrito de Nuevo México, caso n.º 1:22-cv -00490-SMD-JFR, a Progressive y al Abogado del Grupo de Demandantes a las direcciones indicadas en este Aviso. La carta debe incluir el nombre, la dirección y la firma del Miembro del Grupo del Acuerdo y tener un matasellos con fecha anterior al **12 de enero de 2026**.

## 20.    Si no me excluyo, ¿puedo presentar una demanda más adelante?

**NO.** A menos que se excluya a tiempo, formará parte del Grupo del Acuerdo. Esto significa que no podrá demandar, continuar demandando ni formar parte de ninguna otra demanda contra Progressive que se relacione con las alegaciones fácticas, reclamaciones o cuestiones de este caso, que renuncia a diversas reclamaciones y libera a las partes, tal y como se detalla en los párrafos 35 y 36 del Acuerdo de Conciliación, y que se aplicarán en toda su extensión los principios de preclusión de cuestiones y reclamaciones y de cosa juzgada. También significa que todas las órdenes del Tribunal en este caso se le aplicarán y le serán legalmente vinculantes.

## 21.    Si me excluyo, ¿puedo obtener un pago en virtud de esta conciliación?

**NO.** Si se excluye a tiempo, no podrá participar en esta conciliación, pero conservará todos los derechos, reclamaciones y causas de acción que pueda tener contra Progressive o las otras Partes Exoneradas (tal y como se definen a continuación y en el Acuerdo de Conciliación) en caso de que decida demandar a cualquiera de ellas por su cuenta. No estará obligado legalmente por ningún resultado de esta demanda.

## 22.    ¿Cómo le comunico al Tribunal que no estoy de acuerdo con la conciliación o que deseo objetarla?

Si no se excluye del Grupo del Acuerdo de conformidad con los procedimientos descritos en la pregunta 19 anterior, puede objetar la conciliación. Para que sea válida, la objeción debe incluir: (a) el nombre completo, la dirección, el número de teléfono y la dirección de correo electrónico (si la hay) de quien presenta la objeción; (b) información que identifique a quien presenta la objeción como Miembro del Grupo del Acuerdo; (c) una declaración por escrito de todos los motivos de la objeción, acompañada de cualquier apoyo legal que quien presenta la objeción desee presentar; (d) la identidad de todos los abogados (si los hubiera) que representan a quien presenta la objeción; (e) la identidad de todos los abogados de quien presenta la objeción (si los hubiera) que comparecerán en la Audiencia de Aprobación Definitiva; (f) una lista de todas las personas que serán llamadas a testificar en la Audiencia de Aprobación Definitiva en apoyo de la objeción; (g) una declaración que confirme si quien presenta la objeción tiene la intención de comparecer personalmente y/o testificar en la Audiencia de Aprobación Definitiva; y (h) la firma de quien presenta

**Exhibit A**

la objeción o la firma de su abogado debidamente autorizado u otro representante debidamente autorizado (junto con la documentación que acredite dicha representación).

Además de lo anterior, las objeciones también deben proporcionar la siguiente información: (a) una lista, por nombre del caso, tribunal y número de expediente, de todos los demás casos en los que quien presenta la objeción (directamente o a través de un abogado) haya presentado una objeción a cualquier acuerdo de demanda colectiva propuesto en los últimos tres [3] años; (b) una lista, por nombre del caso, tribunal y número de expediente, de todos los demás casos en los que el abogado de quien presenta la objeción [en nombre de cualquier persona o entidad] haya presentado una objeción a cualquier acuerdo de demanda colectiva propuesto en los últimos tres [3] años; y (c) una lista, por número de caso, tribunal y número de expediente, de todos los demás casos en los que quien presenta la objeción haya sido demandante nombrado en cualquier demanda colectiva o haya actuado como demandante principal o representante de la demanda colectiva.

Para que se considere oportuna, cualquier objeción válida en la forma adecuada debe **presentarse** ante el Secretario del Tribunal de Distrito de los Estados Unidos para el Distrito de Nuevo México, a más tardar el **12 de enero de 2026**. Los Miembros del Grupo del Acuerdo deben **enviar por correo** una copia de su objeción a los tres lugares siguientes, con matasellos no posterior al **12 de enero de 2026**.

| Tribunal | Abogado del Grupo de Demandantes | Abogado de Progressive |
|---|---|---|
| Tribunal de Distrito de los Estados Unidos para el Distrito de Nuevo México Pete V. Domenici U.S. Courthouse 333 Lomas Blvd NW Suite 270 Albuquerque, NM 87102 | Geoffrey Romero Romero, Harada & Winters 4801 All Saints Road NW Albuquerque, NM 87120 Teléfono: (505) 247-3338 Fax: (505) 271-1539 Geoff@RHWLawNM.com | Michael E. Mumford Baker Hostetler LLP 127 Public Square Suite 2000 Cleveland, OH 44114 |

## 23.  ¿Cuál es la diferencia entre objetar y solicitar ser excluido?

Objetar significa que le está diciendo al Tribunal que no está de acuerdo con algo de la conciliación. Solo puede objetar si pretende permanecer en el Grupo del Acuerdo. Excluirse, por otra parte, es decirle al Tribunal que no quiere ser parte del Grupo del Acuerdo. Si se excluye, no tendrá ningún fundamento para plantear objeciones porque la conciliación ya no le afectará.

