**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

JEREMY PECK, on behalf of himself
and all others similarly situated,

      Plaintiff,

v.                                  No. 1:22-cv-00490-SMD-JFR

PROGRESSIVE NORTHERN
INSURANCE COMPANY, et al.

      Defendants.

## <u>ORDER GRANTING MOTIONS FOR FINAL APPROVAL</u><br><u>OF CLASS SETTLEMENT AND ATTORNEYS' FEES</u>

**THIS MATTER** is before the Court on Plaintiff's unopposed motions for final approval of the class settlement (Doc. 57) and for award of a class representative fee and attorneys' fees (Docs. 56 & 58).  Upon careful review of the record and the relevant law, the Court **GRANTS** both motions.

## BACKGROUND

In 2022, Plaintiff Jeremy Peck ("Plaintiff") brought suit on behalf of himself and others similarly situated against various Progressive Insurance companies ("Defendants").  *See* Doc. 1-1 ("Compl.").  Plaintiff alleged that Defendants improperly charged New Mexico customers for "stacked" uninsured/underinsured motor (UM/UIM) vehicle coverage when such individuals only owned a singular vehicle.  Doc. 55-1 at 1.  For these policyholders, Plaintiff asserted that "Progressive provides no benefit to the insured who pays the additional premium charge for stacked UM/UIM coverage on a policy insuring a single vehicle."  Compl. ¶ 24.  Plaintiff articulated ten claims related to this conduct: (1) Violation of the Trade Practices and Frauds Act, (2) Breach Of Contract, (3) Breach of the Implied Covenant of Good Faith and Fair Dealing and Insurance Bad Faith, (4) Violation of the Unfair Trade Practices Act, (5) Civil Conspiracy to

Violate the Trade Practices and Frauds Act, (6) Violation of the Unfair Trade Practices Act and Contractual and Common Law Duties, (7) Unjust Enrichment, (8) Injunctive Relief, (9) Declaratory Judgment, and (10) for Punitive Damages.  Compl. ¶¶ 48–90.  The Court dismissed Plaintiff's breach of contract claim on March 30, 2023.  Doc. 55-1 ¶ 8.

In March of 2024, the parties began mediation discussions before Rodney Max of Upchurch Watson White & Max.  Doc. 57 at 9.  They agreed to the settlement's monetary terms in September of 2024 and determined that class members would receive the amount for which the premium allegedly overcharged.  *Id.*  Plaintiff also sought declaratory relief that would prohibit Progressive from selling stacked coverage to single-vehicle owners in New Mexico.  *Id.*  The parties could not reach an agreement on injunctive relief at that time, but following lengthy and intensive discussions, were able to find mutually acceptable terms.  *Id.*  Defendants agreed to cease their practice of selling stacked UM/UIM coverage on single vehicle policies.  *Id.* at 10.

In October of 2025, Plaintiff filed a motion for preliminary approval of the class settlement, which the Court granted.  *See* Doc. 55.  Plaintiff proceeded to send notice to 122,855 of 123,194 class members.[1]  Doc. 57 at 5.  The total settlement fund is $1,765,606.13.  Doc. 55-1 ¶ 43. Members are eligible for reimbursement of the extra amount paid in their premium for stacked coverage and may recover for multiple years of policy purchases.  The class is divided between members who are not subject to a statute of limitations defense and those who are.[2]  Doc. 57 at 2. The first group is eligible for automatic payment if their claim is for ten dollars or more.  "Those Class Members entitled to an Automatic Payment in an amount equal to or greater than Ten Dollars

---

[1] At the final approval hearing held on February 23, 2026, Plaintiff noted that Epiq (the fund administrator) had informed that approximately 95% of class members had received notice.

[2] The statute of limitations defense is available for individuals who purchased their policies between January 1, 2009, and May 9, 2018.  Class members who purchased a policy from May 10, 2018, to April 30, 2025, are not subject to such a defense.  Doc. 56 at 2.

($10.00) will receive a check by mail to the address the Settlement Administrator has on file, or may go to the Settlement Website and either (a) provide an address to which the Settlement Administrator will send the check, or (b) elect a payment method other than check (e.g., PayPal, Venmo, EpiqPay) to receive payment." Doc. 55 at 8–9. The second group must file a claim to receive payment. Though it is not guaranteed, these individuals may also receive full reimbursement for their excess premiums. Doc. 57 at 9.