# LOS ABOGADOS QUE LO REPRESENTAN

## 24.  ¿Tengo un abogado en este caso?

**SÍ.** A los efectos de esta conciliación, el Tribunal ha designado a los siguientes abogados como Abogados del Grupo de Demandantes para representarlo a usted y a los demás Miembros del Grupo del Acuerdo.

Geoffrey R. Romero
Romero, Harada & Winters
4801 All Saints Road NW
Albuquerque, NM 87120

Dr. Ray M. Vargas II, Esq.
The Vargas Law Firm
LLC 807 Silver Avenue,
SW Albuquerque, NM
87102

Paul Zebrowski
Thomas A. Biscup
Zebrowski Law
4801 All Saints Road NW
Albuquerque, NM 87120

**Exhibit A**

## 25.    ¿Cómo se pagará a los abogados?

Los Abogados del Grupo de Demandantes solicitarán al Tribunal que les conceda unos honorarios de hasta $977,609.04, sin exceder esta cantidad, que incluyen todos los honorarios, costos y el impuesto sobre ingresos brutos aplicable en Nuevo México, y solicitarán al Tribunal que ordene el pago de una Indemnización por Servicios prestados al Representante del Grupo de Demandantes, Jeremy Peck, de hasta $20,000, sin exceder esta cantidad. Los honorarios aprobados y los importes de la Indemnización por Servicios serán pagados por Progressive. El Tribunal puede adjudicar sumas inferiores a las solicitadas. No se le exigirá que pague ninguna parte de estos honorarios de abogados y otros costos, y el pago de estos honorarios y costos no afectará ni reducirá las prestaciones a las que pueda tener derecho en virtud de esta conciliación.

# EL ADMINISTRADOR DE LA CONCILIACIÓN

## 26.    ¿Quién es el Administrador de la Conciliación y cómo puedo comunicarme con él?

Epiq actuará como Administrador de la Conciliación. Los Formularios de Reclamación y otros documentos identificados en este Aviso y en la conciliación deben enviarse por correo o entregarse a Epiq, cuya información de contacto es la siguiente:

<div align="center">

**P.O. Box 3339**
**Portland, OR 97208-3339**
**www.NMUIMSettlement.com**
**1-888-885-4525**

</div>

# AUDIENCIA DE APROBACIÓN DEFINITIVA DEL TRIBUNAL

## 27.    ¿Cuándo y dónde decidirá el Tribunal si aprueba la conciliación?

El Tribunal celebrará una Audiencia de Aprobación Definitiva a las **2:00 p. m. del 23 de febrero de 2026**, en el Tribunal de Distrito de los Estados Unidos, Distrito de Nuevo México, Palacio de Justicia de los Estados Unidos, 100 N. Church Street, Las Cruces, Nuevo México, ante la Honorable Jueza Sarah M. Davenport, para determinar si aprueba la Conciliación como justa, adecuada y razonable, entre otras consideraciones, y para abordar cualquier objeción.

El propósito de la Audiencia de Aprobación Definitiva será que el Tribunal considere si el acuerdo de conciliación es justo, razonable, adecuado y si redunda en el mejor interés del Grupo del Acuerdo. De existir objeciones, el Tribunal las considerará. Si el Tribunal aprueba la conciliación, se emitirá una sentencia definitiva que apruebe la conciliación, desestime la demanda y ordene la reparación declarativa solicitada (la "Sentencia"). Si el Tribunal no aprueba la conciliación, la demanda continuará, y los derechos y obligaciones establecidos en la conciliación quedarán sin efecto, como si no se hubiera llegado a ningún acuerdo de conciliación.

## 28.    ¿Tengo que asistir a la Audiencia de Aprobación Definitiva?

**NO.** Los Abogados del Grupo de Demandantes y los Abogados de la Defensa responderán a cualquier pregunta que pueda tener el Tribunal, pero usted puede asistir por su cuenta.

## 29.    ¿Puedo declarar en la Audiencia de Aprobación Definitiva?

**SÍ.** Si desea hablar en la Audiencia de Aprobación Definitiva, se le permitirá hacerlo.

## 30.    ¿Cuándo entrará en vigor la conciliación?

Aunque el Tribunal apruebe la conciliación, esta no entrará en vigor, a menos que se produzcan todos los acontecimientos previstos en el Párrafo 23 del Acuerdo de Conciliación, en el que se define la "Fecha de Entrada en Vigor" y se describen las condiciones necesarias para que dicha fecha se produzca.