The opt-out period has now closed, and Plaintiff seeks final approval of the class settlement. The Court held a final approval hearing on February 23, 2026. No class members have filed an objection and only one individual opted out of the settlement, but did so after the deadline. *Id.* at 5. Plaintiff also requests attorneys' fees and an award to Plaintiff Peck. Defendants do not oppose either of these motions.

## DISCUSSION

The Court incorporates its prior finding that the class fulfills all four of Rule 23(a)'s requirements and the predominance requirement of Rule 23(b)(3). *See* Doc. 55 at 2; Fed. R. Civ. P. 23(a). It accordingly grants final certification of the class for the purposes of settlement.

I.     Motion for Final Approval of the Class Settlement

Rule 23(e) of the Federal Rules of Civil Procedure governs approval of class action settlements. Under Rule 23(e), a district court, before approving a settlement agreement, must find that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *In re Samsung Top-Load Washing Mach. Mktg., Sales Pracs. & Prods. Liab. Litig.*, 997 F.3d 1077, 1087 (10th Cir. 2021). The district court must consider whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided is adequate; (D) the proposal treats class members equitably relative to each

other.  *Id.*  Additionally, the Tenth Circuit has instructed district courts to inquire as to whether: (1) the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate course of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable. *Rutter & Willbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002).  The fourth consideration is conclusively met here—Plaintiff and Defense counsel unreservedly endorsed the settlement agreement.  Doc. 57 at 11; *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 288–89 (D. Colo. 1997) ("[T]he recommendation of a settlement by experienced plaintiffs['] counsel is entitled to great weight.").

   A.  Class counsel adequately represented the class.

Adequacy of representation "focuses on the actual performance of counsel acting on behalf of the class.'"  *Montgomery v. Cont'l Intermodal Grp. Trucking, LLC*, 2021 WL 1339305, at *4 (D.N.M. Apr. 9, 2021) (quoting Fed. R. Civ. P. 23 Advisory Committee Notes (Dec. 1, 2018)). Plaintiff's counsel has been diligently litigating this case and negotiating a settlement for the past four years.  Starting in 2024, counsel engaged in lengthy and productive settlement discussions that resulted in both monetary and injunctive relief for the class members.  Following preliminary approval of the settlement, Plaintiff's counsel worked to promptly notify class members and set up automatic payments for eligible individuals.  Defendants have not raised any concerns over the adequacy of representation.  Given the parties' extensive mediation efforts and the absence of any objections, the Court finds that class counsel has adequately represented class members' interests. *Solis v. Wexford Health Sources, Inc.*, No. CV 22-878, 2025 WL 2938310, at *3 (D.N.M. Oct. 16,

4

2025), *report and recommendation adopted*, No. 2:22-CV-00878, 2025 WL 3461483 (D.N.M. Dec. 2, 2025).

    B.  <u>The settlement was fairly and honestly negotiated at an arm's length.</u>

The second factor considers "whether the settlement negotiations 'were conducted in a manner that would protect and further the class interests.'" Advisory Comm. Notes, Fed. R. Civ. P. 23. Courts have recognized that "[t]he fairness of the negotiating process is to be examined 'in light of the experience of counsel, the vigor with which the case was prosecuted, and [any] coercion or collusion that may have marred the negotiations themselves.'" *Voulgaris v. Array Biopharma Inc.*, No. 17-CV-02789, 2021 WL 6331178, at \*5 (D. Colo. Dec. 3, 2021), *aff'd*, 60 F.4th 1259 (10th Cir. 2023). The parties here negotiated at an arm's length with the assistance of Rodney Max, whose reputation as a nationally recognized mediator buttresses the Court's confidence in the parties' mediation. *Wilson v. EverBank*, No. 14-CIV-22264, 2016 WL 457011, at \*6 (S.D. Fla. Feb. 3, 2016) (noting that "the very fact of Mr. Max's involvement . . . weighs in favor of approval"). At the final approval hearing, both sides represented that the interests of the parties were vigorously represented throughout settlement discussions. *See Anderson v. Coca-Cola Bottlers' Ass'n*, No. 21-2054-JWL, 2023 WL 6064605, at \*3 (D. Kan. Sept. 18, 2023). There is no evidence of collusion or conflicting interests between the class members and counsel. The Court finds that the settlement was fairly and honestly reached.