Si la Fecha de Entrada en Vigor no se produce, o si la conciliación fracasa, la demanda continuará, y los derechos y

**Exhibit A**

obligaciones establecidos en el acuerdo de conciliación quedarán sin efecto, como si no se hubiera llegado a ningún acuerdo de conciliación.

# LOS EFECTOS DE LA CONCILIACIÓN

**31. ¿A qué renuncio si permanezco en el Grupo del Acuerdo?**

Si se produce la Fecha de Entrada en Vigor y la conciliación se torna definitiva, tal y como se establece en el Acuerdo de Conciliación, los Miembros del Grupo del Acuerdo, excepto aquellos que presenten un aviso adecuado y oportuno de su intención de excluirse o de "retirarse", estarán sujetos a esta conciliación. Esto significa que, a menos que se excluya, seguirá formando parte del Grupo del Acuerdo, lo que implica que no podrá demandar, continuar con una demanda ni formar parte de ninguna otra demanda contra ninguna de las Partes Exoneradas en la que se alegue cualquiera de las Reclamaciones Exoneradas. También significa que todas las órdenes del Tribunal en este caso se le aplicarán y le serán legalmente vinculantes. Si permanece en el Grupo del Acuerdo, estará eximiendo varias reclamaciones y liberando a las partes, tal y como se describe a continuación y en el Acuerdo de Conciliación.

## Reclamaciones Exoneradas

"Reclamaciones Exoneradas" significa todas y cada una de las reclamaciones, derechos, demandas, cargos, quejas, causas de acción, responsabilidades y daños de cualquier tipo y naturaleza que hayan sido afirmados, se hayan afirmado o se hubieran podido afirmar por cualquiera de las Partes Exonerantes contra cualquiera de las Partes Exoneradas en la Acción judicial o en cualquier otra acción o procedimiento ante cualquier corte, árbitro(s), tribunal u órgano administrativo, independientemente de si las reclamaciones o causas de acción se basan en leyes federales, estatales o locales, estatutos, ordenanzas, reglamentos, contratos, derecho consuetudinario o cualquier otra fuente, y con independencia de si son conocidas o desconocidas, previsibles o imprevisibles, sospechadas o insospechadas, o fijas o contingentes, que surjan de o estén relacionadas o conectadas de alguna manera con las reclamaciones o causas de acción de todo tipo y descripción que se hayan presentado, alegado, argumentado, planteado o afirmado en cualquier alegato o escrito judicial en la Acción judicial, incluyendo, sin limitación, (a) todas y cada una de las reclamaciones que surjan de los hechos, circunstancias y sucesos alegados que subyacen a las alegaciones expuestas en la Demanda presentada en la Acción judicial; (b) todas y cada una de las reclamaciones que disputen el valor o el beneficio de la Cobertura UM/UIM acumulable en las pólizas de seguro de un solo vehículo vendidas y emitidas por Progressive; y (c) todas y cada una de las reclamaciones relacionadas con o derivadas del hecho de que Progressive no haya ofrecido al Demandante o a cualquier Miembro del Grupo del Acuerdo la oportunidad de seleccionar o rechazar la Cobertura UM/UIM acumulable al añadir un segundo vehículo o vehículos adicionales a la póliza de seguro de dicha persona.

## Partes Exoneradas

"Partes Exoneradas" o "Parte Exonerada" se refiere a Progressive Northern Insurance Company, Progressive Advanced Insurance Company, Progressive Casualty Insurance Company, Progressive Classic Insurance Company, Progressive Commercial Casualty Company, Progressive Direct Insurance Company, Progressive Max Insurance Company, Progressive Northwestern Insurance Company, Progressive Preferred Insurance Company, Progressive Specialty Insurance Company, Progressive West Insurance Company, National Continental Insurance Company y United Financial Casualty Company, así como cada una de sus respectivas empresas matrices, filiales, entidades relacionadas, sucesoras, cesionarias, directivos, consejeros, accionistas, miembros, agentes, empleados, representantes, abogados, administradores, agentes independientes de Progressive y sus empleados, y cualquier persona relacionada con dichas entidades o individuos que sea, haya sido o pudiera haber sido nombrada como demandada en la Acción judicial, y cada uno de sus respectivos anteriores y presentes predecesores, sucesores, cesionarios, directivos, consejeros, accionistas, miembros, agentes, empleados, representantes, abogados, administradores, agentes independientes de Progressive y sus empleados, y cualquier persona relacionada con dichas entidades o individuos que sea, haya sido o pudiera haber sido nombrada como demandada en la Acción judicial.

Attachment 7

**Exhibit A**



**Exclusion Report**

*Jeremy Peck, et al. v. Progressive Northern Insurance Company, et al.*

| Number | First Name | Middle Name | Last Name |
|--------|-----------|-------------|-----------|
| 1 | DIANA | | MARTINEZ |

**Exhibit A**