    C.  <u>The settlement provides adequate relief to class members and the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation.</u>

In assessing a settlement, courts in this District weigh the proposed recovery "against the possibility of some greater relief at a later time, taking into consideration the additional risks and costs that go hand in hand with protracted litigation." *Voulgaris*, 2021 WL 6331178, at \*6. The

benefit to the class is considerable given that litigating these claims individually would have been impractical. The majority of members who are eligible for Automatic Payments will receive less than $10.00 in benefits and there would be no point in pursuing a lawsuit for such a small pecuniary reward. "The potential recovery to individual class members has always been modest. Therefore, few, if any, class members would have received any recovery absent the present lawsuit." *Fowler v. Med. Man Techs., Inc.*, No. CV 23-640, 2024 WL 3498587, at *2 (D.N.M. July 18, 2024), *report and recommendation adopted*, No. CV 23-640, 2024 WL 3495063 (D.N.M. July 22, 2024). Immediate monetary relief is favorable in comparison to additional years of litigation, and the risks of trial and appeal. The settlement also includes injunctive relief. The parties estimate that the value of prohibiting Progressive companies from selling stacked UM/UIM coverage is $500,000. Doc. 56 at 3. The Court also finds it significant that the settlement will provide long-term benefits for members in and outside of the class. As Plaintiff highlights, this will prevent harm to other New Mexicans. Doc. 57 at 10. Lastly, none of the 122,855 class members who received notice filed an objection, suggesting that the relief provided is satisfactory. *Anderson Living Tr. v. Energen Res. Corp.*, No. CV 13-909 WJ/CG, 2021 WL 3076910, at *5 (D.N.M. July 21, 2021). Further litigation would jeopardize the members' claims and is unlikely to produce a higher amount of recovery. *Cf. El Paso Firemen & Policemen's Pension Fund v. InnovAge Holding Corp.*, No. 21-CV-2770-WJM-SBP, 2025 WL 3674628, at *6 (D. Colo. Dec. 17, 2025). The Court therefore finds that the settlement provides adequate relief which outweighs any speculative relief that might be obtained through further litigation.

D. The settlement treats class members equitably relative to each other.

The class is divided into two subgroups. The main settlement group consists of those who paid premiums for stacked single vehicle UIM coverage and for whom no possible statute of

limitations defense could be raised.  All those members are to receive full reimbursement without having to make a claim.  The second, smaller group, consists of individuals for whom Progressive could have raised a statute of limitations defense.  Unlike the first group, these individuals will be required to submit a claims form for recovery.  This difference in obtaining recovery is equitable.  For individuals who may have had their claims foreclosed by the statute of limitations, the ability to recover any amount is exceptional and, ultimately, they may be able to receive the full cost of their excess premiums just like the first group.  Doc. 57 at 11.  The Court finds that this factor is met.

E. The litigation concerns serious questions of law.

Lastly, this case involved serious questions of law.  Neither party argues that litigating this case to completion would be an arduous task.  The initial complaint included a myriad of claims, including as conspiracy and fraud which are difficult to prove.  Defendants were only able to dismiss the breach of contract claim.  Doc. 55-1 ¶ 8; *Garcia v. Allstate Fire & Cas. Ins. Co.*, No. S-1-SC-40157, 2025 WL 1840925, at *4 (N.M. July 2, 2025).  If Plaintiff had continued forward, the nine remaining claims would have demanded complex discovery and the resolution of numerous legal questions.  Whether Plaintiff would have been able to prove conspiracy or fraud is highly uncertain and thus settlement, rather than protracted proceedings, is the preferable outcome.  The Court therefore finds that the settlement fulfills all of Rule 23(e) and *Rutter*'s requirements.  *Anderson*, 2021 WL 3076910, at *5.

II.     Plaintiff's Motion for Fees

A fee award is appropriate where a common fund for the benefit of class members is created through the efforts of counsel.  *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).  The fee awarded must be "reasonable."  *Gottlieb v. Barry*, 43 F.3d 474, 482 (10th Cir. 1994).  "Reasonable

7

attorneys' fees are those adequate to attract competent counsel that do not produce windfalls to attorneys." *Voulgaris v. Array Biopharma, Inc.*, 60 F.4th 1259, 1263 (10th Cir. 2023). Attorneys may recover fees either under a percentage-of-the-fund method or through a lodestar approach. The Tenth Circuit has "express[ed] a preference of the percentage of the fund approach." *Chieftain Royalty Co. v. Everest Energy Inst. Fund XIII-A, L.P.*, 888 F.3d 455, 458 (10th Cir. 2017). There is no brightline rule for what constitutes a "reasonable" percentage, but courts in the Tenth Circuit and this district typically authorize awards in the 25 to 40 percent range. *See Voulgaris*, 60 F.4th at 1263–64; *Brown v. Philips Petrol. Co.*, 838 F.2d 451, 454–55 (10th Cir. 1988); *see also Anderson*, 2021 WL 3076910, at *8 ("[C]ourts in this District award fees in the range of 30% to 40% of any amount recovered."). Courts consider the following factors in reviewing a motion for attorneys' fees in a common fund case:

> (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) any prearranged fee—this is helpful but not determinative; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Brown*, 838 F.2d at 454–55. Common fund cases often authorize an award for the class representative in addition to attorneys' fees. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009) (noting that incentive awards for class representatives "are fairly typical in class action cases"). "Incentive awards are justified as payment for reasonable services rendered by class representatives on behalf of the class that were helpful to the litigation." *Chieftain Royalty Co. v. SM Energy Co.*, 100 F.4th 1147, 1165 (10th Cir. 2024) (citation omitted).

Plaintiff seeks $906,242.45 in attorneys' fees, $71,366.59 in reimbursement of gross receipts, and $11,465.72 in costs, for a total of $989,074.76. Doc. 56 at 1; Doc. 58 at 1. For a

service reward, Plaintiffs request up to $20,000 to Plaintiff Peck for serving as the class representative. Doc. 56 at 13. Defendants have agreed to these amounts following the Court's approval of such an award. *Id.* These fees would be paid independently of the class fund. Combined with the $1,765,606.13 settlement fund, the attorneys' fees and costs amount to 36% of the total fund. The factors that most strongly support class counsel's request are the time and labor involved, the results obtained, the skill required to perform this legal service, and the similarity to awards in comparable cases. As a baseline, 36% percent falls within the range of awards in similar cases. *Anderson Living Tr.*, 2021 WL 3076910, at *8. An award at the higher end of the scale is warranted in this case given the number of years that it took to reach a resolution in this case and the difficulty of proving illusory benefit insurance cases. Doc. 56 at 2; *Blanco v. Xtreme Drilling & Coil Services, Inc.*, Civil Action No. 16-cv-249, 2020 WL 4041456, at *5 (D. Colo. July 17, 2020) (awarding 38% fee of $850,000 settlement in wage hybrid action because it was in "line with the customary fees and awards in similar cases"). Plaintiff's counsel is also experienced in insurance law and class actions. Doc. 57 at 12. Moreover, counsel obtained highly favorable results for the class, effectively distributed notice to members, and secured declaratory relief that will apply across New Mexico. They did so through concerted and admirable mediation efforts, working to continue settlement discussions until Defendants agreed to cease the practice of offering stacked premiums to single-vehicle policy holders.

The service award to Plaintiff is likewise appropriate. Plaintiff provided essential documents regarding his insurance policy, endured four years of litigation, and ensured that this case could be brought on behalf of a huge class of individuals. The settlement notice provided to class members explained that Plaintiff could receive a service award of up to $20,000, which yielded no objections. *See* Doc. 57, Ex. 4. The Court therefore finds that the fee award Plaintiff

seek is reasonable and similar to awards granted in comparable cases. *Belanger v. Allstate Fire & Cas. Ins. Co.*, No. CV 19-317 WJ/SCY, 2024 WL 4850334, at *22 (D.N.M. Nov. 21, 2024), *report and recommendation adopted*, No. CV 19-317 WJ/SCY, 2024 WL 5056426 (D.N.M. Dec. 10, 2024) (finding that class representative's involvement in case for five years justified $10,000 award); *Bhasker v. Fin. Indem. Co.*, No. 117CV00260KWRJHR, 2023 WL 4534548, at *3 (D.N.M. July 13, 2023) (authorizing service award of $25,000); *El Paso Firemen & Policemen's Pension Fund*, 2025 WL 3674628, at *6 (authorizing $15,000 incentive award for class representatives in four-year long case).

### CONCLUSION

**IT IS THEREFORE ORDERED** that:

(1) Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement, Doc. 57, is **GRANTED**.

(2) Plaintiff's Motion for Attorney Fees, Costs, and Service Awards, Doc. 56, is **GRANTED**. Class counsel is awarded attorneys' fees of no greater than $906,242.45, $71,366.59 in reimbursement of gross receipts, and $11,465.72 in costs. Plaintiff Peck is awarded a service fee of no more than $20,000.

(3) The parties shall take any and all necessary steps to implement the Settlement Agreement according to its terms;

This action is **DISMISSED WITH PREJUDICE**, without fees or costs other than as provided in this order.

_____
**SARAH M. DAVENPORT**
**UNITED STATES DISTRICT JUDGE**